Michael Kathrein
7601 North Eastlake Terrace
Chicago, IL 60626

KC FILED
JAN 04 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

FILED
JANUARY 4, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL L. KATHREIN, <br> VICTORIA KATHREIN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF EVANSTON, ILLINOIS, <br><br> Defendant. | 08CV83 <br> JUDGE GUZMAN <br> MAGISTRATE JUDGE SCHENKIER <br><br> JURY TRIAL DEMAND |

## STATEMENT OF THE CASE

Plaintiffs own a parcel of land in the City of Evanston improved with a residential dwelling. They desire to remove that improvement and create a vacant lot. Defendant demands plaintiffs pay various administrative fees in exchange for a permit to remove the improvement. Defendant demands plaintiffs pay an additional $10,000 "tax" into a separate, special purpose fund unrelated to administration of the removal.

The $10,000 tax referred to herein, *infra*, is discriminatory, violates the takings clause of the Fifth Amendment, the due process of law and equal protection clause of the Fourteenth Amendment, U.S. Constitution and the Uniformity Clause of the Illinois Constitution.

## JURISDICTION

1.   Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 and § 1343, 28 U.S.C. § 1367(a), and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

2.      Plaintiff Michael Kathrein is a private citizen and resident of Evanston, Illinois, with a business address of 7601 North Eastlake Terrace, Chicago, Illinois 60626.

3.      Plaintiff Victoria Kathrein is a private citizen and resident of Evanston, Illinois, with a business address of 7601 North Eastlake Terrace, Chicago, Illinois 60626.

4.      Defendant City of Evanston, Illinois is a duly incorporated home rule municipal corporation with an address of Evanston Civic Center, 2100 Ridge Avenue, Evanston, Illinois 60201.

## FACTS

5.      Plaintiffs own a parcel of land (hereinafter, "land" or "lot") in the City of Evanston (hereinafter, the "City") located within the city limits of Evanston, Illinois.

6.      Plaintiffs' parcel is improved with a residential dwelling unit.

7.      For various reasons, plaintiffs decided they no longer wanted the improvement on their land and preferred instead, that their land be vacant.

8.      City ordinances 4-22 and 40-O-07 (hereinafter, "ordinances") requires persons desiring to remove improvements from their land to apply for and be granted a "demolition" permit, curiously designated as a "building" permit (hereinafter, "demolition permit" or "permit").

9.      Plaintiffs owned their land prior to the enactment of the ordinances cited above.

10.     In pursuit of the required permit, plaintiffs obtained from the Evanston City Clerk, a demolition permit application form titled, "Demolition Instruction Form." (hereinafter, "form" or "application")

11. The form itemizes various acts required of an applicant prior to the granting of a demolition permit.

12. The following is a requirement indicated on the face of the application:

### AFFORDABLE HOUSING DEMOLITION TAX

A person granted a permit for demolition of a residential structure shall pay an affordable housing demolition tax of:

(1) $10,000 for the demolition of any single-family detached residential structure, or

(2) $10,000 or $3,000 for each unit in the structure (whichever amount is more) for the demolition of any multi-family, single-family attached, or two-family residential structure.

*For additional information regarding this tax go to website http://www.cityofevanston.org. City Code – Title 4: Building Regulations – Chapter 22: Affordable Housing Demolition Tax.*

13. City Code – Title 4 – Chapter 22 states, in relevant part:

4-22-3 – AFFORDABLE HOUSING DEMOLITION TAX

(A) **Tax Imposed and Dedicated.** Any person granted a permit under the Evanston City Code for demolition of a Residential Structure shall pay an affordable housing demolition tax of: (a)ten thousand and no/100 dollars ($10,000.00) for the demolition of any Single-Family Detached Residential Structure, or (b) for the demolition of any Multi-Family, Single-Family Attached, or Two-Family Residential Structure, either ten thousand and no/100 dollars ($10,000.00) or three thousand and no/100 dollars ($3,000.00) for each unit in the structure, whichever amount is more. The tax imposed pursuant to this Subsection shall be in addition to the demolition permit fee established from time to time by the City Council and all other applicable fees and charges. Payment of the tax, unless deferred as provided in Section 4-22-4, shall be due upon issuance of a demolition permit by the Department, and is a condition to the validity of the permit. The City shall have a lien against the property which was the subject of the demolition permit until applicable tax obligations imposed by this Chapter are satisfied. The funds received by the City for the amount imposed pursuant to this Subsection shall be dedicated to achievement of the affordable housing goals and objectives as set forth in Section 4-22-1 of this Chapter. The demolition tax funds received pursuant to the tax imposed by this Chapter shall be deposited directly into the Affordable Housing Fund.

3

14. Of particular relevance to this Complaint are the following three phrases found in ¶ 4-22-3: "Payment of the tax... is a condition to the validity of the permit." and "...for demolition of a Residential Structure..." and "...shall pay an affordable housing demolition tax."

15. Defendant's Affordable Housing Demolition Tax is commonly referred to as its "tear-down tax." (hereinafter, "tear-down tax" or "tax")

16. Therefore, it is an expressly authorized policy of the defendant to exact this tax from all owners of land improved with a "Residential Structure" who desire to remove said structure from their land.

17. On information and belief, owners of "commercial structures" are routinely exempted from this tax obligation.

18. On at least two occasions prior to enactment of these ordinances, plaintiff Michael Kathrein informed defendant in writing, that the proposed ordinance(s) would violate various Constitutional protections of Evanston property owners.

19. Defendant ignored plaintiff's warnings.

20. Defendant's ordinance 40-O-07 was adopted June 4, 2007.

21. All building permits are issued by the Clerk of the City of Evanston Building Department (hereinafter, "Clerk").

22. On or about September 5, 2007, plaintiff Michael Kathrein presented his application to the Clerk and directed to her the following inquiry, "*Will the City grant us (plaintiffs) a demolition permit if we refuse to pay the Affordable Housing Demolition Tax?*"

23. The Clerk responded, "*No.*"

4

24. Plaintiff followed with the question, "... *under any circumstances?*"

25. Clerk's response, "*No exceptions. None.*"

26. Plaintiff said, "*I demand the City compensate me $10,000 for the $10,000 it demands from me. Will it do so?*"

27. The Clerk's response was, "*Well no, of course not.*"

28. Defendant offered plaintiffs no appeal procedure or administrative remedy to protest the imposition.

29. Sometime shortly thereafter, plaintiffs offered to sell their property to a potential buyer.

30. Plaintiffs informed the buyer of the City's tear-down tax ordinance.

31. The buyer demanded plaintiffs reduce the asking price of their property by at least $10,000 to offset the $10,000 reduced value caused by the ordinance.

32. The buyer demanded no other concession.

33. Plaintiffs refused to reduce their price by $10,000.

34. Therefore, and as a result of the City's ordinance, plaintiffs were unable to engage in the transaction.

35. Plaintiffs were damaged by the City's ordinance.

## LEGAL CLAIMS

### COUNT I
### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

36. Plaintiffs re-allege and adopt paragraphs 1-35 as if fully set forth herein.

37. By tradition and the common law, property owners have the right to enjoy or alter their existing property without financial penalty, normal permitting and other administrative fees notwithstanding.

38. Defendant's ordinance denies property owners a common law right in their property (to remove improvements on their land without penalty) which was already vested to them prior to enactment of the ordinance.

39. Defendant's tear-down tax penalizes the exercise of that right.

40. Whether plaintiffs remit the payment is irrelevant.

41. Whether plaintiffs remove the improvement immediately, or at any time in the future, is irrelevant.

42. The effective value of plaintiffs' lot is automatically $10,000 lower than comparable lots vacant prior to June 4, 2007.

43. The inevitability of the tax obligation is an immediate and quantifiable encumbrance upon plaintiffs' property in the amount of at least $10,000.[1]

44. The encumbrance does not dissipate with time.

45. Plaintiffs' property therefore, is immediately and adversely affected by the mere *existence* of the ordinance.

46. In this case, plaintiffs' reduced net worth (reduced land value) *is* the property.

47. This reduction is not contingent, conclusory or speculative.

48. The Fifth Amendment prohibits governmental taking of property for public use without just compensation.

49. The $10,000 taken from plaintiffs is for public use. (See par. 67)

50. The only just compensation for reducing plaintiffs' net worth by $10,000 –

---

[1] By way of example, if the market value of plaintiffs' property is $100,000 the day *before* enactment of the ordinance, plaintiffs must sell their property for $110,000 the day *after* enactment in order to realize the same net proceeds. The tax is the immediate, direct and proximate cause of a $10,000 reduction in plaintiffs' net worth.

6

is to compensate plaintiffs with $10,000.

51. Further, it is prudent and legal for taxpayors to take proactive measures to reduce their tax burden. Vacant land is taxed at a lower rate than improved land.

52. Plaintiffs have a right to cause their land to be taxed a lower tax rate without penalty.

53. Defendant's ordinance penalizes that right.

54. It is also prudent and legal for a property owner to take proactive measures to reduce their ownership expenses. Liability insurance is lower on vacant land. There are no utility costs on vacant land.

55. Plaintiffs have a right to cause the costs of ownership of their land to be lower without penalty.

56. Defendant's ordinance penalizes that right.

57. Therefore, plaintiffs are forced to forfeit one right (the right to possess and protect their wealth) in order to exercise another right (to remove an improvement on their land).

58. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.

59. Plaintiffs suffered an instant decrease in their net worth of at least $10,000 upon enactment of these ordinances, and defendants have failed to provide plaintiffs with just compensation.

60. A "[s]tate, by *ipse dixit*, may not transform private property into public property without compensation...." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).

(a) The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property. *See, e.g., United States v. Pewee Coal Co.*, 341 U. S. 114. Beginning with *Pennsylvania Coal Co. v. Mahon*, 260 U. S. 393, however, the Court recognized that government regulation of private property may be so onerous that its effect is tantamount to a direct appropriation or ouster. Regulatory actions generally will be deemed per se takings for Fifth Amendment purposes (1) where government requires an owner to suffer a permanent physical invasion of her property, *see Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, or (2) where regulations completely deprive an owner of "all economically beneficial us[e]" of her property, *Lucas v. South Carolina Coastal Council*, 505 U. S. 1003, 1019. Outside these two categories (and the special context of land-use exactions discussed below), regulatory takings challenges are governed by *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124. *Penn Central* identified several factors—including the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the character of the government action—that are particularly significant in determining whether a regulation effects a taking. Because the three inquiries reflected in *Loretto, Lucas*, and *Penn Central* all aim to identify regulatory actions that are functionally equivalent to a direct appropriation of or ouster from private property, each of them focuses upon the severity of the burden that government imposes upon property rights. Pp. 6-10.

> *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

This separate writing is to note that today's decision does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process. *Eastern Enterprises v. Apfel*, 524 U.S. 498, 539 (1998) (Kennedy, J., concurring in judgment and dissenting in part).

> *Id.*

REMEDIES

Despite the strong presumption that damages, not injunctive relief, is the appropriate remedy in a Takings Clause action, our case law does acknowledge that there are limited circumstances in which injunctive relief is available. For instance, it is well accepted that, when the government has taken property for a private, rather than a public, use, injunctive or declaratory relief may be appropriate. *See Daniels*, 306 F.3d at 457 n. 11. Similarly, the Supreme Court has held that many facial challenges to legislative action authorizing a taking can be litigated immediately in federal court. *See San Remo Hotel, L.P. v. City & County*

8

*of San Francisco*, 545 U.S. 323, 345 (2005); *Yee v. City of Escondido*, 503 U.S. 519 (1992); *see also Holliday Amusement Co. of Charleston v. South Carolina*, ___ F.3d ___, 2007 WL 1893384, at *2 (4th Cir. July 3, 2007) ("[T]he state procedures requirement does not apply to facial challenges to the validity of a state regulation.").

*Peters v. Village of Clifton*, No. 06-3735 (7th Cir. 8/22/2007).

61. [I]n *Roe v. Cook County*, 193 N.E. 472 (Ill. 1934), the Supreme Court of Illinois has stated that:

> [w]hen the Constitution forbids the taking or damaging of private property without just compensation and points out no remedy, and no statute affords one, for the invasion of the right of property thus secured, the common law, which affords a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.
>
> It is entirely beside the point to say that even though our bill of rights assures every person that his property will not be taken for public use without just compensation, yet where a county or other public body violates this section by taking private property without condemnation proceedings, one may not recover simply because the Legislature has failed to provide any specific remedy. If this were true, the constitutional guaranty would be nugatory and private property could be taken with impunity and without redress to the injured property owner. The constitutional provision itself, without remedial legislation, is basic law, which not only confers a right but presupposes a remedy.
>
> *Id.* at 473-74
>
> *Id.*
>
> The defendants argue that the policy considerations of § 1341 would be best served by this court holding that § 1341 bars all actions, equitable and legal. We cannot agree. After reviewing the statute, its legislative history and significant cases we can find no evidence which would indicate that § 1341 was directed at damage actions as well as equitable actions. Clearly if Congress had intended to prohibit all federal court relief in state tax matters, it could have done so. Congress, however, did not address the subject of damage actions. Congress thus did not give state tax officials absolute immunity for acts committed in their official capacity. Congress only prohibited certain specific remedies which due to their nature are highly disruptive of state proceedings. Quite clearly, if a county or state tax official intentionally and unjustifiably raised an individual's property assessment merely because of the individual's race, ethnic background or

political affiliation, the official could be liable for damages under § 1983 for the misuse of his authority. Section 1341 only bars certain forms of relief; it does not serve to deprive a federal court of jurisdiction of all actions merely because the defendant is a state or county tax official. If a state or county tax official intentionally violates a plaintiff's constitutional rights, he may be held liable for an action for damages.

> *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978).

62. Defendant's tax is a violation of the takings clause of the Fifth Amendment.

## COUNT II
## DENIAL OF EQUAL PROTECTION OF THE LAWS

63. Plaintiffs re-allege and adopt paragraphs 1-62 as if fully set forth herein.

64. Plaintiffs do not challenge defendant's legal right to exact a tax . . . they challenge defendant's right to exact a tax in direct violation of plaintiffs' Constitutionally protected rights.

65. Illinois Statute (65 ILCS 5/11-13-1(11)) states in relevant part:

> MUNICIPALITIES
> (65 ILCS 5/) Illinois Municipal Code.
> DIVISION 13. ZONING
> (65 ILCS 5/11-13-1(11)) (from Ch. 24, par. 11-13-1)
>
> > Sec. 11-13-1. To the end that adequate light, pure air, and safety from fire and other dangers may be secured, that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, that the hazards to persons and damage to property resulting from the accumulation or runoff of storm or flood waters may be lessened or avoided, and that the public health, safety, comfort, morals, and welfare may otherwise be promoted, and to insure and facilitate the preservation of sites, areas, and structures of historical, architectural and aesthetic importance; the corporate authorities in each municipality have the following powers:
> >
> > (11) to require the creation and preservation of affordable housing, including the power to provide increased density or other zoning

›

incentives to developers who are creating, establishing, or preserving affordable housing; and

66. 65 ILCS 5/11-13-1(11) grants defendants, "...the power to require the creation and preservation of affordable housing... to promote the public health, safety, comfort, morals, and welfare."

67. As an adjunct to Count I, "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Dolan v. City of Tigard* (1994), 512 U.S. 374, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304, 315-16, quoting *Armstrong v. United States* (1960), 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554, 1561.

68. 65 ILCS 5/11-13 does not grant defendants the power to arbitrarily select which of its citizens must bear the burden of, "creation and preservation of affordable housing," and which of its citizens shall be exempt from that burden.

69. Nor does it grant defendants the power to select arbitrarily, which of its citizens must bear the burden of, "promoting the public health, safety, comfort, morals, and welfare" and which of its citizens shall be exempt from that burden.

70. Section 4-20-1 of the defendant's ordinance states its purpose is to "... enhance the public safety, and welfare of the Evanston by promoting high-quality housing for households of all sizes and income levels ... in order to maintain the City's cultural and ethnic diversity."

71. The worthiness of defendant's tax is irrelevant to plaintiffs' inherent rights in their property.

72. A tax supporting "...the public health, safety, comfort, morals, and

11

welfare..." of the citizenry, must be imposed equally among all citizenry. (See par. 67)

73. There appears to be no essential nexus between the imposition of the tax and the municipal interest allegedly advanced, *i.e.*, the ordinance places no burden upon the City to show a "specific and uniquely attributable" relationship between its exaction and its need, as required under 605 ILCS 5/5-906(a)(1).

74. If the local government cannot demonstrate that its exaction is directly proportional to the specifically created need, the exaction becomes "a veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations." *Pioneer Trust & Savings Bank v. Mount Prospect*, 22 Ill.2d 381, 176 N.E.2d, at 802 (1961).

75. Defendant's tear-down tax is a special purpose revenue tax exacted under the guise of a building ordinance; it is not a "proper exercise of zoning powers," pursuant to 65 ILCS 5/11-13-1(11).

76. This penalty is triggered by nothing more than plaintiffs' financial condition, the exercise of existing rights in their property, and that their property falls within a discriminatory classification, *i.e.*, not a protected classification.

77. Defendant's tax is discriminatory.

78. The law of Illinois is summed up in the following excerpt from *Aldrich v. Harding*, 340 Ill. 354, 172 N.E. 772, where the court said:

> "The valuation of property for taxing purposes must be the result of honest judgment and not of mere will. *Chicago, Burlington & Quincy Railroad Co. v. Cole*, 75 Ill. 591. An assessing body has the right, and it is its duty, to exercise its own judgment in determining values, but it has no right to fix a valuation by its will, alone, without the exercise of judgment. *People ex rel Carr v. Stewart*, 315 Ill. 25, 145 N.E. 600. In *Pacific Hotel Co. v. Lieb*, 83 Ill. 602, the court said that where 'the valuation is so grossly out of the way as to show that the assessor could not have been honest in his

valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose.' In *People's Gas Light Co. v. Stuckart*, 286 Ill. 164, 121 N.E. 629, 633, the court said an overvaluation of property may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive. It was further stated that 'a willful disregard by the members of the board of a known duty for the purpose of producing a result which could not otherwise have been produced may be urged against an assessment as a fraud.'"

Consequently we conclude that under the law of the state of Illinois, a court of equity has the right to interfere in cases such as that presented here; that there can be no question that the court of bankruptcy, sitting as a court of equity, has the same authority and that the facts fully justify its order. That debtors were deprived of equal protection is apparent from *Hillsborough Tp., Somerset County, v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 448, 90 L.Ed. 358, where the court said: "The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment."

*In re Chicago Rys. Co.*, 175 F.2d 282 (7th Cir. 1949).

79. Defendants used the legislative process to grant immunity to commercial property owners is contrary to established Illinois law.

"It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasi judicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government. I need not dwell at length on the obvious opportunity this affords for special privilege, for the granting of favors to political friends or financial benefactors, for the withholding of permits from those not in the good graces of the authorities, and so on. . . ."

*Bossman v. Village of Riverton*, 291 Ill. App.3d 769, 772-73, 684 N.E.2d 427 (1997) (citation omitted).

The case of *La Salle National Bank v. City of Evanston*, 57 Ill. 2d 415, 428, 312 N.E.2d 625, 632 (1974), is often cited:

"Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. [Citations]..."

*Id.*

It is important to note that in *Evanston* the municipality rejected the property owner's attempt to rezone the property, and the Supreme Court affirmed the municipality's decision to stand behind its zoning ordinance. *Evanston* is not authority for the proposition that a court should give deference to a municipality's decision when it grants a property owner's request for special treatment and engages in spot zoning. *See Rodriguez v. Henderson*, 217 Ill. App.3d 1024, 1030, 578 N.E.2d 57, 61, 160 Ill. Dec. 878 (1991).

*Id.*

80. Plainly, defendant granted "special treatment" (exemption from the tax) to favored property owners.

81. Defendant's tax is a violation of the Equal Protection clause of the Fourteenth Amendment.

## COUNT III
## DENIAL OF DUE PROCESS OF LAW

82. Plaintiffs re-allege and adopt paragraphs 1-81 as if fully set forth herein.

83. As shown above, plaintiffs are deprived of their property by a municipal process that conflicts with their rights under the Constitution.

84. Plaintiffs are deprived of their property without due process of law.

85. Generally, non-home-rule units possess zoning powers under the Illinois Municipal Code (65 ILCS 5/11-13-1 et seq. (West 1994)). However, ordinances passed under these powers that conflict with the spirit and purpose of a state statute are

preempted by the statute. See *Hartnett,* 117 Ill. App. 3d at 1015. *Commonwealth Edison Co. v. City of Warrenville,* 288 Ill. App. 3d 373, 223 Ill. Dec. 732, 680 N.E.2d 465 (1997).

86. Substantive due process "prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests. *Wash. Teachers' Union Local #6 v. Bd. of Educ.,* 109 F.3d 774, 781 (D.C. Cir. 1997) (citation omitted).

87. Defendant's tax is a violation of the Due Process clause of the Fifth and Fourteenth Amendments.

## COUNT IV
## VIOLATION OF THE UNIFORMITY CLAUSE
## OF THE ILLINOIS CONSTITUTION

88. Plaintiffs re-allege and adopt paragraphs 1-87 as if fully set forth herein.

89. Defendant's tax violates the Uniformity of Taxation Clause compelled by article IX of the Illinois Constitution, 1970.

## COUNT V
## CLASS ALLEGATIONS

90. Plaintiffs re-allege and adopt paragraphs 1-89 as if fully set forth herein.

91. As a result of the defendant's illegal acts described herein, *supra,* plaintiffs and other unknown parties have been deprived of rights secured by Illinois common law, the Illinois Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution.

92. There are 15,611 owner occupied residential units in Evanston.[2]

93. There are 14,040 rental residential units in Evanston.

94. On information and belief, there are thousands of separate parcels of land immediately, directly and adversely affected by the ordinances cited, *supra*.

95. On information and belief, defendants have collected substantial monies from unknown property owners pursuant to the ordinances cited.

96. On information and belief, the aggregate decrease in the net value of all affected properties, as a result of the ordinances, is greater than $35,000,000.

97. It is extremely unlikely that all owners of residential property in Evanston reside in the affected properties and/or reside elsewhere in Evanston, therefore discovery and joinder of all members is impractical in light of class dispersion and size.

98. Common questions of fact and law predominate each proposed sub-class, and class action therefore, is the superior form of adjudication.

99. There are no conflicting issues between the plaintiffs and members of the proposed classes.

100. There is no risk of inconsistent adjudication among separate class members.

101. There is no risk that adjudication might adversely bind non-parties or impair their ability to protect their interests.

102. Numerosity and superiority apply under all circumstances.

103. Plaintiffs bring this action individually and for the following sub-classes:

    a. Relative to Count I, all persons who, at any time on or after two

---

[2] Source: http://www.city-data.com/housing/houses-Evanston-Illinois.html

years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 or the acts of the individual defendants as described herein.

    b.    Relative to Count II, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 or the acts of the individual defendants as described herein.

    c.    Relative to Count III, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 or the acts of the individual defendants as described herein.

    d.    Relative to Count IV, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 or the acts of the individual defendants as described herein.

104.    Each proposed sub-class satisfies each of the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure and class certification for each sub-class is appropriate under Rule 23(b)(3).

105.    Plaintiffs stipulate that any class certified under Rule 23 will be represented by experienced, qualified and competent counsel of plaintiffs' election.

106.    Pursuant to Rule 23(c), a formal motion for certification will be filed as soon as practicable.

## **RELIEF REQUESTED**

1. Trial by jury on all issues triable by jury;

2. Actual damages in the amount of $35,000,000;

3. Compensatory damages in an amount to be determined by a jury;

4. Punitive damages in an amount to be determined by a jury;

5. Plaintiffs' cost of this suit;

6. The Court enter a declaratory judgment that defendant's Affordable Housing Demolition Tax is Unconstitutional;

7. The Court enter a declaratory judgment that defendant's actions have violated the Constitutional rights of the plaintiffs;

8. The Court enter an Order requiring defendants to return all money collected or due and owing, from all parties, including each proposed sub-class, pursuant to either ordinance;

9. The Court enter an Order requiring defendants to release any liens placed against any property pursuant to either ordinance;

10. The Court enter an Order requiring defendants to stay enforcement of either ordinance;

11. The Court enter a Temporary Order prohibiting defendants from modification or enforcement of the ordinances cited above until this action is fully resolved;

12. In order to avert additional violations of the Constitution, the Court enter a Temporary Order prohibiting defendants from enacting any new "taxes," "licenses" or "fees" until this action is fully resolved;

13. The Court enter a Permanent Injunction prohibiting defendants from exercising undue scrutiny of or retaliation against the individual plaintiffs for having brought this suit, or for any other reason;

14. Leave to amend complaint after completion of discovery; and

15. Such other relief as this Court deems just, proper, and equitable.

Respectfully submitted,

Dated: January 4, 2008

*[signature]*
Michael Kathrein
7601 North Eastlake Terrace
Chicago, Illinois 60626-1421
(773) 761-6000
(773) 465-7755 fax
federalcase@gmail.com

*[signature]*
Victoria Kathrein
7601 North Eastlake Terrace
Chicago, IL  60626-1421
(773) 761-6000
(773) 465-7755 fax

## VERIFICATION

Sworn to under penalties of perjury. 28 U.S.C. § 1746.

_____
Michael L. Kathrein


_____
Victoria Kathrein