IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael L. Kathrein and<br>Victoria Kathrein,<br><br>    Plaintiffs,<br><br>v.<br><br>City of Evanston, Illinois,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) No.   08 C 83<br>) Honorable Ronald Guzman<br>) Magistrate Judge Sidney Schenkier<br>) Judges Presiding<br>) |

## CITY OF EVANSTON'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Defendant, the City of Evanston, by its counsel, Jack M. Siegel and Iain D. Johnston, hereby move to dismiss Plaintiffs' Complaint for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). The Tax Injunction Act prevents this Court from hearing Plaintiffs' Complaint, which seeks declaratory and injunctive relief as well as damages. 28 U.S.C. §1341.

### I. INTRODUCTION

Plaintiffs are no strangers to this Court. Plaintiffs, who are proceeding *pro se*, are frequent filers. Since 2001, Plaintiffs have been involved in numerous cases, including two other cases against Evanston.[1]  Plaintiffs' latest foray into the United States District Court for the Northern District of Illinois should be short lived. By way of this lawsuit, Plaintiffs challenge Evanston's Affordable Housing Demolition Tax ("Demolition Tax"), seeking not only declaratory and injunctive relief, but also $35,000,000.00 in damages. But this Court lacks jurisdiction to hear Plaintiffs' challenge because of the Tax Injunction Act. 28 U.S.C. §1341.

---

[1] *See Kathrein v. Monar*, 2007 U.S. App. LEXIS 5596 (7th Cir. 2007) (upholding Rule 11 sanctions against Plaintiff); *Kathrein v. Siegel*, 2006 U.S. Dist. LEXIS 33570 (N.D.Ill. 2006) (sanctioning Plaintiff); *Kathrein v. Evanston*, 2005 U.S. Dist. LEXIS 19601 (N.D. Ill. 2005) (discussing two of Plaintiffs' suits against Evanston)

Had Plaintiffs conducted a reasonable investigation into the law, they would have learned that this Court is the improper forum for such a challenge.

## II. BACKGROUND

The State of Illinois possesses an Affordable Housing Planning and Appeal Act. 310 ILCS 67/1 *et seq.* The purpose of the Affordable Housing Act is to encourage municipalities "to incorporate affordable housing within their housing stock" due to the General Assembly's specific finding that there exists a shortage of affordable housing in Illinois. 310 ILCS 67/5, 67/10. The Affordable Housing Act requires certain Illinois municipalities, including Evanston, to create affordable housing plans. 310 ILCS 67/25.

As a result of the Affordable Housing Act, Evanston passed Ordinance 139-0-05 to provide for affordable housing.[2]  The purpose of the Ordinance was to "provide a source of funding for the creation, maintenance, and improvement of safe and decent affordable housing in the City of Evanston." (Ex. #1 at 1.) To further that purpose, an Affordable Housing Fund was created. (Ex. #1 at 2, 4.)  The Affordable Housing Fund expends money for the creation, preservation, maintenance and improvement of affordable housing. (Ex. #1 at 4.)  Evanston imposed a tax ("Demolition Tax") to fund the Affordable Housing Fund. (Ex. #1 at 4.) The Demolition Tax requires the payment of a tax of $10,000.00 when a single-family detached residential structure is demolished. *Id.*  The remittance of the Demolition Tax is payable upon the issuance of the demolition permit, which allows the residence to be torn down. *Id.* The money received from the Demolition Tax is deposited directly into the Affordable Housing Fund to administer programs for creating, preserving, maintaining and improving affordable housing. *Id.*

---

[2] A true and correct copy of Evanston's Municipal Code is attached as Exhibit #1.

### III. ALLEGATIONS IN COMPLAINT

The following allegations are taken from Plaintiffs' Complaint.[3]  Plaintiffs are residents of Evanston and own certain real property located within the City. (Compl. ¶¶2, 3, 5)  For some unknown reason, Plaintiffs want to tear down the residential structure on this real property. (Compl. ¶7)  Plaintiffs sought a demolition permit from Evanston to tear down this structure. Plaintiffs fully understood that they would need to pay the Demolition Tax to obtain the permit. (Compl. ¶18)  When the Plaintiffs sought the permit, Evanston's Building Department Clerk informed Plaintiffs that they must pay the Demolition Tax, which Plaintiffs refused to do. (Compl. ¶¶22-27)

### IV. STANDARD ON RULE 12(b)(1) MOTION TO DISMISS

The first issue in any case is to determine the existence of jurisdiction. *See Hay v. Indiana State Board*, 312 F.3d 876, 878 (7th Cir. 2002) (granting motion to dismiss based on Tax Injunction Act). On a Rule 12(b)(1) motion to dismiss, the Court is not required to accept the allegations in the Complaint as true. *Id.* at 879.  Instead, the plaintiff has the burden of establishing jurisdiction by competent proof and the Court should, if necessary, look beyond the face of the pleadings. *Id.*  The District Court's ruling on a Rule 12(b)(1) motion is reviewed de novo as to the legal determinations, but under the clearly erroneous standard when based on factual findings. *See Levy v. Pappas*, 510 F.3d 755, 2006 U.S.App. LEXIS 29536 (7th Cir. 2007) (granting motion to dismiss based on Tax Injunction Act).

### V. PLAINTIFFS' COMPLAINT IS BARRED BY THE TAX INJUNCTION ACT.

The Tax Injunction Act is a jurisdictional statute. *Platteville Area Apartment Association v. City of Platteville*, 179 F.3d 574, 582 (7th Cir. 1999). The Tax Injunction Act deprives District Courts of jurisdiction to hear challenges to State and local taxes. *Levy*, 510 F.3d at ___, 2006

---

[3] For this Court's convenience, Evanston has attached a copy of Plaintiffs' Complaint to this Motion as Exhibit #2.

U.S.App. LEXIS at *3. The Tax Injunction Act provides, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. §1341.

The Tax Injunction Act is not nearly as limited as the name may imply. The Tax Injunction Act applies to suits seeking not only injunctions, but also to suits seeking declaratory relief as well as suits seeking damages under 42 U.S.C. §1983. *Levy*, 510 F.3d at ___, 2006 U.S. App. LEXIS at *21 (affirming dismissal of §1983 damage claim based on Act); *Wright v. Pappas*, 256 F.3d 635, 636-37 (7th Cir. 2001) (same); *Platteville*, 179 F.3d at 582 (Act applies to declaratory judgment actions). Moreover, the Tax Injunction Act bars suits challenging local government and municipal taxes, not just State taxes. *Wright*, 256 F.3d at 636; *Platteville*, 179 F.3d at 582.

Under the Tax Injunction Act, the dispositive question is whether the suit seeks relief that would reduce the flow of tax revenue to the governing body. *Levy*, 510 F.3d at ___, 2006 U.S. App. LEXIS at *17. The description that plaintiffs give to their complaint is irrelevant; instead what matters is the relief sought. *Id.* Fundamentally, when plaintiffs allege that a tax collection singles them out for unjust treatment, the Tax Injunction Act applies to bar jurisdiction. *Id.*

There is no question that Plaintiffs' Complaint seeks declaratory and injunctive relief in addition to $35,000,000.00 in damages. (Comp. at p. 18) Obviously, this relief seeks to reduce the flow of revenue to Evanston's Affordable Housing Fund. Consequently, the Tax Injunction Act applies, divesting this Court of jurisdiction.

Furthermore, Plaintiffs cannot argue that Illinois courts do not provide a plain, speedy and efficient remedy. 28 U.S.C. §1341. A plain, speedy and efficient remedy does not mean a perfect process and certainly does not mean that the plaintiff will prevail in the State courts. *See*

*Miller v. Bauer*, 517 F.2d 27, 32 (7th Cir. 1975) (need not be best remedy); *J&M Auto v. Gavin*, 27 F.Supp.2d 115, 117 (D. Con. 1998) (need not be perfect remedy); *Kruger v. Garden Dist. Ass'n*, 1999 U.S. Dist. LEXIS 7375, *3 (E.D. La. 1999) (plaintiff need not win). State court remedies meet the requirements of the Tax Injunction Act by overcoming a low procedural threshold. *See Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522 (1981) ("The overall purpose of the Tax Injunction Act is consistent with the view that the 'plain, speedy and efficient remedy' exception to the Act's prohibition was only designed to require that the state remedy satisfy certain procedural criteria . . . Illinois' refund procedure meets such criteria."). The Supreme Court's definitions and interpretations of "plain, speedy and efficient" set this low requirement. *See Rosewell*, 450 U.S. at 516 (defining "plain" to mean "clear," defining "speedy" to mean "quick" and "efficient" to mean "effective activity").

Under Illinois law, if a party bears the burden of a tax, then that party has standing to sue and challenge the tax in State court. *See Village of Arlington Heights v. RTA*, 653 F.2d 1149, 1151 (7th Cir. 1981) citing to *Getto v. City of Chicago*, 77 Ill.2d 346, 396 N.E.2d 544 (1979). It is common practice for tax payers to file declaratory judgment actions in the Circuit Courts to challenge the validity of taxes imposed upon them. *See, e.g., Sun Life Assurance Co. v. Manna*, 227 Ill.2d 128 (2007) (alien insurer challenged Retaliatory Tax on federal and state constitutional grounds). Those tax payers may not win in their suits (just as Plaintiffs will not in this case either). *Id.* However, the procedural mechanisms for tax payers exist, thereby meeting the minimal requirements of the Tax Injunction Act.

## VI. CONCLUSION

Because Plaintiffs challenge Evanston's Demolition Tax, seeking equitable relief and damages, this Court lacks jurisdiction pursuant to the Tax Injunction Act as Illinois courts provide a plain, speedy and efficient remedy. Accordingly, the Motion should be granted. This Court should additionally require that before Plaintiffs file another lawsuit in this Court, they obtain permission to do so. *See Support System Int'l v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995) (authorizing courts to require party to obtain prior authorization before filing additional suits).

WHEREFORE, Evanston respectfully request that this Court grant its motion to dismiss for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted,

City of Evanston,

s/ Iain D. Johnston

Jack M. Siegel
Iain D. Johnston
Holland & Knight LLP
131 S. Dearborn St., 30th Fl.
Chicago, IL  60603
(312) 263-3600

# 5106261_v1

6

**EXHIBIT 1**

## 4-22-1: PURPOSE:

The purpose of this chapter is to provide a source of funding for the creation, maintenance, and improvement of safe and decent affordable housing in the city of Evanston in order to enhance preservation and maintenance of the city's cultural and economic diversity. (Ord. 139-0-05)



## 4-22-2: DEFINITIONS:

For the purposes of administering this chapter:

AFFORDABLE HOUSING FUND: The fund established by city council which can only receive and expend monies dedicated to the creation, preservation, maintenance, and improvement of affordable housing for households whose income is one hundred percent (100%) or less of area median income, with no less than sixty percent (60%) of all monies reserved for households that earn less than eighty percent (80%) of area median income. The city manager or his/her designee may implement programs including, but not limited to: down payment and/or rental assistance; building rehabilitation and/or construction loans; property acquisition and disposition; and grants to nonprofit organizations that serve households that earn less than one hundred percent (100%) of area median income. Said programs shall be administered in accord with guidelines generated by the Evanston housing commission, reviewed by the planning and development committee of the city council, and approved by the city council.

AFFORDABLE HOUSING, OWNER OCCUPIED: Decent, safe, sanitary housing that is affordable to "relevant households" as defined herein. The cost of the mortgage payment and relevant expenses (a calculation of property taxes, homeowner's insurance, and, when applicable, condominium or homeowner association fees) of owner occupied dwelling units shall not exceed thirty three percent (33%) of the relevant household's gross annual household income (the total income of all adults over 18 years of age in the household).

AFFORDABLE HOUSING, RENTAL: Decent, safe, sanitary housing that is affordable to "relevant households" as defined herein. The cost (including a utility allotment and adjustment for household size) of rental dwelling units shall not exceed thirty percent (30%) of the relevant household's gross annual household income (the total income of all adults over 18 years of age in said household).

APPLICANT: Any individual who applies for a building demolition permit under this code.

AREA MEDIAN INCOME: The median income level for the Chicago primary metropolitan statistical area, as established and defined in the annual schedule published by the secretary of the United States department of housing and urban development and adjusted for household size.

DEMOLITION: The removal or destruction of a structure or building in whole or in part to the extent of fifty percent (50%) or more of such structure or building as it existed prior to the commencement of such act or process.

DEMOLITION STRUCTURE: The building or structure to be demolished.

DIRECTOR: The director of the Evanston community development department.

DWELLING UNIT: A room or group of contiguous rooms that include facilities used or intended to be used for living, sleeping, cooking and eating, and that are arranged, designed, or intended for use exclusively as living quarters.

RELEVANT HOUSEHOLD: A low or moderate income household whose total income does not



exceed the relevant percent of median income for the Chicago primary metropolitan statistical area Chicago area, as established and defined in the annual schedule published by the secretary of housing and urban development, and adjusted for household size. A low income household has income that does not exceed eighty percent (80%) of HUD area median income. A moderate income household has income that does not exceed one hundred percent (100%) of the HUD area median income.

REPLACEMENT STRUCTURE: Any building or structure replacing the demolition structure.

RESIDENTIAL STRUCTURE: Any building or structure containing dwelling units.

RESIDENTIAL STRUCTURE, MULTI-FAMILY: A detached residential building containing three (3) or more dwelling units, including what is commonly known as an apartment building, but not including group, row, or townhouses, excluding a hotel, motel, boarding house, rooming house, dormitory, nursing home, mobile home, institution, or retirement home or community.

RESIDENTIAL STRUCTURE, SINGLE-FAMILY ATTACHED (Group, Row, Or Townhouses): Three (3) or more dwelling units joined side by side.

RESIDENTIAL STRUCTURE, SINGLE-FAMILY ATTACHED, TWO-FAMILY: A residential building containing not more than two (2) dwelling units entirely surrounded by open space on the same lot.

RESIDENTIAL STRUCTURE, SINGLE-FAMILY DETACHED: A residential building containing not more than one dwelling unit entirely surrounded by open space on the same lot. (Ord. 40-0-07)



## 4-22-3: TAX IMPOSED:

(A)Amount Of Tax: Any person granted a permit under this code for demolition of a residential structure shall pay an affordable housing demolition tax of: 1) ten thousand dollars ($10,000.00) for the demolition of any single-family detached residential structure, or 2) for the demolition of any multi-family, single-family attached, or two-family residential structure, either ten thousand dollars ($10,000.00) or three thousand dollars ($3,000.00) for each unit in the structure, whichever amount is more. The tax imposed pursuant to this subsection shall be in addition to the demolition permit fee established from time to time by the city council and all other applicable fees and charges. Payment of the tax, unless deferred as provided in section 4-22-4 of this chapter, shall be due upon issuance of a demolition permit by the department, and is a condition to the validity of the permit. The city shall have a lien against the property which was the subject of the demolition permit until applicable tax obligations imposed by this chapter are satisfied. The funds received by the city for the amount imposed pursuant to this subsection shall be dedicated to achievement of the affordable housing goals and objectives as set forth in section 4-22-1 of this chapter. The demolition tax funds received pursuant to the tax imposed by this chapter shall be deposited directly into the affordable housing fund. (Ord. 40-0-07)

(B)Specific Applicability Rules: Notwithstanding the general requirement set forth in subsection (A) of this section, the tax shall not apply under the following circumstances. This subsection, however, shall not affect an applicant's obligation to pay the demolition permit fee.

1. If the applicant and the city enter into an agreement for the provision of "affordable housing" as defined in section 4-22-2 of this chapter in conjunction with the demolition that would otherwise be the subject of subsection (A) of this section. Any such agreement shall require prior city council approval and shall specifically set forth the applicability of this subsection.

2. If the director determines, pursuant to regulations enacted by the city council, that the building or structure replacing the building or structure that is the subject of the demolition permit constitutes "affordable housing" as defined in section 4-22-2 of this chapter.

3. If the director or any other city department head, or their respective designees, orders a demolition for any reason, including, but not limited to, nuisance, public safety, or fire hazard, this tax shall not apply, regardless of whether the demolition work is performed by a public or private entity.

(C)General Applicability: Imposition of the tax provided for by subsection (A) of this section shall not apply to any demolition for which a perfected application for the demolition permit was on file with the city on or before the effective date hereof. (Ord. 139-0-05)



## 4-22-4: TAX DEFERRAL OPTION:

(A) Application For Deferral: A person who has been the record titleholder or beneficiary of a land trust (collectively, "record titleholder") and occupant of a residential structure for three (3) consecutive years, and who files or causes to be filed an application for a demolition permit for that structure, may opt for deferral of the tax, as provided in this subsection. In the event the demolition permit is for a multi-unit structure, the person may only defer that portion of the demolition tax attributable to his own dwelling unit. The demolition permit fee must be paid at the time of application. The person shall make application for deferral of the tax to the director on a form provided for that purpose and available from the building permit desk. To qualify for the deferral, the person shall provide documentation to establish that all real estate taxes on the subject property have been paid in full as of the date of application for the permit; that any and all city liens and judgments recorded on the subject property have been satisfied; and that the person has been the record titleholder and occupant of the subject structure for three (3) consecutive years prior to the date of application for the permit. Documentation the director may require to establish the person's qualification for the tax deferral option may include, but shall not be limited to, income tax records and proof of voter registration. If the director determines that the person qualifies for the deferral option, he shall cause a lien to be recorded against the property with the Cook County recorder in the amount of the tax to be deferred, to which shall be added the applicable recordation fee. Except as provided in subsection (B) of this section, the lien shall not bear interest. The director may, upon written request of the person, subordinate the lien to any mortgage the person may have or seek on the property. Among the factors the director may consider in determining whether or not to grant the subordination request is whether the value of the property is adequate to assure payment of the city's lien, and that all real estate taxes have been paid.

(B) Release Of Lien:

1. A person who exercised the tax deferral option provided for in subsection (A) of this section and who has been the record titleholder and occupant for three (3) consecutive years after issuance of a final certificate of occupancy for the replacement structure may apply for release of the lien by making application therefor to the director on a form provided for that purpose and available from the building permit desk. Documentation the director may require to establish the person's qualification for the release of lien may include, but shall not be limited to, income tax records and proof of voter registration for the years in question. If the director determines that the person qualifies for the release, he shall provide the person with a recordable release of lien no later than thirty (30) days after he determines that the person qualifies for the release.

2. A person who exercised the tax deferral option provided for in subsection (A) of this section who sells the subject property prior to the expiration of the three (3) consecutive year period after issuance of the final certificate of occupancy shall, as a condition to the city's release of the lien, pay the tax due, to which shall be added interest at the annualized money market index rate published by the Government Finance Officers Association. (Ord. 139-O-05)



Case 1:08-cv-00086 Document 12    Filed 02/11/2008    Page 13 of 35

## 4-22-5: STABILITY INCENTIVE:

When the tax was paid at the time of permit issuance as provided for in subsection 4-22-3(A) of this chapter, a person who has been the record title owner and occupant of a residential property demolished subsequent to the effective date of this chapter ("preexisting structure") for all of the three (3) years immediately preceding the date of the application for demolition ("prepermit period"), and remains the record titleholder and occupant of the property for three (3) consecutive years beginning immediately after the date on which the certificate of occupancy for the new residential structure is issued, may qualify for a monetary stability incentive in an amount equal to the demolition tax paid on the issuance of the permit for demolition of the preexisting structure, provided, however, that only persons whose real estate taxes on the property are paid in full at the time of application for stability incentive may apply for the incentive.

Application for the stability incentive payment shall be made to the director on a form provided for that purpose and available from the building permit desk. The person must provide the director of community development with such documentation as he may require to establish that the owner qualifies for the payment under the requirements of this section. Such documentation may include, but is not limited to, income tax returns and proof of voter registration for the years in question. The city shall pay qualifying persons an amount equal to the demolition tax, if any, imposed pursuant to this chapter on the issuance of the permit for the preexisting structure, less the amount of any liens recorded by the city against the subject property, including, but not limited to, liens for judgments entered in cases adjudicated in the city's division of administrative hearings, no later than thirty (30) days after the director of community development determines that an owner qualifies for the stability incentive. (Ord. 139-O-05)



## 4-22-6: SEVERABILITY:

The provisions, sections, and subsections of this chapter shall be deemed separable, and the invalidity of any portion of this chapter shall not affect the validity of the remainder. (Ord. 139-0-05)



**EXHIBIT 2**

Michael Kathrein
7601 North Eastlake Terrace
Chicago, IL 60626



**RECEIVED**

JAN 04 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

JUDGE RONALD GUZMAN

MICHAEL L. KATHREIN,
VICTORIA KATHREIN,

       Plaintiffs,

    v.

CITY OF EVANSTON, ILLINOIS,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

MAGISTRATE JUDGE SCHENKIER

**JURY TRIAL DEMAND**

08C 88

### STATEMENT OF THE CASE

    Plaintiffs own a parcel of land in the City of Evanston improved with a residential dwelling. They desire to remove that improvement and create a vacant lot. Defendant demands plaintiffs pay various administrative fees in exchange for a permit to remove the improvement. Defendant demands plaintiffs pay an additional $10,000 "tax" into a separate, special purpose fund unrelated to administration of the removal.

    The $10,000 tax referred to herein, *infra*, is discriminatory, violates the takings clause of the Fifth Amendment, the due process of law and equal protection clause of the Fourteenth Amendment, U.S. Constitution and the Uniformity Clause of the Illinois Constitution.

### JURISDICTION

    1.    Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 and § 1343, 28 U.S.C. § 1367(a), and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

2.      Plaintiff Michael Kathrein is a private citizen and resident of Evanston, Illinois, with a business address of 7601 North Eastlake Terrace, Chicago, Illinois 60626.

3.      Plaintiff Victoria Kathrein is a private citizen and resident of Evanston, Illinois, with a business address of 7601 North Eastlake Terrace, Chicago, Illinois 60626.

4.      Defendant City of Evanston, Illinois is a duly incorporated home rule municipal corporation with an address of Evanston Civic Center, 2100 Ridge Avenue, Evanston, Illinois 60201.

## FACTS

5.      Plaintiffs own a parcel of land (hereinafter, "land" or "lot") in the City of Evanston (hereinafter, the "City") located within the city limits of Evanston, Illinois.

6.      Plaintiffs' parcel is improved with a residential dwelling unit.

7.      For various reasons, plaintiffs decided they no longer wanted the improvement on their land and preferred instead, that their land be vacant.

8.      City ordinances 4-22 and 40-O-07 (hereinafter, "ordinances") requires persons desiring to remove improvements from their land to apply for and be granted a "demolition" permit, curiously designated as a "building" permit (hereinafter, "demolition permit" or "permit").

9.      Plaintiffs owned their land prior to the enactment of the ordinances cited above.

10.     In pursuit of the required permit, plaintiffs obtained from the Evanston City Clerk, a demolition permit application form titled, "Demolition Instruction Form." (hereinafter, "form" or "application")

2

11.    The form itemizes various acts required of an applicant prior to the

granting of a demolition permit.

12.    The following is a requirement indicated on the face of the application:

### AFFORDABLE HOUSING DEMOLITION TAX

A person granted a permit for demolition of a residential structure shall
pay an affordable housing demolition tax of:

(1) $10,000 for the demolition of any single-family detached
residential structure, or

(2) $10,000 or $3,000 for each unit in the structure (whichever amount
is more) for the demolition of any multi-family, single-family attached,
or two-family residential structure.

*For additional information regarding this tax go to website
http://www.cityofevanston.org. City Code – Title 4: Building
Regulations – Chapter 22: Affordable Housing Demolition Tax.*

13.    City Code – Title 4 – Chapter 22 states, in relevant part:

4-22-3 – AFFORDABLE HOUSING DEMOLITION TAX

(A)    **Tax Imposed and Dedicated.** Any person granted a permit under
the Evanston City Code for demolition of a Residential Structure
shall pay an affordable housing demolition tax of: (a)ten thousand
and no/100 dollars ($10,000.00) for the demolition of any Single-
Family Detached Residential Structure, or (b) for the demolition of
any Multi-Family, Single-Family Attached, or Two-Family
Residential Structure, either ten thousand and no/100 dollars
($10,000.00) or three thousand and no/100 dollars ($3,000.00) for
each unit in the structure, whichever amount is more. The tax
imposed pursuant to this Subsection shall be in addition to the
demolition permit fee established from time to time by the City
Council and all other applicable fees and charges. Payment of the
tax, unless deferred as provided in Section 4-22-4, shall be due
upon issuance of a demolition permit by the Department, and is a
condition to the validity of the permit. The City shall have a lien
against the property which was the subject of the demolition
permit until applicable tax obligations imposed by this Chapter are
satisfied. The funds received by the City for the amount imposed
pursuant to this Subsection shall be dedicated to achievement of
the affordable housing goals and objectives as set forth in Section
4-22-1 of this Chapter. The demolition tax funds received pursuant
to the tax imposed by this Chapter shall be deposited directly into
the Affordable Housing Fund.

3

14.    Of particular relevance to this Complaint are the following three phrases found in ¶ 4-22-3: "Payment of the tax... is a condition to the validity of the permit." and "...for demolition of a Residential Structure..." and "...shall pay an affordable housing demolition tax."

15.    Defendant's Affordable Housing Demolition Tax is commonly referred to as its "tear-down tax." (hereinafter, "tear-down tax" or "tax")

16.    Therefore, it is an expressly authorized policy of the defendant to exact this tax from all owners of land improved with a "Residential Structure" who desire to remove said structure from their land.

17.    On information and belief, owners of "commercial structures" are routinely exempted from this tax obligation.

18.    On at least two occasions prior to enactment of these ordinances, plaintiff Michael Kathrein informed defendant in writing, that the proposed ordinance(s) would violate various Constitutional protections of Evanston property owners.

19.    Defendant ignored plaintiff's warnings.

20.    Defendant's ordinance 40-O-07 was adopted June 4, 2007.

21.    All building permits are issued by the Clerk of the City of Evanston Building Department (hereinafter, "Clerk").

22.    On or about September 5, 2007, plaintiff Michael Kathrein presented his application to the Clerk and directed to her the following inquiry, "*Will the City grant us (plaintiffs) a demolition permit if we refuse to pay the Affordable Housing Demolition Tax?*"

23.    The Clerk responded, "*No.*"

4

24.    Plaintiff followed with the question, "… *under any circumstances?"*

25.    Clerk's response, *"No exceptions. None."*

26.    Plaintiff said, *"I demand the City compensate me $10,000 for the $10,000 it demands from me. Will it do so?"*

27.    The Clerk's response was, *"Well no, of course not."*

28.    Defendant offered plaintiffs no appeal procedure or administrative remedy to protest the imposition.

29.    Sometime shortly thereafter, plaintiffs offered to sell their property to a potential buyer.

30.    Plaintiffs informed the buyer of the City's tear-down tax ordinance.

31.    The buyer demanded plaintiffs reduce the asking price of their property by at least $10,000 to offset the $10,000 reduced value caused by the ordinance.

32.    The buyer demanded no other concession.

33.    Plaintiffs refused to reduce their price by $10,000.

34.    Therefore, and as a result of the City's ordinance, plaintiffs were unable to engage in the transaction.

35.    Plaintiffs were damaged by the City's ordinance.

## LEGAL CLAIMS

### COUNT I
### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

36.    Plaintiffs re-allege and adopt paragraphs 1-35 as if fully set forth herein.

37.    By tradition and the common law, property owners have the right to enjoy or alter their existing property without financial penalty, normal permitting and other administrative fees notwithstanding.

5

38.    Defendant's ordinance denies property owners a common law right in their property (to remove improvements on their land without penalty) which was already vested to them prior to enactment of the ordinance.

39.    Defendant's tear-down tax penalizes the exercise of that right.

40.    Whether plaintiffs remit the payment is irrelevant.

41.    Whether plaintiffs remove the improvement immediately, or at any time in the future, is irrelevant.

42.    The effective value of plaintiffs' lot is automatically $10,000 lower than comparable lots vacant prior to June 4, 2007.

43.    The inevitability of the tax obligation is an immediate and quantifiable encumbrance upon plaintiffs' property in the amount of at least $10,000.[1]

44.    The encumbrance does not dissipate with time.

45.    Plaintiffs' property therefore, is immediately and adversely affected by the mere *existence* of the ordinance.

46.    In this case, plaintiffs' reduced net worth (reduced land value) *is* the property.

47.    This reduction is not contingent, conclusory or speculative.

48.    The Fifth Amendment prohibits governmental taking of property for public use without just compensation.

49.    The $10,000 taken from plaintiffs is for public use. (See par. 67)

50.    The only just compensation for reducing plaintiffs' net worth by $10,000 –

---

[1]    By way of example, if the market value of plaintiffs' property is $100,000 the day *before* enactment of the ordinance, plaintiffs must sell their property for $110,000 the day *after* enactment in order to realize the same net proceeds. The tax is the immediate, direct and proximate cause of a $10,000 reduction in plaintiffs' net worth.

is to compensate plaintiffs with $10,000.

51.    Further, it is prudent and legal for taxpayors to take proactive measures to reduce their tax burden. Vacant land is taxed at a lower rate than improved land.

52.    Plaintiffs have a right to cause their land to be taxed a lower tax rate without penalty.

53.    Defendant's ordinance penalizes that right.

54.    It is also prudent and legal for a property owner to take proactive measures to reduce their ownership expenses. Liability insurance is lower on vacant land. There are no utility costs on vacant land.

55.    Plaintiffs have a right to cause the costs of ownership of their land to be lower without penalty.

56.    Defendant's ordinance penalizes that right.

57.    Therefore, plaintiffs are forced to forfeit one right (the right to possess and protect their wealth) in order to exercise another right (to remove an improvement on their land).

58.    The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.

59.    Plaintiffs suffered an instant decrease in their net worth of at least $10,000 upon enactment of these ordinances, and defendants have failed to provide plaintiffs with just compensation.

60.    A "[s]tate, by *ipse dixit*, may not transform private property into public property without compensation...." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980).

7

(a) The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property. *See, e.g., United States v. Pewee Coal Co.,* 341 U. S. 114. Beginning with *Pennsylvania Coal Co. v. Mahon,* 260 U. S. 393, however, the Court recognized that government regulation of private property may be so onerous that its effect is tantamount to a direct appropriation or ouster. Regulatory actions generally will be deemed per se takings for Fifth Amendment purposes (1) where government requires an owner to suffer a permanent physical invasion of her property, *see Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, or (2) where regulations completely deprive an owner of "all economically beneficial us[e]" of her property, *Lucas v. South Carolina Coastal Council,* 505 U. S. 1003, 1019. Outside these two categories (and the special context of land-use exactions discussed below), regulatory takings challenges are governed by *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124. *Penn Central* identified several factors—including the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the character of the government action—that are particularly significant in determining whether a regulation effects a taking. Because the three inquiries reflected in *Loretto, Lucas,* and *Penn Central* all aim to identify regulatory actions that are functionally equivalent to a direct appropriation of or ouster from private property, each of them focuses upon the severity of the burden that government imposes upon property rights. Pp. 6-10.

> *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

This separate writing is to note that today's decision does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process. *Eastern Enterprises v. Apfel,* 524 U.S. 498, 539 (1998) (Kennedy, J., concurring in judgment and dissenting in part).

> *Id.*

### REMEDIES

Despite the strong presumption that damages, not injunctive relief, is the appropriate remedy in a Takings Clause action, our case law does acknowledge that there are limited circumstances in which injunctive relief is available. For instance, it is well accepted that, when the government has taken property for a private, rather than a public, use, injunctive or declaratory relief may be appropriate. *See Daniels,* 306 F.3d at 457 n. 11. Similarly, the Supreme Court has held that many facial challenges to legislative action authorizing a taking can be litigated immediately in federal court. *See San Remo Hotel, L.P. v. City & County*

> *of San Francisco*, 545 U.S. 323, 345 (2005); *Yee v. City of Escondido*, 503 U.S. 519 (1992); *see also Holliday Amusement Co. of Charleston v. South Carolina*, ___ F.3d ___, 2007 WL 1893384, at *2 (4th Cir. July 3, 2007) ("[T]he state procedures requirement does not apply to facial challenges to the validity of a state regulation.").

> *Peters v. Village of Clifton*, No. 06-3735 (7th Cir. 8/22/2007).

61.    [I]n *Roe v. Cook County*, 193 N.E. 472 (Ill. 1934), the Supreme Court of

Illinois has stated that:

> [w]hen the Constitution forbids the taking or damaging of private property without just compensation and points out no remedy, and no statute affords one, for the invasion of the right of property thus secured, the common law, which affords a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.

> It is entirely beside the point to say that even though our bill of rights assures every person that his property will not be taken for public use without just compensation, yet where a county or other public body violates this section by taking private property without condemnation proceedings, one may not recover simply because the Legislature has failed to provide any specific remedy. If this were true, the constitutional guaranty would be nugatory and private property could be taken with impunity and without redress to the injured property owner.    The constitutional provision itself, without remedial legislation, is basic law, which not only confers a right but presupposes a remedy.

> *Id.* at 473-74

> *Id.*

> The defendants argue that the policy considerations of § 1341 would be best served by this court holding that § 1341 bars all actions, equitable and legal. We cannot agree. After reviewing the statute, its legislative history and significant cases we can find no evidence which would indicate that § 1341 was directed at damage actions as well as equitable actions. Clearly if Congress had intended to prohibit all federal court relief in state tax matters, it could have done so. Congress, however, did not address the subject of damage actions. Congress thus did not give state tax officials absolute immunity for acts committed in their official capacity. Congress only prohibited certain specific remedies which due to their nature are highly disruptive of state proceedings. Quite clearly, if a county or state tax official intentionally and unjustifiably raised an individual's property assessment merely because of the individual's race, ethnic background or

9

political affiliation, the official could be liable for damages under § 1983 for the misuse of his authority. Section 1341 only bars certain forms of relief; it does not serve to deprive a federal court of jurisdiction of all actions merely because the defendant is a state or county tax official. If a state or county tax official intentionally violates a plaintiff's constitutional rights, he may be held liable for an action for damages.

> *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978).

62.    Defendant's tax is a violation of the takings clause of the Fifth Amendment.

## COUNT II
## DENIAL OF EQUAL PROTECTION OF THE LAWS

63.    Plaintiffs re-allege and adopt paragraphs 1-62 as if fully set forth herein.

64.    Plaintiffs do not challenge defendant's legal right to exact a tax . . . they challenge defendant's right to exact a tax in direct violation of plaintiffs' Constitutionally protected rights.

65.    Illinois Statute (65 ILCS 5/11-13-1(11)) states in relevant part:

MUNICIPALITIES
(65 ILCS 5/) Illinois Municipal Code.
DIVISION 13. ZONING
(65 ILCS 5/11-13-1(11)) (from Ch. 24, par. 11-13-1)

> Sec. 11-13-1. To the end that adequate light, pure air, and safety from fire and other dangers may be secured, that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, that the hazards to persons and damage to property resulting from the accumulation or runoff of storm or flood waters may be lessened or avoided, and that the public health, safety, comfort, morals, and welfare may otherwise be promoted, and to insure and facilitate the preservation of sites, areas, and structures of historical, architectural and aesthetic importance; the corporate authorities in each municipality have the following powers:
>
> (11) to require the creation and preservation of affordable housing, including the power to provide increased density or other zoning

incentives to developers who are creating, establishing, or preserving affordable housing; and

66.     65 ILCS 5/11-13-1(11) grants defendants, "...the power to require the creation and preservation of affordable housing... to promote the public health, safety, comfort, morals, and welfare."

67.     As an adjunct to Count I, "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Dolan v. City of Tigard* (1994), 512 U.S. 374, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304, 315-16, quoting *Armstrong v. United States* (1960), 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554, 1561.

68.     65 ILCS 5/11-13 does not grant defendants the power to arbitrarily select which of its citizens must bear the burden of, "creation and preservation of affordable housing," and which of its citizens shall be exempt from that burden.

69.     Nor does it grant defendants the power to select arbitrarily, which of its citizens must bear the burden of, "promoting the public health, safety, comfort, morals, and welfare" and which of its citizens shall be exempt from that burden.

70.     Section 4-20-1 of the defendant's ordinance states its purpose is to "... enhance the public safety, and welfare of the Evanston by promoting high-quality housing for households of all sizes and income levels ... in order to maintain the City's cultural and ethnic diversity."

71.     The worthiness of defendant's tax is irrelevant to plaintiffs' inherent rights in their property.

72.     A tax supporting "...the public health, safety, comfort, morals, and

11

welfare..." of the citizenry, must be imposed equally among all citizenry. (See par. 67)

73.     There appears to be no essential nexus between the imposition of the tax and the municipal interest allegedly advanced, *i.e.,* the ordinance places no burden upon the City to show a "specific and uniquely attributable" relationship between its exaction and its need, as required under 605 ILCS 5/5-906(a)(1).

74.     If the local government cannot demonstrate that its exaction is directly proportional to the specifically created need, the exaction becomes "a veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations." *Pioneer Trust & Savings Bank v. Mount Prospect,* 22 Ill.2d 381, 176 N.E.2d, at 802 (1961).

75.     Defendant's tear-down tax is a special purpose revenue tax exacted under the guise of a building ordinance; it is not a "proper exercise of zoning powers," pursuant to 65 ILCS 5/11-13-1(11).

76.     This penalty is triggered by nothing more than plaintiffs' financial condition, the exercise of existing rights in their property, and that their property falls within a discriminatory classification, *i.e.,* not a protected classification.

77.     Defendant's tax is discriminatory.

78.     The law of Illinois is summed up in the following excerpt from *Aldrich v. Harding,* 340 Ill. 354, 172 N.E. 772, where the court said:

> "The valuation of property for taxing purposes must be the result of honest judgment and not of mere will. *Chicago, Burlington & Quincy Railroad Co. v. Cole,* 75 Ill. 591. An assessing body has the right, and it is its duty, to exercise its own judgment in determining values, but it has no right to fix a valuation by its will, alone, without the exercise of judgment. *People ex rel Carr v. Stewart,* 315 Ill. 25, 145 N.E. 600. In *Pacific Hotel Co. v. Lieb,* 83 Ill. 602, the court said that where 'the valuation is so grossly out of the way as to show that the assessor could not have been honest in his

valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose.' In *People's Gas Light Co. v. Stuckart*, 286 Ill. 164, 121 N.E. 629, 633, the court said an overvaluation of property may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive. It was further stated that 'a willful disregard by the members of the board of a known duty for the purpose of producing a result which could not otherwise have been produced may be urged against an assessment as a fraud.'"

Consequently we conclude that under the law of the state of Illinois, a court of equity has the right to interfere in cases such as that presented here; that there can be no question that the court of bankruptcy, sitting as a court of equity, has the same authority and that the facts fully justify its order. That debtors were deprived of equal protection is apparent from *Hillsborough Tp., Somerset County, v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 448, 90 L.Ed. 358, where the court said: "The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment."

> *In re Chicago Rys. Co.*, 175 F.2d 282 (7th Cir. 1949).

79.    Defendants used the legislative process to grant immunity to commercial

property owners is contrary to established Illinois law.

> "It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasi judicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government. I need not dwell at length on the obvious opportunity this affords for special privilege, for the granting of favors to political friends or financial benefactors, for the withholding of permits from those not in the good graces of the authorities, and so on. . . ."

> > *Bossman v. Village of Riverton*, 291 Ill. App.3d 769, 772-73, 684 N.E.2d 427 (1997) (citation omitted).

The case of *La Salle National Bank v. City of Evanston*, 57 Ill. 2d 415, 428, 312

N.E.2d 625, 632 (1974), is often cited:

13

"Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. [Citations]..."

*Id.*

It is important to note that in *Evanston* the municipality rejected the property owner's attempt to rezone the property, and the Supreme Court affirmed the municipality's decision to stand behind its zoning ordinance. *Evanston* is not authority for the proposition that a court should give deference to a municipality's decision when it grants a property owner's request for special treatment and engages in spot zoning. *See Rodriguez v. Henderson*, 217 Ill. App.3d 1024, 1030, 578 N.E.2d 57, 61, 160 Ill. Dec. 878 (1991).

*Id.*

80.    Plainly, defendant granted "special treatment" (exemption from the tax) to favored property owners.

81.    Defendant's tax is a violation of the Equal Protection clause of the Fourteenth Amendment.

## COUNT III
## DENIAL OF DUE PROCESS OF LAW

82.    Plaintiffs re-allege and adopt paragraphs 1-81 as if fully set forth herein.

83.    As shown above, plaintiffs are deprived of their property by a municipal process that conflicts with their rights under the Constitution.

84.    Plaintiffs are deprived of their property without due process of law.

85.    Generally, non-home-rule units possess zoning powers under the Illinois Municipal Code (65 ILCS 5/11-13-1 et seq. (West 1994)). However, ordinances passed under these powers that conflict with the spirit and purpose of a state statute are

preempted by the statute. See *Hartnett*, 117 Ill. App. 3d at 1015. *Commonwealth Edison Co. v. City of Warrenville*, 288 Ill. App. 3d 373, 223 Ill. Dec. 732, 680 N.E.2d 465 (1997).

86.     Substantive due process "prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests. *Wash. Teachers' Union Local #6 v. Bd. of Educ.*, 109 F.3d 774, 781 (D.C. Cir. 1997) (citation omitted).

87.     Defendant's tax is a violation of the Due Process clause of the Fifth and Fourteenth Amendments.

## COUNT IV
## VIOLATION OF THE UNIFORMITY CLAUSE
## OF THE ILLINOIS CONSTITUTION

88.     Plaintiffs re-allege and adopt paragraphs 1-87 as if fully set forth herein.

89.     Defendant's tax violates the Uniformity of Taxation Clause compelled by article IX of the Illinois Constitution, 1970.

## COUNT V
## CLASS ALLEGATIONS

90.     Plaintiffs re-allege and adopt paragraphs 1-89 as if fully set forth herein.

91.     As a result of the defendant's illegal acts described herein, *supra*, plaintiffs and other unknown parties have been deprived of rights secured by Illinois common law, the Illinois Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution.

15

92.    There are 15,611owner occupied residential units in Evanston.[2]

93.    There are 14,040 rental residential units in Evanston.

94.    On information and belief, there are thousands of separate parcels of land immediately, directly and adversely affected by the ordinances cited, *supra*.

95.    On information and belief, defendants have collected substantial monies from unknown property owners pursuant to the ordinances cited.

96.    On information and belief, the aggregate decrease in the net value of all affected properties, as a result of the ordinances, is greater than $35,000,000.

97.    It is extremely unlikely that all owners of residential property in Evanston reside in the affected properties and/or reside elsewhere in Evanston, therefore discovery and joinder of all members is impractical in light of class dispersion and size.

98.    Common questions of fact and law predominate each proposed sub-class, and class action therefore, is the superior form of adjudication.

99.    There are no conflicting issues between the plaintiffs and members of the proposed classes.

100.    There is no risk of inconsistent adjudication among separate class members.

101.    There is no risk that adjudication might adversely bind non-parties or impair their ability to protect their interests.

102.    Numerosity and superiority apply under all circumstances.

103.    Plaintiffs bring this action individually and for the following sub-classes:

    a.    Relative to Count I, all persons who, at any time on or after two

---

[2]    Source: http://www.city-data.com/housing/houses-Evanston-Illinois.html

years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 or the acts of the individual defendants as described herein.

        b.    Relative to Count II, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 or the acts of the individual defendants as described herein.

        c.    Relative to Count III, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 or the acts of the individual defendants as described herein.

        d.    Relative to Count IV, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 or the acts of the individual defendants as described herein.

    104.    Each proposed sub-class satisfies each of the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure and class certification for each sub-class is appropriate under Rule 23(b)(3).

    105.    Plaintiffs stipulate that any class certified under Rule 23 will be represented by experienced, qualified and competent counsel of plaintiffs' election.

    106.    Pursuant to Rule 23(c), a formal motion for certification will be filed as soon as practicable.

## RELIEF REQUESTED

1.    Trial by jury on all issues triable by jury;

2.    Actual damages in the amount of $35,000,000;

3.    Compensatory damages in an amount to be determined by a jury;

4.    Punitive damages in an amount to be determined by a jury;

5.    Plaintiffs' cost of this suit;

6.    The Court enter a declaratory judgment that defendant's Affordable Housing Demolition Tax is Unconstitutional;

7.    The Court enter a declaratory judgment that defendant's actions have violated the Constitutional rights of the plaintiffs;

8.    The Court enter an Order requiring defendants to return all money collected or due and owing, from all parties, including each proposed sub-class, pursuant to either ordinance;

9.    The Court enter an Order requiring defendants to release any liens placed against any property pursuant to either ordinance;

10.    The Court enter an Order requiring defendants to stay enforcement of either ordinance;

11.    The Court enter a Temporary Order prohibiting defendants from modification or enforcement of the ordinances cited above until this action is fully resolved;

12.    In order to avert additional violations of the Constitution, the Court enter a Temporary Order prohibiting defendants from enacting any new "taxes," "licenses" or "fees" until this action is fully resolved;

13.    The Court enter a Permanent Injunction prohibiting defendants from exercising undue scrutiny of or retaliation against the individual plaintiffs for having brought this suit, or for any other reason;

14.    Leave to amend complaint after completion of discovery; and

15.    Such other relief as this Court deems just, proper, and equitable.

Respectfully submitted,

Dated: January 4, 2008

Michael Kathrein
7601 North Eastlake Terrace
Chicago, Illinois 60626-1421
(773) 761-6000
(773) 465-7755 fax
federalcase@gmail.com

Victoria Kathrein
7601 North Eastlake Terrace
Chicago, IL  60626-1421
(773) 761-6000
(773) 465-7755 fax

19

## VERIFICATION

Sworn to under penalties of perjury.  28 U.S.C. § 1746.

Michael L. Kathrein

Victoria Kathrein