IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael L. Kathrein and<br>Victoria Kathrein,<br><br>    Plaintiffs,<br><br>v.<br><br>City of Evanston, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) No.   08 C 83<br>) Honorable Ronald Guzman<br>) Magistrate Judge Sidney Schenkier<br>) Judges Presiding<br>) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO AMENDED AND SUBSTITUTED MEMORANDUM IN SUPPORT OF PLAINTIFF VICTORIA KATHREIN'S MOTION FOR CLASS CERTIFICATION**

"[T]he Court is required to determine whether the case as framed is likely to proceed most sensibly as a class action." *Hyderi v. Washington Mutual Bank*, 235 F.R.D. 390, 400 (N.D. Ill. 2006).

## I. INTRODUCTION

Plaintiff's case seeks to declare as unconstitutional Evanston's widely supported and unanimously passed Demolition Tax and distribute "refunds" to Evanston residential property owners, regardless of whether they paid the tax.

Plainly, Plaintiff's case is strange. Stranger still, however, is that Plaintiff's counsel has now moved for class certification. The Motion for Class Certification ("Motion") should be denied for a number of reasons:

1. This Court lacks subject matter jurisdiction under the Tax Injunction Act;

2. The class definition is flawed;

3. The only potential plaintiffs are not numerous;

4. Plaintiff has failed to meet her burden of showing that she and her counsel adequately represent the class; and

1

5. Plaintiff has failed to meet her burden of showing that a class action is superior to other available methods of fair and efficient adjudication of this controversy.

Additionally, the Motion should be denied because this case cannot sensibly proceed as a class action. Through this Motion, Plaintiff seeks to certify a class of property owners, who did *not* pay the challenged Demolition Tax, so that they can receive at least $10,000 each from Evanston, which will presumably raise property taxes to pay for this $35 million windfall to these very same property owners/class members. If successful in accomplishing this bizarre goal, nobody wins except the putative class action lawyers. *See Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F.R.D. 26, 29 (S.D.N.Y. 1972).

The Motion should be denied. This case should be dismissed for lack of jurisdiction and, if Plaintiffs so chose, re-filed in the Circuit Court of Cook County as a simple declaratory judgment action. In that proper forum, the case will meet a quick and proper demise.

## II. FACTS AND ALLEGATIONS

From 2000 to 2005, numerous residential properties in Evanston were being flipped.[1] This flipping resulted in a loss of affordable housing within Evanston. Moderately priced homes were being demolished and replaced with million dollar homes. (Ex. #1.) For example, in 2000, demolition permits were issued for three residential properties, which were all purchased in 1999 for an average sale price of $269,333. However, after the demolition permits were issued, within one year, the residential properties were sold for an average price of $884,349. (*Id.*) In 2001, two demolition permits were issued for residential properties that had been purchased the previous year for an average price of $327,500, but about one year later, were sold for over $1 million each. (*Id.*) Similar development occurred in 2002, 2003 and 2004. In 2004, seven

---

[1] "Flipping" is the process of purchasing real property, rehabilitating it and selling the property for a profit. *See* "flipping" at www.en.wikipedia.org/wiki/Flipping.

demolition permits were issued for residential properties, which had an average sales price of $517,333, and sold that about a year later for $1,183,938. (*Id.*) The trend continued in 2005. (*Id.*)

In November 2005, Evanston's Planning and Development Committee unanimously voted (9-0) in favor of the Affordable Housing Demolition Tax. (Ex. #2.) Later, the Evanston City Council passed Ordinance 139-0-05 to provide for affordable housing. The purpose of the Ordinance was to "provide a source of funding for the creation, maintenance, and improvement of safe and decent affordable housing in the City of Evanston." (Ex. #3.) To further that purpose, an Affordable Housing Fund was created. (Ex. #4.) The Affordable Housing Fund expends money for the creation, preservation, maintenance and improvement of affordable housing. (*Id.*) Evanston imposed the Demolition Tax to fund the Affordable Housing Fund. (Ex. #5.) The Demolition Tax requires the payment of a tax of $10,000.00 when a single-family detached residential structure is demolished. *Id.* The remittance of the Demolition Tax is payable upon the issuance of the demolition permit, which allows the residence to be torn down. *Id.* The money received from the Demolition Tax is deposited directly into the Affordable Housing Fund to administer programs for creating, preserving, maintaining and improving affordable housing. *Id.* After passage of the Ordinances adopting the Demolition Tax, the tax was amended in 2006. (Ex. #2.)

The Evanston City Code also provides for a tax deferral option of the Demolition Tax. (Ex. #6.) Under the Demolition Tax deferral option, a property owner who has owned a residential structure for three consecutive years and who seeks a demolition permit may opt for a deferral of the Demolition Tax. (*Id.*) To obtain the deferral, the person applying for the demolition permit must complete a simple form and provide documentation showing that all real estate property taxes have been paid, that all city liens and judgments recorded on the property

have been paid and that the person has owned the property for three years. (*Id.*) Upon receipt of this and other information, the Director of Community Development may grant the deferral. Instead of paying the Demolition Tax, a lien in the amount of the tax is recorded. (*Id.*) After three years, the property owner can apply to the Director to release the lien. (*Id.*) However, if the property owner who obtained the deferral of the Demolition Tax sells the property, the property owner must pay the tax to release the lien. (*Id.*)

In addition to the tax deferral option, the Evanston City Code also provides for a stability incentive. Under the Demolition Tax stability incentive, if the property owner remains in possession of the residential property for which it paid the Demotion Tax for three years, the property owner can seek an amount of money from the City equal to the amount of Demolition Tax paid. (Ex. #7.) Like the deferral option, the property owner can apply to the Director, establishing that all taxes have been paid and that there are no City liens or judgments recorded against the property. (Ex. #7.)

The Demolition Tax was widely supported and passed through the Planning and Development Committee and the City Council unanimously. (Ex. #8; #9.) Evanston residents, property owners and civic groups supported the Demolition Tax. (*Id.*)

Since January 1, 2007, there have been only twelve (12) demolition permits issued. (Ex. #1.) As a result of those permits, $150,000 has been collected in Demolition Taxes. (*Id.*) Since June 4, 2007, there have been eleven (11) demolition permits issued. Additionally, there has been one deferral requested, which was granted. (*Id.*)

According to Plaintiff's allegations, she and her husband are residents of Evanston and own certain real property located within the City. (Ex. #10 at ¶3, 15.) Curiously, nowhere in any of her filings does Plaintiff identify the location of the property. For some unknown reason,

Plaintiffs want to tear down the residential structure on this real property. (Ex. #10 at ¶17.) Plaintiff sought a demolition permit from Evanston to tear down this structure. Plaintiff alleges that when she sought the permit, a Building Department Clerk informed her that she must pay the Demolition Tax, which she refused to do. (Ex. #10 at ¶33-9.) Plaintiff has not identified the Clerk and has not alleged that they sought a deferral or that they intend to own the property for three years after the demolition, which would make her eligible for the stability incentive.[2]

### III. PROPER STANDARD ON MOTION FOR CLASS CERTIFICATION

In determining whether to certify a class, the court must engage in a rigorous analysis. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The district court has an independent duty to determine whether a class should be certified. *Gilmore v. Southwestern Bell*, 210 F.R.D. 212, 217 (N.D. Ill. 2001). Further, the district court need not accept the plaintiffs' allegations as true; indeed, the court should probe behind the pleadings to determine if certification is appropriate. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001); *Hyderi*, 235 F.R.D. at 395. Although the court should not determine the merits of the pleadings, the merits are not ignored as they are intertwined with many of the considerations required for certification. *Retired Chicago Police*, 7 F.3d at 598-99; *Gilmore*, 210 F.R.D. at 217. Not only is the court allowed to consider affidavits and documents in making the determination, but the plaintiff is also expected to produce some evidence to establish that certification is proper. *See Payton v. County of Carroll*, 473 F.3d 845, 854 (7th Cir. 2007) citing *Szabo*, 249 F.3d at 676. During this process it must be remembered that the plaintiffs bear the burden of establishing that certification is appropriate. *Retired Chicago Police*, 7 F.3d at 596.

---

[2] Because of the questionable nature of Plaintiff's allegations and lack of evidence supplied in support of their Motion, Defendants request that if this Court is inclined to grant the Motion, that Defendants be given leave to take class discovery first. *Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (discovery may be necessary to determine if class should be certified).

# IV. ARGUMENT

The Motion should be denied for at least five reasons. First, this Court lacks jurisdiction over the claims. Second, the Motion's class definition is flawed. Third, there are only eleven residential property owners who have paid the Demolition Tax since June 4, 2007. Fourth, Plaintiff and her counsel have failed to demonstrate that they will adequately represent the class as they have defined it. Finally, Plaintiff has not met her burden of proof to establish that a class action is a superior method of adjudication.

## A. This Court Lacks Jurisdiction to Hear the Claims.

This Court can determine whether jurisdiction exists before determining whether class certification is proper. Although the Supreme Court's decision in *Amchem Prods. v. Windsor*, 521 U.S. 591, 612 (1997) speaks of class certification being, at times, logically antecedent to the jurisdictional issue of standing, jurisdiction in that case was based on diversity so that jurisdiction could exist only if the class were certified. Addressing jurisdictional issues such as the Tax Injunction Act before class certification is still the proper procedure. *See* Manual for Complex Litigation, §21.133 at p. 252; Mullenix, *Standing and Other Dispositive Motions after Amchem and Ortiz: The Problem of "Logically Antecedent" Inquiries*, 2004 Mich. St. L. Rev. 703, 710, 732-34 (2004). The Seventh Circuit's decision in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) is not contrary to this procedure. *See* Mullenix, 2004 Mich. St. L. Rev. at 728. In fact, in 2006, this Court affirmed a report and recommendation of a magistrate judge that recommended that a motion for class certification be denied because the court lacked jurisdiction. *See Anthony v. American Airlines*, 2006 U.S. Dist. LEXIS 73804, *2 (N.D. Ill. 2006). And in *Uhl v. Thoroughbred Technology*, 309 F.3d 978, 983-84 (7th Cir. 2002), the Seventh Circuit addressed two jurisdictional issues before addressing class certification.

Evanston's Demolition Tax falls within the scope of the Tax Injunction Act, thereby depriving this Court of jurisdiction.

### 1. Evanston's Demolition Tax is a Tax.

Plaintiff's Motion appears to argue that the Demolition Tax is not truly a tax, but some type of fee, thereby exempting it from the scope of the Tax Injunction Act. Plaintiff is wrong.

The term "tax" under the Tax Injunction Act is broadly defined. *See Cmty. Housing. Mang. V. New Rochelle*, 381 F. Supp. 2d 313, 319 (S.D.N.Y. 2005) (finding "user fee" to be a tax). A tax is basically any revenue collection and generating device. *See New Rochelle*, 381 F. Supp. 2d at 391. A "tax" is forced contribution of money to pay the government, which in turn uses the money for the public. *See Hill v. Kemp*, 478 F.3d 1236, 1244-45 (10th Cir. 2007). It is irrelevant that a taxpayer can avoid the tax through forbearance. *Id.* at 1252-53.

The Demolition Tax is clearly a "tax" as that term is contemplated under the Tax Injunction Act. Evanston imposes the tax on property owners who seek to demolish residential structures. The tax collected is then used to fund Evanston's Affordable Housing Fund, which is then used for creating, maintaining and improving affordable housing.

### 2. Plaintiff's Requested Relief Falls within the Scope of the Act.

The Tax Injunction Act is a jurisdictional statute. *Platteville Area Apartment Association v. City of Platteville*, 179 F.3d 574, 582 (7th Cir. 1999). The Tax Injunction Act deprives District Courts of jurisdiction to hear challenges to State and local taxes. *Levy*, 510 F.3d at 757. The Tax Injunction Act provides, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. §1341.

The Tax Injunction Act is not nearly as limited as the name may imply. The Tax Injunction Act applies to suits seeking not only injunctions, but also to suits seeking declaratory relief as well as suits seeking damages under 42 U.S.C. §1983. *Levy*, 510 F.3d at 763-64 (affirming dismissal of §1983 damage claim based on Act); *Wright v. Pappas*, 256 F.3d 635, 636-37 (7th Cir. 2001) (same); *Platteville*, 179 F.3d at 582 (Act applies to declaratory judgment actions). Moreover, the Tax Injunction Act bars suits challenging local government and municipal taxes, not just State taxes. *Wright*, 256 F.3d at 636; *Platteville*, 179 F.3d at 582.

Under the Tax Injunction Act, the dispositive question is whether the suit seeks relief that would reduce the flow of tax revenue to the governing body. *Levy*, 510 F.3d at 762. The description that plaintiffs give to their complaint is irrelevant; instead what matters is the relief sought. *Id.* Fundamentally, when plaintiffs allege that a tax collection singles them out for unjust treatment, the Tax Injunction Act applies to bar jurisdiction. *Id.*

Unquestionably, Plaintiff's Amended Complaint seeks declaratory and injunctive relief in addition to $35,000,000.00 in damages. (Ex. #10 at ¶137.) Obviously, this relief seeks to reduce the flow of revenue to Evanston's Affordable Housing Fund. Consequently, the Tax Injunction Act applies.

### 3. Illinois Provides a Plain, Speedy and Efficient Remedy.

Plaintiff cannot argue that Illinois courts do not provide a plain, speedy and efficient remedy. A plain, speedy and efficient remedy does not mean a perfect process and certainly does not mean that the plaintiff will prevail in the State courts. *See Miller v. Bauer*, 517 F.2d 27, 32 (7th Cir. 1975) (need not be best remedy). State court remedies meet the requirements of the Tax Injunction Act by overcoming a low procedural threshold. *See Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522 (1981).

Under Illinois law, if a party bears the burden of a tax, then that party has standing to sue and challenge the tax in State court. *See Village of Arlington Heights v. RTA*, 653 F.2d 1149, 1151 (7th Cir. 1981). It is common practice for tax payers to file declaratory judgment actions in the Circuit Courts to challenge the validity of taxes imposed upon them. *See, e.g., Sun Life Assurance Co. v. Manna*, 227 Ill.2d 128 (2007) (alien insurer challenged Retaliatory Tax on federal and state constitutional grounds). Those tax payers may not win in their suits (just as Plaintiffs will not in this case either). *Id.* However, the procedural mechanisms for tax payers exist, thereby meeting the minimal requirements of the Tax Injunction Act.

### B. Plaintiff's Motion for Class Certification Should Be Denied for Failing to Meet the Requirements of Rule 23.

Under Rule 23, Plaintiff is required to meet *all* the requirements of Rule 23(a) and then one of the requirements under Rule 23(b). *Retired Chicago Police*, 7 F.3d at 596; Fed. R. Civ. P. 23. Initially, Plaintiff's class definition is insufficient under Rule 23(a). Moreover, Plaintiff cannot meet the numerousity or adequate representation requirements of Rule 23(a). That failure alone is sufficient to doom the Motion. Further, Plaintiff only seeks certification under Rule 23(b)(3). However, Plaintiff has failed to meet her burden of proof that a class action is superior to other available methods for a fair and efficient adjudication of the controversy.

#### 1. The Plaintiff's Class Definition Is Flawed.

Plaintiff's class definition is hopeless overbroad. A prerequisite for any class action is a proper class definition. *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 58-81 (N.D. Ill. 2005) *aff'd* 472 F.3d 506 (7th Cir. 2006) (class definition consisting of those who purchased diet Coke in Illinois improper). A class definition cannot be based upon a plaintiff's mental state. *Id.*

Here, the class is defined as all persons in the United States who, from June 4, 2007, own or did own real property within Evanston, Illinois, which was improved with a residential

9

structure. This definition is improper. Importantly, the definition includes class members who have not paid the Demolition Tax.

Moreover, the definition includes class members who have no intention to act in a way that would subject them to the Demolition Tax. Notably, the definition includes (1) owners of residential real estate who have no intention to demolish their residences; (2) owners of residential real estate who intend to demolish their residences but who will seek a deferral; (3) owners of residential real estate who intend to demolish their residences but who will seek a stability incentive. Clearly, these possible class members' intentions and mental states prevent the proposed class.

The only even remotely proper class members who could challenge the Demolition Tax are those residential property owners who actually paid the tax. The number of that class comes to a paltry 11 residential property owners. (Ex. #1.) And Plaintiff is not even within that class of residential property owners because she did not pay the Demolition Tax. *Oshana*, 225 F.R.D. at 580-81. Moreover, those residential property owners who would be in the possible class would be subject to the defense of the voluntary payment doctrine. *Geary v. Dominick's Finer Foods*, 129 Ill.2d 389, 544 N.E.2d 344, 346 (1989) (tax-payers who fail to pay a tax under protest are barred from seeking refunds); *Isberian v. Gurnee*, 116 Ill. App. 3d 146, 452 N.E.2d 10, 14 (2nd Dist. 1983); *see also Randazzo v. Harris Bank*, 262 F.3d 663, 668-69 (7th Cir. 2001). This doctrine would bar those residential property owners' claims.

Because Plaintiff's class definition is overly broad, the motion for class certification should be denied.

### 2. Plaintiff's Only Possible Class Is Not Numerous.

As shown above, Plaintiff has failed to meet her burden of showing that the class is so numerous that joinder is impracticable. Conclusory allegations about the size of a class and the impracticality of joinder are insufficient. *Roe v. Highland*, 909 F.2d 1097, 1100 n. 4 (7th Cir. 1990). Nevertheless, using Plaintiff's time frame, there are only 11 residential property owners in Evanston who paid the Demolition Tax. (Ex. #1.) This number is far less than the usual minimum requirement of forty. *See Hyderi*, 235 F.R.D. at 396. Additionally, the fact that all the proposed class members own property in this Judicial District establishes that that joinder would not be impracticable. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). And again, Plaintiff's speculation that other residential property owners may be located elsewhere in the country is pure speculation, not entitle to any weight.[3]

### 3. Plaintiff Has Not Established that She Can Adequately Represent the Class.

Plaintiff has failed to meet her burden of showing both requirements under Rule 23(a)(4). Adequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of the representative provided to protect the different interests of the class members. *Retired Chicago Police*, 7 F.3d at 598. Class representatives who have antagonistic interests to the class cannot adequately represent the class. *Id.*

With respect to the adequacy of counsel, Plaintiff has presented absolute no evidence. Obviously, because Plaintiff bears the burden, the failure to present *any* evidence of counsel's adequacy requires a finding of inadequacy. Plaintiff's class counsel are not presumed to be adequate. *Gilmore*, 210 F.R.D. at 219-20 ("presumption would be inconsistent with plaintiff bearing the burden of proof"). In this case, not only is there no evidence to support adequacy,

---

[3] Based on the dispute as to the number of class members, Defendants should receive a hearing on the issue of class certification following the opportunity to take discovery. *See Szabo*, 249 F.3d at 676.

but there is evidence to show inadequacy. Strangely, in Plaintiff's initial memorandum, Plaintiff's counsel claimed to have supplied an affidavit showing his competency. But, in fact, no affidavit was attached at all. Then with this Motion, Plaintiff indicated that she knew that establishing the adequacy of counsel was required, but then provided no information. (Ex. #11.) In fact, Plaintiff's counsel explicitly withdrew any reference to an affidavit establishing competency. (Ex. #12.) The failure of counsel to provide an affidavit establishing competency is evidence that they are, in fact, not competent to act as class counsel. *See, e.g., Butler v. Illinois Bell Telephone*, 2008 U.S. Dist. LEXIS 11901, *15 (N.D. Ill. 2008) ("Counsel submit no affidavit or declaration setting forth their qualifications."); *Herman v. Central States*, 2003 U.S. Dist. LEXIS 14688, *6 (N.D. Ill. 2003) (counsel "failed to provide affidavits as to counsel's qualifications until defendants pointed out the lack of evidence"). Counsel's boilerplate brief with little analysis also weighs against class certification. *Gilmore*, 210 F.R.D. at 220. Independent research of counsel indicates that neither counsel nor his firm does class action work. (Ex. #13.) A Lexis search of counsel shows involvement in only one class action, and that was as a defense counsel, with nearly a dozen other defense lawyers. Moreover, experienced class counsel would not let a *pro se* complaint remain as the pleading, as counsel has done here. Finally, without any evidence of the counsel's and Plaintiff's resources it is unknown if there exists sufficient funds to send out class notice to the nearly 30,000 class members Plaintiff claims to exist. Because Plaintiff has failed to provide *any* evidence of counsel's competency (and in fact eschewed the opportunity to do so), this Court is left to guess whether counsel has ever represented a class action or litigated this substantive area of the law previously. Therefore, Plaintiff has failed to establish this required element.

In addition to the failure to establish the adequacy of counsel, Plaintiff is also an inadequate representative of the class. Plaintiff claims to represent *all* residential property owners in Evanston. But many of these residential property owners support the challenged Demolition Tax. (Ex. #8, #9.) All nine aldermen voted in favor of the Demolition Tax, including those that own residential property in Evanston. (Ex. #2, #8.) When class members disagree with the goals of the class action, the class representative is improperly antagonistic, and a class should not be certified. *See Chicago Retired Police*, 7 F.3d at 598 (certification denied because class included members who would be hurt if class action succeeded); *see also Alston v. Virginia High School League*, 184 F.R.D. 574, 579 (W.D. Va. 1999) (majority of class members desired to preserve status quo); *Pratt v. CHA*, 155 F.R.D. 177, 180 (N.D. Ill. 1994) (prominent and vigorous dissent within class required decertification). And the ability to opt out of the class is no answer to this type of antagonism between the class representative and the class members. *See Free World Foreign Cars*, 55 F.R.D. at 29.

### 4. A Class Action is Not a Superior Method for Adjudicating this Claim.

Plaintiff has also failed to meet the requirements of Rule 23(b)(3), the only basis upon which she seeks certification. Under Rule 23(b)(3), a class can be certified only if the plaintiff establishes that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Under this component of Rule 23, a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually. *See Wahl v. Midland Credit*, 243 F.R.D. 291, 301 (N.D. Ill. 2007). Here, Plaintiff incredibly claims that a $10,000 claim is too insignificant. This claim is significant. As a result, this case is not a classic negative value suit, which was the purpose of allowing class actions. *See Castano v. American Tobacco Co.*, 84 F.3d

13

734, 748 (5th Cir. 1996) ("The most compelling rationale for finding superiority in a class action – the existence of a negative value suit – is missing in this case.").

The existence of reasonable damages combined with the ability to recover attorneys' fees weighs heavily against finding superiority. *Id.* In *Hyderi v. Washington Mutual Bank*, 235 F.R.D. 390, 404 (N.D. Ill. 2006), the Court specifically found that the possibility of $1,000 in damages, plus recovery of attorneys' fees was a compelling basis for not certifying the class. Here, Plaintiff's suit is brought pursuant to Section 1983, which, in conjunction with 42 U.S.C. §1988, provides for attorneys' fees to a prevailing party. If the possibility of recovering $1,000 plus attorneys' fees prevented class certification in *Hyderi*, then the possibility of recovering ten times that amount plus attorneys' fees should likewise prevent class certification in this case.

Additionally, Plaintiff has failed to prove that a class action is superior for a very fundamental reason. There is a simple method for challenging the Demolition Tax. When assessing superiority, a district court must consider what other procedures exist for disposing of the dispute before it. It must then compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court. *Hyderi*, 235 F.R.D. at 403-04. Here, the proper, efficient and established procedure is for Plaintiff to pay the Demolition Tax under protest and file a declaratory judgment action in the Circuit Court of Cook County seeking to declare the Demolition Tax invalid and unconstitutional. Such suits are common. *See, e.g., Sun Life Assurance Co. v. Manna*, 227 Ill.2d 128 (2007); *Wexler v. Wirtz Corp.*, 211 Ill.2d 18, 809 N.E.2d 1240 (2004); *PrimeCo v. ICC*, 196 Ill.2d 70, 748 N.E.2d 195 (2001); *Milwaukee Safeguard v. Selcke*, 179 Ill. 2d 94, 688 N.E.2d 68 (1997). This simple procedure would resolve Plaintiff's

claim that the Demolition Tax is unconstitutional. If Plaintiff were to prevail, Evanston could not continue to impose the tax and Plaintiff would receive her $10,000 back plus attorneys' fees. That is the superior method for resolving this case – not a federal class action, in which jurisdiction is highly doubtful and class members who were not injured receive huge windfalls.

## V.  CONCLUSION

This case does not belong in federal court. And it certainly should not be certified as a federal class action. Jurisdiction, class definiteness, numerousity, adequacy and superiority are all absent. This case belongs, if anywhere, in the Circuit Court of Cook County. The Motion should be denied.

Respectfully submitted,

City of Evanston, et al.,

s/ Iain D. Johnston                           s/ Jack M. Siegel

Iain D. Johnston                               Jack M. Siegel
Johnston Greene LLC                      Holland + Knight LLP
542 S. Dearborn Street, Suite 1310   131 S. Dearborn St., 30th Floor
Chicago, IL  60605                           Chicago, IL  60603
(312) 341-3900                                 (312) 263-3600