# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Michael L. Kathrein and )
Victoria Kathrein, )
)
Plaintiffs, )
)
)
v. ) No.    08 C 83
) Honorable Ronald Guzman
City of Evanston, et al., ) Magistrate Judge Sidney Schenkier
) Judges Presiding
Defendants. )

## DECLARATION OF DONNA SPICUZZA

Pursuant to 28 U.S.C. §1746, Donna Spicuzza states the following based on personal knowledge.

1. I am currently employed by the City of Evanston as a Housing Planner.
2. In my capacity as Housing Planner, I am responsible for maintaining the documents relating to the City's Affordable Housing Demolition Tax, including information obtained before the passage of the Ordinance and the locations for which demolition permits were requested.
3. Attached to this declaration are true and accurate copies of documents relating to the Affordable Housing Demolition Tax. These documents include a Tear Down Analysis.
4. Since January 1, 2007, to the present, the City of Evanston has issued twelve (12) demolition permits.
5. As a result of these permits, the City of Evanston has received $150,000 in Demolition Taxes. (The residential property at 2340 Orrington included 4 units, resulting in a tax of $40,000.)
6. Of these twelve demolition permits, 11 have been issued since June 4, 2007.
7. To date, one applicant has requested the tax deferral option of the Demolition Tax, which was granted.
8. The City of Evanston has no record of either Michael Kathrein or Victoria Kathrein requesting a tax deferral of the Demolition Tax.
9. If called to testify as a witness, I am competent to testify to the foregoing.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of May, 2008.

Donna Spicuzza
Donna Spicuzza



EXHIBIT
1

# City of Evanston Tear Down Analysis
## October, 2005
### Sale Price of Replacement Housing at Demolition Permit Locations

| Address | Demo Permit Date | Pre Demo Sale | AMOUNT | Post-Demo Sale | AMOUNT | Yr. New Sold |
|---|---|---|---|---|---|---|
| 2430 Simpson | Feb-98 | 11/25/1997 | $400,000 | 06/29/98 | $599,000 | |
| AVG | | | $400,000 | | $599,000 | 1998 |
| 2526 Ridgeway | Sep-98 | 7/6/1998 | $235,000 | 04/16/99 | $780,888 | |
| 2734 Noyes | | 12/14/1998 | $231,000 | 08/16/99 | $729,000 | |
| AVG | | | $233,000 | | $754,944 | 1999 |
| 2711 Noyes | Jul-99 | 6/15/1999 | $258,000 | 05/18/00 | $849,000 | |
| 2028 Lincoln | Oct-99 | 8/18/1999 | $305,000 | 06/14/00 | $1,038,382 | |
| 2124 Ewing | | 10/20/1999 | $245,000 | 07/24/00 | $825,013 | |
| 2526 Grant | Jun-99 | | | 10/23/00 | $825,000 | |
| AVG | | | $269,333 | | $884,349 | 2000 |
| 2146 Brown | Mar-01 | 6/1/2000 | $295,000 | 11/01/01 | $1,200,000 | |
| 2323 Hartzell | Oct-00 | 6/28/2000 | $360,000 | 11/13/01 | $1,175,000 | |
| AVG | | | $327,500 | | $1,187,500 | 2001 |
| 2328 Hartrey | Jun-97 | | | 5/2/2002 | $930,000 | |
| 3122 Hartzell | Mar-01 | | | 05/29/02 | $925,000 | |
| 2716 Noyes | Oct-01 | 8/3/2001 | $397,500 | 07/19/02 | $1,219,683 | |
| 2639 Lawndale | Jan-02 | 9/1/2001 | $250,000 | 08/14/03 | $931,313 | |
| 1111 Oak | Sep-02 | 5/15/2002 | $275,000 | 5/30/2003 | $937,500 | |
| 2427 hastings | Mar-01 | 2/1/2001 | $185,000 | 1/22/2002 | $680,000 | |
| 2109 Forestview | Dec-01 | 8/6/2001 | $257,000 | 11/14/02 | $896,100 | |
| AVG | | | $272,900 | | $931,371 | 2002 |
| 2837 Park Place | Jun-01 | 3/30/2001 | $325,000 | 03/24/03 | $1,080,000 | |
| 1333 South Blvd | Jun-02 | | | 5/1/2003 | $780,484 | |
| 1365 South Blvd | May-02 | | | 07/23/03 | $740,000 | |
| AVG | | | $ 325,000 | | $866,828 | 2003 |
| 2310 Marcy | Apr-03 | 11/5/2002 | $435,000 | 03/15/04 | $1,430,000 | |
| 1839 Grant | Apr-99 | | | 04/12/04 | $475,000 | |
| 2130 Ewing | Dec-02 | 6/19/2002 | $400,000 | 05/07/04 | $1,298,000 | |
| 1923 Lincoln | Apr-01 | 3/20/2003 | $980,000 | 06/25/04 | $900,000 | |
| 2405 Colfax | | 7/25/2002 | $475,000 | 07/19/04 | $1,355,000 | |
| 2720 Noyes | Apr-03 | 2/21/2003 | $425,000 | 07/21/04 | $1,379,588 | |
| 2508 Thayer | Jan-03 | 9/3/2002 | $389,000 | 08/02/04 | $1,450,000 | |
| AVG | | | $517,333 | | $1,183,938 | 2004 |
| 940 Wesley | Sep-04 | 6/24/2004 | $325,000 | 05/06/05 | $886,606 | |
| 1415 Lincoln | Aug-04 | 6/29/1998 | $306,000 | 07/06/05 | $1,365,000 | |
| 2326 Hastings | Apr-02 | 4/24/2001 | $232,000 | 07/13/05 | $809,000 | |
| 323 Sherman | | | | 7/27/2005 | $750,000 | |
| 726 Asbury | Apr-04 | 7/7/2004 | $210,000 | 08/04/05 | $789,000 | |
| 2728 Noyes | Oct-04 | 08/27/04 | $500,000 | 8/30/2005 | $1,575,000 | |
| AVG | | | $314,600 | | $1,029,101 | 2005 |

Sales data from City Clerk Real Estate Transfer Tax; Permit Data from Community Development Dept

**Certificate as Keeper of**
**Records, Files and Seals**

**STATE OF ILLINOIS)**
                    ) §
**COUNTY OF COOK )**

I, MARY P. MORRIS, City Clerk of the City of Evanston in the County of Cook and State aforesaid, and Keeper of the Records, Files and Seal of said City, do hereby certify that attached hereto is a true and correct copy of minutes of the Planning & Development Committee of January 9, 2006, March 13, 2006, April 4, 2006 and City Council minutes of November 28, 2005 and April 11, 2006

all of which appears from the records and files in my office.

ALL-STATE LEGAL®    EXHIBIT

2

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the corporate seal of the City of Evanston this

____12____ day of ____May____ 20_08_

_Mary P. Morris_
                                        City Clerk

April 11, 2006

B2 Business District. The PUD includes about 13 dwelling units, 1,200 sq. ft. of retail/commercial space, a maximum defined building height of about 45 feet and a minimum of 22 off-street parking spaces enclosed within the building. * MARKED INTRODUCED – CONSENT AGENDA

* Resolution 26-R-06 -- Reserving $3,500,000 of Bond Volume Cap for 2006 Local Use – Consideration of Resolution 26-R-06, which reserves the City's right to issue tax exempt bonds, under the bond volume cap allocation, for eligible purposes. Without approval of this resolution by May 1, 2006, the State of Illinois could use this bond volume cap throughout Illinois for eligible purposes. * APPROVED - CONSENT AGENDA MOTION AND ROLL CALL (8-0)

* Resolution 27-R-06 – Ceding of $2,448,800 of 2006 Bond Volume Cap to the Illinois Housing Development Authority – Consideration of Resolution 27-R-06, which cedes a portion of the City's private activity bond volume cap, or $2,448,800 to the Illinois Housing Development Authority (IHDA) to participate in IHDA's Mortgage Credit Certificate Program and First-Time Homebuyer's Mortgage Program with down payment assistance. * APPROVED - CONSENT AGENDA MOTION AND ROLL CALL (8-0)

* Ordinance 52-O-06 – Establishing a Moratorium on the Issuance of Building Permits for Construction in the West Evanston TIF District and Areas to the North – Consideration of Ordinance 52-O-06, which provides for a 120-day moratorium on the issuance of building permits in the West Side TIF and areas to the north. * MARKED INTRODUCED – CONSENT AGENDA

Alderman Rainey moved that 52-O-06 be amended to include all of the TIF District including the north side of Church Street to Brown and Dodge going north on the east and west side of the street to the first alley north of Church Street. And to Section 4 a) which should read: "This Ordinance 52-O-06 shall not apply in the following circumstances: a) to a perfected building permit application for new construction which is on file with the City on or prior to the effective date of this Ordinance." Seconded by Alderman Tisdahl. Motion carried unanimously.

Alderman Rainey moved to Suspend the Rules to adopt an ordinance at the same meeting in which it was introduced. Seconded by Alderman Moran. Voice vote. Motion carried unanimously.

Alderman Rainey moved adoption of Ordinance 52-O-06 as amended. Seconded by Alderman Moran.

Roll call. Voting aye – Tisdahl, Rainey, Hansen, Wollin, Jean-Baptiste, Bernstein, Holmes, Moran. Voting nay – none. Motion carried (8-0).

* Plat of Consolidation – Bristol Development - 415 Howard St. – Consideration of a request for plat of consolidation for 415 Howard St. by Bristol Development (Howard Station JV, LLC). * APPROVED - CONSENT AGENDA MOTION AND ROLL CALL (8-0)

* Ordinance 139-O-05 – Amends the Affordable Housing Demolition Tax Ordinance – Consideration of substitute Ordinance 139-O-05, introduced December 12, 2005, which would add Chapter 22 in Title 4 of the City Code, "Affordable Housing Demolition Tax Ordinance" and repeal Ordinance 117-O-05. * ADOPTED - CONSENT AGENDA MOTION & ROLL CALL (8-0)

## HUMAN SERVICES COMMITTEE

* Approval of March 2006 Township Monthly Bills – Consideration of a recommendation to approve the Township bills, payroll and medical payments for the month of March 2006 in the amount of $105,053.89. * APPROVED - CONSENT AGENDA MOTION AND ROLL CALL (8-0)

## OTHER COMMITTEES

* Ordinance 48-O-06 – Amends Title 2, Chapter 14 – Energy Commission – Consideration of Ordinance 48-O-06, introduced March 27, 2006, which would amend Title 2, Chapter 14, Section 2 to

6                                    November 28, 2005

AGENDA

* Ordinance 122-O-05 – Increase Number of Class C Liquor Licenses – Panino's, 1968 Dempster St. – Consideration of proposed Ordinance 122-O-05, introduced November 14, 2005, which amends Section 3-5-6(C) of the City Code to increase the number of Class C liquor licenses from 21 to 22 due to the opening of Panino's Inc., dba Panino's Café and Bar, 1968 Dempster St. * ADOPTED - CONSENT AGENDA MOTION & ROLL CALL (9-0)

* Ordinance 123-O-05 – Declaration of City Surplus Property – Consideration of proposed Ordinance 123-O-05, introduced November 14, 2005, which recommends approval of services from B&P Apparatus Inc. (1552 Bryan Ct., Aurora), a brokerage firm, and authorizes the sale of personal property owned by the City. The items are two used ambulances (#316 and #317). * ADOPTED - CONSENT AGENDA MOTION & ROLL CALL (9-0)

**PLANNING & DEVELOPMENT:**

* Ordinance 125-O-05 – Revision to Planned Development (Sienna Gardens) at 1100 Clark St. – Consideration of Ordinance 125-O-05, introduced November 14, 2005, and the Plan Commission recommendation to grant a major adjustment to the Sienna Gardens Planned Development, 1100 Clark St. * ADOPTED - CONSENT AGENDA MOTION & ROLL CALL (9-0)

* Ordinance 136-O-05 – Zoning Ordinance Text Amendment – Consideration of a Plan Commission recommendation to create a new Zoning District B1a, which is characterized by having reduced building height and residential density. * MARKED INTRODUCED – CONSENT AGENDA

Alderman Rainey moved to Suspend the Rules to adopt an ordinance at the same meeting at which it was introduced. Seconded by Alderman Wynne. Motion carried unanimously.

Alderman Rainey moved approval of Ordinance 136-O-05 with the following amendment to page 6, purpose statement: (A) The B1a Business District is designed to accommodate and encourage the continued viable use of neighborhood business districts and pedestrian-oriented shopping areas found throughout the City primarily on arterial roadways and often adjacent to single-family residential areas. Seconded by Alderman Moran.

Roll call. Voting aye – Bernstein, Holmes, Moran, Tisdahl, Rainey, Hansen, Wollin, Jean-Baptiste, Wynne. Voting nay – none. Motion carried (9-0).

* Ordinance 137-O-05 – Zoning Ordinance Map Amendment – Consideration of a Plan Commission recommendation for a Zoning Ordinance Map Amendment to designate Central St. between Marcy and Bennett avenues as a B1a Zoning District. * MARKED INTRODUCED – CONSENT AGENDA

Alderman Rainey moved to Suspend the Rules to adopt an ordinance at the same meeting at which it was introduced. Seconded by Alderman Moran. Motion carried unanimously.

Alderman Rainey moved approval of Ordinance 137-O-05. Seconded by Alderman Moran.

Roll call. Voting aye – Bernstein, Holmes, Moran, Tisdahl, Rainey, Hansen, Wollin, Jean-Baptiste, Wynne. Voting nay – none. Motion carried (9-0).

* Ordinance 117-O-05 – Affordable Housing Demolition Tax – Consideration of a staff recommendation, introduced October 24, 2005, to adopt a Demolition Teardown Tax, which requires a $10,000 tax for all single-family homes demolished, $10,000 for two-family attached (townhouse) and two family structures, and for multi-family, $10,000 or $3,000 per unit whichever is greater. * ADOPTED - CONSENT AGENDA MOTION & ROLL CALL (9-0)

<u>**DRAFT**</u>

**SPECIAL**
**Planning & Development Committee**
**Minutes of April 4, 2006**
**Room 2200 – 7:30 p.m.**
**Evanston Civic Center, Room 2200**

**Alderman Present:**   S. Bernstein, A. Hansen, D. Holmes, L. Jean-Baptiste, E. Moran, A. Rainey, E. Tisdahl, C. Wollin, M. Wynne

**Staff Present:**   J. Wolinski, J. Carroll, E. Szymanski, D. Spicuzza, J. Brownlee

**Presiding Official:**   Alderman Rainey

## <u>DECLARATION OF QUORUM</u>

Chairman Rainey called the meeting to order at 7:43 p.m.

## <u>ITEMS FOR CONSIDERATION</u>

<u>(P1) Ordinance 38-O-06 – Planned Development for 1613 Church Street</u>
THIS ITEM WAS TRANSCRIBED BY A COURT REPORTER IN ACCORDANCE WITH THE KLAEREN RULES. THEREFORE DETAILED MINUTES ARE AVAILABLE WITHIN THE TRANSCRIPT.

<u>(P2) Planned Development for 1708-10 Darrow Avenue/1805 Church Street</u>
THIS ITEM WAS TRANSCRIBED BY A COURT REPORTER IN ACCORDANCE WITH THE KLAEREN RULES. THEREFORE DETAILED MINUTES ARE AVAILABLE WITHIN THE TRANSCRIPT.

<u>(P3) Ordinance 139-O-05 – Amendment of the Affordable Housing Demolition Tax</u>
Ald. Moran suggested that 50% of all collected funds collected under this tax go for 80% of median income or less dedicated to assisting households at 80% area median income or less with their affordable housing needs. Ms. Szymanski recommended that a separate fund be created exclusively for the purpose of assisting households at 80% area median income or less with their affordable housing needs. There was discussion and consensus that the other 50% of the demolition tax monies received would go to the Inclusionary housing fund. Ms. Carroll expressed her agreement with this proposal. Ms. Szymanski read to the Committee substitute language to express Ald. Moran's proposal. The consensus of the Committee was to have legal staff amend the ordinance and present it back to Council at the April 11, 2006 meeting.

## <u>ADJOURNMENT</u>

The meeting was adjourned at 12:02 a.m.

Respectfully submitted,

*Jacqueline E. Brownlee*

Jacqueline E. Brownlee

P&D Committee Mtg.
Minutes of 3-13-06
Page 2

Chair Rainey suggested the need for a special meeting to address this item that should be held before the next regularly scheduled P&D Committee meeting. After discussion, the Committee came to a consensus to hold the special meeting next Monday, March 20th at 5:30 p.m.

(P3)  Ordinance 45-O-06 – Special Use for Religious Institution at 303 Dodge Avenue
THIS ITEM WAS TRANSCRIBED BY COURT REPORTER LAURA BERNAR, IN ACCORDANCE WITH THE KLAEREN RULES. THEREFORE DETAILED MINUTES ARE AVAILABLE WITHIN THE TRANSCRIPT. A SUMMARY OF THE DISCUSSION THAT TOOK PLACE FOLLOWS IN THE MINUTES PROVIDED.

Mr. Seth Weinberger, Architect for the applicant, Jewish Reconstructionist Congregation, gave a brief presentation of the proposed new building with a private educational institution. There was some discussion on the zoning relief for parking and the Committee was content with the use of additional parking available at the Levy Center when needed and the proposed agreement made between the City and JRC.

**Ald. Bernstein moved approval of Ordinance 45-O-06, seconded by Ald Tisdahl. The vote was 8-0 in favor of the motion.**

(P5)  Ordinance 139-O-05 – Repeal of the Affordable Housing Demolition Tax
Ald. Moran asked for a brief description of the amendment to this ordinance. Chair Rainey recalled the Committee's prior discussions of either giving people who have lived here 3 years and staying 3 years after new construction the opportunity of paying the $10,000 tax and having it returned after the 3 year period or giving them the opportunity of allowing a lien to be placed on their property to be extinguished after 3 years. Ald. Moran asked if this particular amendment include the suggestion that there be interest that would apply if the lien option is implemented. Ms. Szymanski responded that it is not provided in the text that is drafted, however she can include wording regarding the interest at the P&D Committee's direction. Ald. Moran recalled some question about whether they would be creating a disparity between these options if there were not some kind of interest factor included if someone opted for the lien alternative. If the person moved before the 3 year period and the fee is collected, that they would then not be in a better position than the person who opted to pay up front if they were an interest charged on that amount. Ald. Moran suggested that this amendment be made to the Ordinance. Chair Rainey asked what this would be based on, the current interest rates? Ald. Moran responded that he does not know what the correct interest would be and said that he would work with staff on that matter. Chair Rainey noted that this item is up for action on the Council floor and they will need to hold this on the Council agenda as well for the amendment.

Since this item will be held over, Ald. Moran also suggested that there be a further amendment that amongst the monies that would be collected with this tax, that at least 25% would go towards assisting families under 80% of the area median income in gaining affordable housing. He said it would be similar to the provision that they have discussed in the Inclusionary zoning ordinance where it states that they would target at least 25% of the units in the new projects would go towards people at or below 80% of area median income. He suggests that they commit to having at least 25% of the funds from the demolition tax go towards the provision of affordable housing for those at 80% of area median income or less. Ald. Tisdahl asked if this only goes toward purchasing a home or does this include rental units as well. Ald. Moran responded that he hopes that it would be across the board and he also hopes that ultimately they will adopt an ordinance that would relate to rental housing. Chair Rainey suggested that Ald. Moran work with staff on the amendments to this ordinance.

# DRAFT
### Planning & Development Committee
### Minutes of January 9, 2006
### Room 2200 – 6:30 p.m.
### Evanston Civic Center

**Alderman Present:**  S. Bernstein, A. Hansen, D. Holmes, L. Jean-Baptiste, E. Moran, A. Rainey, E. Tisdahl, C. Wollin

**Alderman Absent:**  M. Wynne

**Staff Present:**  J. Wolinski, C. Brzezinski, J. Carroll, D. Gaynor, D. Marino, G. Morgan, D. Spicuzza, E. Szymanski, J. Brownlee

**Presiding Official:**  Alderman Rainey

## DECLARATION OF QUORUM

Chair Rainey called the meeting to order at 6:45 p.m. The meeting was moved from Room 2200 to the Council Chambers due to the large crowd in attendance.

## APPROVAL OF THE DECEMBER 12, 2005 MEETING MINUTES

Ald. Holmes moved approval of the December 12, 2005 minutes, seconded by Ald. Bernstein. The vote was 8-0 in favor of the motion.

## ITEMS FOR CONSIDERATION

(P.1)   Ordinance 139-O-05 – Amending the Affordable Housing Demolition Tax Ordinance
Chair Rainey stated that information was forwarded this evening from staff that there is a problem with some wording in the ordinance that needs to be added to reflect the three year prior that a homeowner must have lived in the property before demolition and must live three years after reconstruction of the new house in order for the demolition tax to be waived. Ms. Szymanski assured that this amendment to the ordinance would be ready for the January 23rd meeting. **Ald. Moran motioned that this item be deferred until that date, seconded by Ald. Bernstein. The vote was 8-0 in favor of the motion.**

Mr. Wolinski informed the Committee that the original demolition tax that was approved in December and is currently in effect. The Community Development Building Division has already collected from one tear down job so far.

(P2)   Ordinance 5-O-06 – Planned Development – Mather Lifeways. 1615 Hinman Avenue/422 Davis Street
The P&D Committee acknowledged the Suggested Rules of Procedure for the Planning and Development Committee of the City Council for the Mather Hearing. **Ald. Moran**

## 4-22-1: PURPOSE:

The purpose of this chapter is to provide a source of funding for the creation, maintenance, and improvement of safe and decent affordable housing in the city of Evanston in order to enhance preservation and maintenance of the city's cultural and economic diversity. (Ord. 139-0-05)



## 4-22-2: DEFINITIONS:

For the purposes of administering this chapter:

AFFORDABLE HOUSING FUND: The fund established by city council which can only receive and expend monies dedicated to the creation, preservation, maintenance, and improvement of affordable housing for households whose income is one hundred percent (100%) or less of area median income, with no less than sixty percent (60%) of all monies reserved for households that earn less than eighty percent (80%) of area median income. The city manager or his/her designee may implement programs including, but not limited to: down payment and/or rental assistance; building rehabilitation and/or construction loans; property acquisition and disposition; and grants to nonprofit organizations that serve households that earn less than one hundred percent (100%) of area median income. Said programs shall be administered in accord with guidelines generated by the Evanston housing commission, reviewed by the planning and development committee of the city council, and approved by the city council.

AFFORDABLE HOUSING, OWNER OCCUPIED: Decent, safe, sanitary housing that is affordable to "relevant households" as defined herein. The cost of the mortgage payment and relevant expenses (a calculation of property taxes, homeowner's insurance, and, when applicable, condominium or homeowner association fees) of owner occupied dwelling units shall not exceed thirty three percent (33%) of the relevant household's gross annual household income (the total income of all adults over 18 years of age in the household).

AFFORDABLE HOUSING, RENTAL: Decent, safe, sanitary housing that is affordable to "relevant households" as defined herein. The cost (including a utility allotment and adjustment for household size) of rental dwelling units shall not exceed thirty percent (30%) of the relevant household's gross annual household income (the total income of all adults over 18 years of age in said household).

APPLICANT: Any individual who applies for a building demolition permit under this code.

AREA MEDIAN INCOME: The median income level for the Chicago primary metropolitan statistical area, as established and defined in the annual schedule published by the secretary of the United States department of housing and urban development and adjusted for household size.

DEMOLITION: The removal or destruction of a structure or building in whole or in part to the extent of fifty percent (50%) or more of such structure or building as it existed prior to the commencement of such act or process.

DEMOLITION STRUCTURE: The building or structure to be demolished.

DIRECTOR: The director of the Evanston community development department.

ALL-STATE LEGAL®  EXHIBIT  4

DWELLING UNIT: A room or group of contiguous rooms that include facilities used or intended to be used for living, sleeping, cooking and eating, and that are arranged, designed, or intended for use exclusively as living quarters.

RELEVANT HOUSEHOLD: A low or moderate income household whose total income does not

exceed the relevant percent of median income for the Chicago primary metropolitan statistical area Chicago area, as established and defined in the annual schedule published by the secretary of housing and urban development, and adjusted for household size. A low income household has income that does not exceed eighty percent (80%) of HUD area median income. A moderate income household has income that does not exceed one hundred percent (100%) of the HUD area median income.

REPLACEMENT STRUCTURE: Any building or structure replacing the demolition structure.

RESIDENTIAL STRUCTURE: Any building or structure containing dwelling units.

RESIDENTIAL STRUCTURE, MULTI-FAMILY: A detached residential building containing three (3) or more dwelling units, including what is commonly known as an apartment building, but not including group, row, or townhouses, excluding a hotel, motel, boarding house, rooming house, dormitory, nursing home, mobile home, institution, or retirement home or community.

RESIDENTIAL STRUCTURE, SINGLE-FAMILY ATTACHED (Group, Row, Or Townhouses): Three (3) or more dwelling units joined side by side.

RESIDENTIAL STRUCTURE, SINGLE-FAMILY ATTACHED, TWO-FAMILY: A residential building containing not more than two (2) dwelling units entirely surrounded by open space on the same lot.

RESIDENTIAL STRUCTURE, SINGLE-FAMILY DETACHED: A residential building containing not more than one dwelling unit entirely surrounded by open space on the same lot. (Ord. 40-0-07)

## 4-22-3: TAX IMPOSED:

(A) Amount Of Tax: Any person granted a permit under this code for demolition of a residential structure shall pay an affordable housing demolition tax of: 1) ten thousand dollars ($10,000.00) for the demolition of any single-family detached residential structure, or 2) for the demolition of any multi-family, single-family attached, or two-family residential structure, either ten thousand dollars ($10,000.00) or three thousand dollars ($3,000.00) for each unit in the structure, whichever amount is more. The tax imposed pursuant to this subsection shall be in addition to the demolition permit fee established from time to time by the city council and all other applicable fees and charges. Payment of the tax, unless deferred as provided in section 4-22-4 of this chapter, shall be due upon issuance of a demolition permit by the department, and is a condition to the validity of the permit. The city shall have a lien against the property which was the subject of the demolition permit until applicable tax obligations imposed by this chapter are satisfied. The funds received by the city for the amount imposed pursuant to this subsection shall be dedicated to achievement of the affordable housing goals and objectives as set forth in section 4-22-1 of this chapter. The demolition tax funds received pursuant to the tax imposed by this chapter shall be deposited directly into the affordable housing fund. (Ord. 40-0-07)

(B) Specific Applicability Rules: Notwithstanding the general requirement set forth in subsection (A) of this section, the tax shall not apply under the following circumstances. This subsection, however, shall not affect an applicant's obligation to pay the demolition permit fee.

1. If the applicant and the city enter into an agreement for the provision of "affordable housing" as defined in section 4-22-2 of this chapter in conjunction with the demolition that would otherwise be the subject of subsection (A) of this section. Any such agreement shall require prior city council approval and shall specifically set forth the applicability of this subsection.

2. If the director determines, pursuant to regulations enacted by the city council, that the building or structure replacing the building or structure that is the subject of the demolition permit constitutes "affordable housing" as defined in section 4-22-2 of this chapter.

3. If the director or any other city department head, or their respective designees, orders a demolition for any reason, including, but not limited to, nuisance, public safety, or fire hazard, this tax shall not apply, regardless of whether the demolition work is performed by a public or private entity.

(C) General Applicability: Imposition of the tax provided for by subsection (A) of this section shall not apply to any demolition for which a perfected application for the demolition permit was on file with the city on or before the effective date hereof. (Ord. 139-0-05)



EXHIBIT

5

## 4-22-4: TAX DEFERRAL OPTION:

(A)Application For Deferral: A person who has been the record titleholder or beneficiary of a land trust (collectively, "record titleholder") and occupant of a residential structure for three (3) consecutive years, and who files or causes to be filed an application for a demolition permit for that structure, may opt for deferral of the tax, as provided in this subsection. In the event the demolition permit is for a multi-unit structure, the person may only defer that portion of the demolition tax attributable to his own dwelling unit. The demolition permit fee must be paid at the time of application. The person shall make application for deferral of the tax to the director on a form provided for that purpose and available from the building permit desk. To qualify for the deferral, the person shall provide documentation to establish that all real estate taxes on the subject property have been paid in full as of the date of application for the permit; that any and all city liens and judgments recorded on the subject property have been satisfied; and that the person has been the record titleholder and occupant of the subject structure for three (3) consecutive years prior to the date of application for the permit. Documentation the director may require to establish the person's qualification for the tax deferral option may include, but shall not be limited to, income tax records and proof of voter registration. If the director determines that the person qualifies for the deferral option, he shall cause a lien to be recorded against the property with the Cook County recorder in the amount of the tax to be deferred, to which shall be added the applicable recordation fee. Except as provided in subsection (B) of this section, the lien shall not bear interest. The director may, upon written request of the person, subordinate the lien to any mortgage the person may have or seek on the property. Among the factors the director may consider in determining whether or not to grant the subordination request is whether the value of the property is adequate to assure payment of the city's lien, and that all real estate taxes have been paid.

(B)Release Of Lien:

1. A person who exercised the tax deferral option provided for in subsection (A) of this section and who has been the record titleholder and occupant for three (3) consecutive years after issuance of a final certificate of occupancy for the replacement structure may apply for release of the lien by making application therefor to the director on a form provided for that purpose and available from the building permit desk. Documentation the director may require to establish the person's qualification for the release of lien may include, but shall not be limited to, income tax records and proof of voter registration for the years in question. If the director determines that the person qualifies for the release, he shall provide the person with a recordable release of lien no later than thirty (30) days after he determines that the person qualifies for the release.

2. A person who exercised the tax deferral option provided for in subsection (A) of this section who sells the subject property prior to the expiration of the three (3) consecutive year period after issuance of the final certificate of occupancy shall, as a condition to the city's release of the lien, pay the tax due, to which shall be added interest at the annualized money market index rate published by the Government Finance Officers Association. (Ord. 139-0-05)

EXHIBIT
6
ALL-STATE LEGAL®

## 4-22-5: STABILITY INCENTIVE:

When the tax was paid at the time of permit issuance as provided for in subsection 4-22-3(A) of this chapter, a person who has been the record title owner and occupant of a residential property demolished subsequent to the effective date of this chapter ("preexisting structure") for all of the three (3) years immediately preceding the date of the application for demolition ("prepermit period"), and remains the record titleholder and occupant of the property for three (3) consecutive years beginning immediately after the date on which the certificate of occupancy for the new residential structure is issued, may qualify for a monetary stability incentive in an amount equal to the demolition tax paid on the issuance of the permit for demolition of the preexisting structure, provided, however, that only persons whose real estate taxes on the property are paid in full at the time of application for stability incentive may apply for the incentive.

Application for the stability incentive payment shall be made to the director on a form provided for that purpose and available from the building permit desk. The person must provide the director of community development with such documentation as he may require to establish that the owner qualifies for the payment under the requirements of this section. Such documentation may include, but is not limited to, income tax returns and proof of voter registration for the years in question. The city shall pay qualifying persons an amount equal to the demolition tax, if any, imposed pursuant to this chapter on the issuance of the permit for the preexisting structure, less the amount of any liens recorded by the city against the subject property, including, but not limited to, liens for judgments entered in cases adjudicated in the city's division of administrative hearings, no later than thirty (30) days after the director of community development determines that an owner qualifies for the stability incentive. (Ord. 139-0-05)

ALL-STATE LEGAL®

EXHIBIT

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Michael L Kathrein and                    )
Victoria Kathrein,                        )
                                          )
    Plaintiffs,                           )
                                          )
        v.                                )        No. 08 C 83
                                          )
City of Evanston, et al.,                 )        Judge Guzman
                                          )
    Defendants.                           )        Magistrate Judge Schenkier

## DECLARATION OF EDMUND B. MORAN, JR.

Pursuant to 28 U.S.C. Sec. 1746, Edmund B. Moran, Jr. states as follows based on personal knowledge:

1. I am currently the alderman of the sixth Ward of the City of Evanston, Illinois.

2. I am familiar with the legislation passed by the City Council of the City of Evanston related to affordable housing, including the ordinance requiring the payment of a "teardown tax."

3. The teardown tax ordinance was passed through a unanimous vote of the City Council in which the aldermen representing all nine wards in the City of Evanston voted in favor of it. The City of Evanston's Housing Commission endorsed the ordinance in a unanimous vote recommending its adoption by the City Council. It is my belief that the ordinance shared widespread support of the citizens of Evanston including many owners of residential property.

4. I own residential property in the City of Evanston.

5. If called to testify as a witness, I am competent to testify to the foregoing.



1

I certify under penalty of perjury that the foregoing is true and accurate.

Edmund B. Moran, Jr.

2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Michael L. Kathrein and<br>Victoria Kathrein,<br><br>    Plaintiffs,<br><br>v.<br><br>City of Evanston, et al.,<br><br>    Defendants. | ) ) ) ) ) ) No.   08 C 83<br>) Honorable Ronald Guzman<br>) Magistrate Judge Sidney Schenkier<br>) Judges Presiding<br>) |

## DECLARATION OF E. HOY McCONNELL, II

Pursuant to 28 U.S.C. §1746, E. Hoy McConnell, II states the following based on personal knowledge.

1. I am currently Executive Director of Business and Professional People for the Public Interest (BPI).  I have held this position since September, 1999.
2. BPI is a public interest law and policy center that addresses important issues concerning social justice in the Chicago Region.  A major focus of BPI is the availability of affordable housing throughout the region.
3. In my capacity as Executive Director of BPI, I am familiar with the background of the City of Evanston's Affordable Housing Ordinance.  BPI worked closely with the City on this matter.
4. The Affordable Housing Ordinance was widely supported by residents, residential property owners and civic groups, including ours.
5. BPI believes that Evanston's Affordable Housing Ordinance, including the Demolition Tax, serves an important public function in ensuring that affordable housing remains available in Evanston.
6. I am a resident of Evanston and own residential property in Evanston.  I do not want the Demolition Tax declared unlawful or unconstitutional, nor do I want to be a member of a class of persons seeking to invalidate the Demolition Tax.
7. I have no intention of demolishing my residence in Evanston.
8. If called to testify as a witness, I am competent to testify to the foregoing.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of May, 2008.

E. Hoy McConnell

ALL-STATE LEGAL®
EXHIBIT
9