## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL L. KATHREIN,                          )
VICTORIA KATHREIN,                            )
                                              )
            Plaintiffs,                       )          **08 C 0083**
                                              )
      v.                                      )
                                              )          **ANSWER AND AFFIRMATIVE**
                                              )          **DEFENSES**
CITY OF EVANSTON, ILLINOIS,                   )
LORRAINE H. MORTON, Mayor,                    )          Jury Trial Demanded
CHERYL WOLLIN,                                )
1st Ward Alderman, City Council,              )
LIONEL JEAN-BAPTISTE,                         )
2nd Ward Alderman, City Council,              )
MELISSA A. WYNNE,                             )          **JUDGE RONALD A. GUZMAN**
3rd Ward Alderman, City Council,              )          **MAGISTRATE JUDGE SCHENKIER**
STEVEN J. BERNSTEIN,                          )
4th Ward Alderman, City Council,              )
DELORES A. HOLMES,                            )
5th Ward Alderman, City Council,              )
EDMUND B. MORAN, Jr.,                         )
6th Ward Alderman, City Council,              )
ELIZABETH B. TISDAHL,                         )
7th Ward Alderman, City Council,              )
ANN RAINEY,                                   )
8th Ward Alderman, City Council,              )
ANJANA HANSEN,                                )
9th Ward Alderman, City Council,              )
                                              )
            Defendants.                       )
                                              )
_____           )

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT

Defendants, by and through their attorneys, Iain D. Johnston of Johnston Greene LLC

and Jack M. Siegel of Holland + Knight LLP, hereby state the following as their answers and

affirmative defenses to Plaintiffs' First Amended Complaint.



EXHIBIT

10

## STATEMENT OF THE CASE

Plaintiffs own a parcel of land in the City of Evanston improved with a residential dwelling. They desire to remove that improvement and create a vacant lot. Defendants demand plaintiffs pay various administrative fees in exchange for a permit to remove the improvement. Defendants demand plaintiffs pay an additional $10,000 "demolition tax" into a separate, special purpose fund unrelated to administration of the removal.

The $10,000 charge referred to herein, *infra*, is not a tax - it is a wrongly titled permit fee, not subject to 28 U.S.C. § 1341. This fee is discriminatory, violates the takings clause of the Fifth Amendment of the U.S. Constitution, the due process of law and equal protection clause of the Fourteenth Amendment of the U.S. Constitution, the Uniformity Clause of the Illinois Constitution, and is an inverse condemnation.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the first two sentences, but admit that if Plaintiffs wish to demolish a residential structure in the City of Evanston, they are required to pay a demolition tax.    Defendants deny all remaining averments.

## JURISDICTION

1.    Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 and § 1343, 28 U.S.C. § 1367(a), and 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**    Defendants deny jurisdiction exists. This Court lacks jurisdiction pursuant to the Tax Injunction Act, 28 U.S.C. §1341.

## PARTIES

2.    Plaintiff Michael Kathrein is a private citizen and resident of Evanston, Illinois, with a business address of 7601 North Eastlake Terrace, Chicago, Illinois 60626.

**ANSWER:**    The individual defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph, but the City of Evanston admits these averments.

    3.    Plaintiff Victoria Kathrein is a private citizen and resident of Evanston, Illinois, with a business address of 7601 North Eastlake Terrace, Chicago, Illinois 60626.

**ANSWER:**    The individual defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph, but the City of Evanston admits these averments.

    4.    Defendant City of Evanston, Illinois is a duly incorporated home rule municipal corporation with an address of Evanston Civic Center, 2100 Ridge Avenue, Evanston, Illinois 60201.

**ANSWER:**    Admit.

    5.    Defendant Lorraine H. Morton is the Mayor of the City of Evanston with a business address of 2100 Ridge Avenue, Room 2500, Evanston, Illinois 60201.

**ANSWER:**    Admit.

    6.    Defendant Cheryl Wollin, is the 1st Ward Alderman of City Council with a residential address of 2025 Sherman Avenue, #401, Evanston, Illinois 60201.

**ANSWER:**    Admit.

    7.    Defendant Lionel Jean-Baptiste is the 2nd Ward Alderman of City Council with a business address of 1900 Asbury Avenue, Evanston, Illinois 60201.

**ANSWER:**    Admit.

3

Case 1:08-cv-00083   Document 26   Filed 04/14/2008   Page 4 of 41

8.     Defendant Melissa A. Wynne is the 3rd Ward Alderman of City Council with a residential address of 1130 Hinman Avenue, Evanston, Illinois 60202.

**ANSWER:**   Admit.

9.     Defendant Steven J. Bernstein is the 4th Ward Alderman of City Council with a residential address of 943 Elmwood Avenue, Evanston, Illinois 60202.

**ANSWER:**   Admit.

10.     Defendant Delores A. Holmes is the 5th Ward Alderman of City Council with a residential address of 1715 McDaniel Avenue, Evanston, Illinois 60201.

**ANSWER:**   Admit.

11.     Defendant Edmund B. Moran, Jr. is the 6th Ward Alderman of City Council with a residential address of 2522 Isabella Street, Evanston, Illinois 60201.

**ANSWER:**   Admit.

12.     Defendant Elizabeth B. Tisdahl is the 7th Ward Alderman of City Council with a residential address of 2 Martha Lane, Evanston, Illinois 60201.

**ANSWER:**   Admit.

13.     Defendant Ann Rainey is the 8th Ward Alderman of City Council with a residential address of 1707 Dobson, Evanston, Illinois 60202.

**ANSWER:**   Admit.

14.     Defendant Anjana Hansen is the 9th Ward Alderman of City Council with a residential address of 2017 Seward Street, Evanston, Illinois 60202.

**ANSWER:**   Admit.

## FACTS

15.    Plaintiffs own a parcel of land (hereinafter, "land" or "lot") in the City of Evanston (hereinafter, the "City") located within the city limits of Evanston, Illinois.

**ANSWER:**    Because Plaintiff has not provided an address for this parcel of land or lot, the

Defendants are without knowledge or information sufficient to form a belief as to the truth of the

averments in this paragraph.


16.    Plaintiffs' parcel is improved with a residential dwelling unit.

**ANSWER:**    Because Plaintiff has not provided an address for this parcel of land or lot, the

Defendants are without knowledge or information sufficient to form a belief as to the truth of the

averments in this paragraph.


17.    For various reasons, plaintiffs decided they no longer wanted the improvement on their land and preferred instead, that their land be vacant.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to

the truth of the averments in this paragraph.


18.    City ordinances 4-22 and 40-O-07 (hereinafter, "ordinances") requires persons desiring to remove improvements from their land to apply for and be granted a "demolition" permit, curiously designated as a "building" permit (hereinafter, "demolition permit" or "permit").

**ANSWER:**    Defendants deny the characterization that Plaintiffs seek to imply, but admit that a

property owner who wishes to remove a residential structure must obtain a permit, commonly

referred to as a demolition permit, and deny any remaining averments.

5

19.    Plaintiffs owned their land prior to the enactment of the ordinances cited above.

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

20.    In pursuit of the required permit, plaintiffs obtained from the Evanston City Clerk, a demolition permit application form titled, "Demolition Instruction Form." (hereinafter, "form" or "application").

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

21.    The form itemizes various acts <u>required</u> of an applicant prior to the granting of a demolition permit.

**ANSWER:**    Defendants admit that before a demolition permit is issued, the applicant is required to take certain steps, but deny any remaining averments.

22.    The following is a requirement indicated on the face of the application:

AFFORDABLE HOUSING DEMOLITION TAX

A person granted a permit for demolition of a residential structure shall pay an affordable housing demolition tax of:

(1)    $10,000 for the demolition of any single-family detached residential structure, or

(2)    $10,000 or $3,000 for each unit in the structure (whichever amount is more) for the demolition of any multi-family, single-family attached, or two-family residential structure.

*For additional information regarding this tax go to website http://www. cityofevanston. org. City Code - Title 4: Building Regulations - Chapter 22: Affordable Housing Demolition Tax.*

**ANSWER:**    Defendants admit that, in part, the application contains this or similar language, but denies any remaining averments.

6

23.  City Code - Title 4 - Chapter 22 states, in relevant part:

4-22-3 - AFFORDABLE HOUSING DEMOLITION TAX

(A) **Tax Imposed and Dedicated.** Any person granted a permit under the Evanston City Code for demolition of a Residential Structure shall pay an affordable housing demolition tax of: (a) ten thousand and no/100 dollars ($10,000.00) for the demolition of any Single-Family Detached Residential Structure, or (b) for the demolition of any Multi-Family, Single-Family Attached, or Two-Family Residential Structure, either ten thousand and no/100 dollars ($10,000.00) or three thousand and no/100 dollars ($3,000.00) for each unit in the structure, whichever amount is more. The tax imposed pursuant to this Subsection shall be in addition to the demolition permit fee established from time to time by the City Council and all other applicable fees and charges. Payment of the tax, unless deferred as provided in Section 4-22-4, shall be due upon issuance of a demolition permit by the Department, and is a condition to the validity of the permit. The City shall have a lien against the property which was the subject of the demolition permit until applicable tax obligations imposed by this Chapter are satisfied. The funds received by the City for the amount imposed pursuant to this Subsection shall be dedicated to achievement of the affordable housing goals and objectives as set forth in Section 4-22-1 of this Chapter. The demolition tax funds received pursuant to the tax imposed by this Chapter shall be deposited directly into the Affordable Housing Fund.

**ANSWER:**  Defendants admit that the City Code contains a provision regarding an affordable housing demolition tax, which is a matter of public record. To the extent Plaintiff's selected quotation is inconsistent with the Code provision, Defendants deny the averments in this paragraph.

24.  Of particular relevance to this Complaint are the following three phrases found in ¶ 4-22-3: "Payment of the tax... is a condition to the validity of the permit." And "...for demolition of a Residential Structure..." and "...shall pay an affordable housing demolition tax."

**ANSWER:**  Defendants admit that the City Code contains a provision regarding an affordable housing demolition tax and to the extent Plaintiffs' selected quotation is inconsistent with the

7

Code provision, Defendants deny the averments in this paragraph including the characterization Plaintiffs seek to imply.


25.    Defendants' Affordable Housing Demolition Tax is commonly referred to as its "tear-down tax" (hereinafter, "tear-down tax" *or* "tax" *or* "permit fee" *or* "fee," the terms used interchangeably and without admission.).

**ANSWER:**    Defendants deny that the Affordable Housing Demolition Tax is commonly referred to as a "fee," but admit that some individuals refer to the Affordable Housing Demolition Tax as the "tear-down tax."


26.    Therefore, it is an expressly authorized policy of the defendant to exact this $10,000 from all owners of land improved with a "Residential Structure" who desire to remove said structure from their land.

**ANSWER:**    Deny.


27.    In its effect, defendants' ordinance is, "No $10,000, no permit."

**ANSWER:**    Deny.


28.    Plaintiffs allege that defendants' "tax" therefore, is not a tax but is in reality, a permit fee wrongfully titled as a tax and upon which, the issuance of a building permit is conditioned. (See Count III; *infra*)

**ANSWER:**    Deny.


29.    Plaintiffs allege the ordinance is discriminatory because owners of commercial property are exempt from the $10,000 permit fee.

**ANSWER:**    Deny.

30.    On at least two occasions prior to enactment of these ordinances, plaintiff Michael Kathrein informed defendants in writing, that the proposed ordinance(s) would violate various Constitutional protections of Evanston property owners.

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

31.    Defendants ignored plaintiffs' warnings.

**ANSWER:**    Deny.

32.    Defendants' ordinance 40-O-07 was adopted June 4, 2007.

**ANSWER:**    The City of Evanston admits that it adopted Ordinance 40-O-07, but the individual defendants deny that they some how possess this ordinance.

33.    All building permits are issued by the Clerk of the City of Evanston Building Department (hereinafter, "Clerk").

**ANSWER:**    Defendants admit that the Building Department clerk issues permits and deny any remaining averments.

34.    On or about September 5, 2007, plaintiff Michael Kathrein presented his application to the Clerk and directed to her the following inquiry, *"Will the City grant us (plaintiffs) a demolition permit if we refuse to pay the Affordable Housing Demolition Tax?"*

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

35.    The Clerk responded, *"No."*

9

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.


36.    Plaintiff followed with the question, "... *under any circumstances?*"

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.


37.    Clerk's response, "*No exceptions. None.*"

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.


38.    Plaintiff said, "*I demand the City compensate me $10,000 for the $10,000 it demands from me. Will it do so?*"

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.


39.    The Clerk's response was, "*Well no, of course not.*"

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.


40.    Defendants offered plaintiffs no appeal procedure or administrative remedy to protest the imposition.

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

41.    Sometime shortly thereafter, plaintiffs offered to sell their property to a potential buyer.

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

42.    Plaintiffs informed the buyer of the City's tear-down tax ordinance(s).

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

43.    The buyer demanded plaintiffs reduce the asking price of their property by at least $10,000 to offset the $10,000 reduced value caused by the ordinance.

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

44.    The buyer demanded no other concession.

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

45.    Plaintiffs refused to reduce their price by $10,000.

**ANSWER:**    The Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.

46.    Therefore, and because of defendants' ordinance(s), plaintiffs were unable to engage in the transaction.

**ANSWER:**    Deny.

11

47.    Plaintiffs were and continue to be damaged by defendants'.ordinance(s).

**ANSWER:**    Deny.

## LEGAL CLAIMS

### COUNT I
### TITLE 28 U.S.C. § 1341 IS UNCONSTITUTIONAL

48.    Plaintiffs re-allege and adopt paragraphs 1-47 as if fully set forth herein.

**ANSWER:**    Defendants restate their answers to paragraphs 1 – 47 as if fully stated herein.

49.    Title 28 U.S.C. § 1341 provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State.law where a plain, speedy and efficient remedy may be had in the courts of such State.

**ANSWER:**    Admit.

50.    The legislative history is quite instructive:

The Fifth Circuit in *Hargrove v. McKinney*, 413· F.2d 320 (1969), explained the context in which § 1341 was enacted: ·

The expansion of the federal judicial power countenanced by the Supreme Court in *Ex parte Young*, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, "brought about a major shift in the actual distribution of power between states and nation" which was not "overlooked by Congress, or by the spokesmen of the interests adversely affected." H. Hart and H. Wechsler, The Federal Courts and Federal System, pp. 846-847(1953). ...

*Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978).

12

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

51.    Does the Supreme Court have authority to legislate?

> After many years of public service at the national capital, and after a somewhat close observation of the conduct of public affairs, I am impelled to say that there is abroad in our land a most harmful tendency to bring about the amending of constitutions and legislative enactments by means alone of judicial construction.

> *Standard Oil Co. v. United States*, 31 S.Ct. 502, 533 (1910) (Justice Harlan, concurring in part and dissenting in part).

> The specific congressional policy considerations which underlie § 1341 are revealed in the Senate Judiciary Committee Report. In the report, two purposes of § 1341 are expressed. First, the statute was directed at the elimination of unjust discrimination between citizens of the State and foreign corporations. It was feared that a foreign corporation, through diversity, could obtain a federal injunction prohibiting the collection of certain state taxes. Such a procedure, however, was unavailable to a State resident. As the Senate Judiciary Committee Report stated:

>> If those to whom the federal courts are open may secure injunctive relief against the collection of taxes, the highly unfair picture is presented of the citizen of the State being required to pay first and then litigate, while those privileged to sue in the federal courts need only pay what they choose and withhold the balance during the period of litigation.

> S.Rep.No. 1035, 75th Congress, 1st Sess. 1-2 (1937). The second purpose of § 1341 was also directed at foreign corporations. The primary concern was that foreign corporations, by obtaining a federal injunction, could seriously disrupt the State taxing process. As the Senate Report stated it was possible for foreign corporations doing business in such States to withhold from them and their governmental subdivisions taxes in such vast amounts and for such long periods of time as to seriously disrupt State and county finances. The pressing needs of these States for this tax money is so great that in many instances they have been compelled to compromise these suits, as a result of which substantial portions of the tax have been lost to the States without a judicial examination into the real merits of the controversy.

*Fulton, supra.*

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

52.    *I.e.*, Congress *did* have the authority to modify the diversity jurisdiction statute 28 U.S.C. § 1332(a). Congress *did not* however, have the authority to suspend, by legislation, the equal protection and due process of law clauses of the Fourteenth Amendment in tax cases.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

53.    [Congress] . . . is not given power by itself . . . to amend the Constitution. *Myers v. United States*, 47 S.Ct. 21, 37 (1926).

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

54.    Congress [may not] change the meaning of the Constitution through the passage of ordinary legislation. *In re Young*, 141 F.3d 854, 859 (8th Cir. 1998).

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

55.    The Constitution can only be amended by referendum:

Case 1:08-cv-00083    Document 26    Filed 04/14/2008    Page 15 of 41

The Congress, whenever two thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or, on the application of the legislatures of two thirds of the several states, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three fourths of the several states, or by conventions in three fourths thereof, as the one or the other mode of ratification may be proposed by the Congress; provided that no amendment which may be made prior to the year one thousand eight hundred and eight shall in any manner affect the first and fourth clauses in the ninth section of the first article; and that no state, without its consent, shall be deprived of its equal suffrage in the Senate.

Article V, U.S. Constitution.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

56.    28 U.S.C. § 1341 therefore, is ordinary legislation and as such, its limitation of rights guaranteed by the Fourteenth Amendment, is unconstitutional.

**ANSWER:**    Defendants deny that 28 U.S.C. §1341 is unconstitutional.

## COUNT II
### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

57.    Plaintiffs re-allege and adopt paragraphs 1-47 as if fully set forth herein.

**ANSWER:**    Defendants restate their answers to paragraphs 1 – 47 as if fully stated herein.

58.    By tradition and the common law, property owners have the right to enjoy or alter their existing property without financial penalty, reasonable permitting and other administrative fees notwithstanding.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

59.     This complaint does not discuss whether plaintiffs claim a common law right in their land to add or alter an existing improvement.

**ANSWER:**     This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

60.     Plaintiffs claim they have a common law right to possess, or to cause their land to be vacant, without a fee, penalty or encumbrance.

**ANSWER:**     This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

61.     This right was already vested to them prior to enactment of the ordinance.

**ANSWER:**     This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

62.     Causing their land to be vacant is not therefore, a legally taxable activity.

**ANSWER:**     This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

63.     Defendants' $10,000 charge therefore, penalizes the exercise of plaintiffs' legal rights.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

64.    Whether plaintiffs remit the payment is irrelevant.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

65.    Whether plaintiffs remove the improvement immediately, or at any time in the future, is irrelevant.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

66.    The effective value of plaintiffs' land is automatically $10,000 lower than comparable land vacant prior to June 4, 2007.[1]

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

67.    The inevitability of the tax obligation is an immediate and quantifiable encumbrance upon plaintiffs' property of at least $10,000.

**ANSWER:**

---

[1] In the inverse, if the market value of plaintiffs' property is $100,000 the *day before* enactment of the ordinance, plaintiffs must sell their property for $110,000 the day *after* enactment in order to maintain their financial status quo.

68.    The encumbrance does not dissipate with time.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

69.    Plaintiffs' property therefore, is immediately and adversely affected by the mere existence of the ordinance.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

70.    In this case, plaintiffs' cash (reduced net worth) is the property.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

71.    This reduction is not contingent, conclusory or speculative.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

72.    The Fifth Amendment prohibits governmental taking of property for public use without just compensation.

**ANSWER:**    Defendants admit that, in part, the Fifth Amendment prohibits government from taking property for public use without just compensation, but denies the legal argument Plaintiffs seek to imply.

73.    The $10,000 taken from plaintiffs is for public use. (See par. 102)

**ANSWER:**    Defendants deny that they have taken Plaintiffs' property.

74.    The only just compensation for reducing plaintiffs' net worth by $10,000 - is to compensate plaintiffs with $10,000.

**ANSWER:**    Defendants deny they have taken Plaintiffs' property and therefore deny the averments in this paragraph.

75.    Further, it is prudent and legal for taxpayers to take proactive measures to reduce their tax burden. Vacant land is taxed at a lower rate than improved land.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

76.    Plaintiffs have a right to cause their land to be taxed a lower tax rate without penalty.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

77.    Defendants' ordinance penalizes that right.

19

Case 1:08-cv-00083    Document 41-3    Filed 05/20/2008    Page 20 of 41

Case 1:08-cv-00083    Document 26    Filed 04/14/2008    Page 20 of 41

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

78.    It is also prudent and legal for a property owner to take proactive measures to reduce their ownership expenses. Liability insurance is lower on vacant land. There are no utility costs on vacant land.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

79.    Plaintiffs have a right to cause the costs of ownership of their land to be lower without penalty.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

80.    Defendants' ordinance penalizes that right.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

81.    Therefore, plaintiffs are forced to forfeit one right (the right maintain their financial status quo) in order to exercise another right (to remove an improvement on their land).

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

 

     82.   The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.

**ANSWER:**   Admit.

 

     83.   Plaintiffs suffered an instant decrease in their net worth of at least $10,000 upon enactment of these ordinances, and defendants have failed to provide plaintiffs with just compensation.

**ANSWER:** This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

 

     84.   A "[s]tate, by ipse dixit, may not transform private property into public property without compensation...."   *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164(1980).

> (a) The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property. *See, e.g., United States v. Pewee Coal Co.*, 341 U. S. 114. Beginning with *Pennsylvania Coal Co. v. Mahon*, 260 U. S. 393, however, the Court recognized that government regulation of private property may be so onerous that its effect is tantamount to a direct appropriation or ouster. Regulatory actions generally will be deemed per se takings for Fifth Amendment purposes (1) where government requires an owner to suffer a permanent physical invasion of her property, *see Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, or (2) where regulations completely deprive an owner of "all economically beneficial us[e]" of her property, *Lucas v. South Carolina Coastal Council*, 505 U. S. 1003, 1019. Outside these two categories (and the special context of land-use exactions discussed below), regulatory takings challenges are governed by *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124. *Penn Central* identified several factors—including the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the

21

character of the government action—that are particularly significant in determining whether a regulation effects a taking. Because the three inquiries reflected in *Loretto*, *Lucas*, and *Penn Central* all aim to identify regulatory actions that are functionally equivalent to a direct appropriation of or ouster from private property, each of them focuses upon the severity of the burden that government imposes upon property rights. Pp. 6-10.

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

This separate writing is to note that today's decision does not foreclose the possibility that a regulation might be so arbitrary or irrational as to violate due process. *Eastern Enterprises v. Apfel*, 524 U.S. 498, 539 (1998) (Kennedy, J., concurring in judgment and dissenting in part).

*Id.*

REMEDIES

Despite the strong presumption that damages, not injunctive relief, is the appropriate remedy in a Takings Clause action, our case law does acknowledge that there are limited circumstances in which injunctive relief is available. For instance, it is well accepted that, when the government has taken property for a private, rather than a public, use, injunctive or declaratory relief may be appropriate. *See Daniels*, 306 F.3d at 457 n. 11. Similarly, the Supreme Court has held that many facial challenges to legislative action authorizing a taking can be litigated immediately in federal court. *See San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 345 (2005); *Yee v. City of Escondido*, 503 U.S. 519 (1992); *see also Holliday Amusement Co. of Charleston v. South Carolina*, _____ F.3d _____, 2007 WL 1893384, at *2 (4th Cir. July 3, 2007) ("[T]he state procedures requirement does not apply to facial challenges to the validity of a state regulation.").

*Peters v. Village of Clifton*, No. 06-3735 (7th Cir. 8/22/2007).

**ANSWER:** This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

85.    [I]n *Roe v. Cook County*, 193 N.E. 472 (Ill. 1934), the Supreme Court of Illinois has stated that:

[w]hen the Constitution forbids the taking or damaging of private property without just compensation and points out no remedy, and no statute affords one,

for the invasion of the right of property thus secured, the common law, which affords a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.

It is entirely beside the point to say that even though our bill of rights assures every person that his property will not be taken for public use without just compensation, yet where a county or other public body violates this section by taking private property without condemnation proceedings, one may not recover simply because the Legislature has failed to provide any specific remedy. If this were true, the constitutional guaranty would be nugatory and private property could be taken with impunity and without redress to the injured property owner. The constitutional provision itself, without remedial legislation, is basic law, which not only confers a right but presupposes a remedy.

*Id.* at 473-74

*Id.*

The defendants argue that the policy considerations of § 1341 would be best served by this court holding that § 1341 bars all actions, equitable and legal. We cannot agree. After reviewing the statute, its legislative history and significant cases we can find no evidence which would indicate that § 1341 was directed at damage actions as well as equitable actions. Clearly if Congress had intended to prohibit all federal court relief in state tax matters, it could have done so. Congress, however, did not address the subject of damage actions. Congress thus did not give state tax officials absolute immunity for acts committed in their official capacity. Congress only prohibited certain specific remedies which due to their nature are highly disruptive of state proceedings. Quite clearly, if a county or state tax official intentionally and unjustifiably raised an individual's property assessment merely because of the individual's race, ethnic background or political affiliation, the official could be liable for damages under § 1983 for the misuse of his authority. Section 1341 only bars certain forms of relief; it does not serve to deprive a federal court of jurisdiction of all actions merely because the defendant is a state or county tax official. If a state or county tax official intentionally violates a plaintiffs constitutional rights, he may be held liable for an action for damages.

*Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978).

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

86.    Defendants' ordinance is a violation of the takings clause of the Fifth Amendment, U. S. Constitution.

These concerns are not present in a suit for damages. In the present case, the plaintiff is not seeking to enjoin any taxing process. Nor will a judgment for the plaintiff have that effect. Fulton is seeking damages for the alleged wrongful and intentional conduct of certain officials who allegedly deprived Fulton of constitutional rights while acting under color of state law. Fulton seeks relief which is retrospective, *i.e.*, compensation for harm done, unlike equitable relief which is anticipatory or prospective. Additionally, the outcome of the present suit does not pivot upon the construction of some state statute or tax regulation which should more properly be construed by appropriate state courts. The issue is not whether a state statute is constitutionally valid but rather whether an official's conduct violated established constitutional standards. This is precisely the purpose of § 1983 suits. As Mr. Justice Douglas stated, writing for the Supreme Court of the United States in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961):

There can be no doubt at least since *Ex parte Virginia*, 100 U.S. 339, 346-347 (25 L.Ed. 676), that Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it. *See Home Tel. & Tel. Co. v. City of Los Angeles*, 227 U.S. 278, 287-296 (33 S.Ct. 312, 57 L.Ed. 510).

*Id.* at 171-172, 81 S.Ct. at p. 476.

*Fulton, supra.*

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.


87.    Plaintiffs allege that defendants knew or should have known that their ordinance was *not* a tax, but was instead, a "permit fee."

**ANSWER:**    Deny.

88.    Plaintiffs allege that defendants intentionally adopted a misleading title for their ordinance to improperly shelter it from federal review pursuant to 28 U.S.C. § 1341, and to deprive plaintiffs of their constitutional rights, including choice of venue.[2]

**ANSWER:**    Deny.

89.    As a result of defendants' intentional violation of plaintiffs' constitutional rights, the district court is not deprived of jurisdiction by 28 U.S.C. § 1341. *Fulton, Id.*

**ANSWER:**    Deny.

## COUNT III
## ACTION FOR CLARIFICATION/DECLARATORY JUDGMENT

90.    Plaintiffs re-allege and adopt paragraphs 1-47 as if fully set forth herein.

**ANSWER:**    Defendants restate their answers to paragraphs 1 – 47 as if fully stated herein.

91.    The $10,000 "tax" could equally be held to be a "permit fee."

In such a situation the exaction is merely in "the guise of a tax." *Id.* at 7, 82 S.Ct. at 1129 (citation omitted).

*Schneider Transport Inc. v. Cattanach*, 657 F.2d 128 (7th Cir. 1981).

**ANSWER:**    Deny.

92.    Such is the case here.

**ANSWER:**    Deny.

93.    "'[A]n assessment levied for public purposes' would not be a tax where it was part of a regulatory program.'" *Bidart Bros. v. The California Apple Comm'n*, 73 F.3d 925, 933 (9th

---

[2] This paragraph begs the question of whether defendants discussed the misleading nature of the title of the offending ordinance behind closed doors, pursuant to 5 ILCS 120/2(c)(1 1) of the Illinois Closed Meetings Act. Plaintiffs are entitled to discovery on this issue.

Case 1:08-cv-00083    Document 26    Filed 04/14/2008    Page 26 of 41

Cir. 1996) (quoting *Union Pacific Railway Co. v. Public Utility Comm'n*, 899 F.2d 854, 861 (9th Cir. 1990)).

**ANSWER:**    Deny.

94.    Whether Defendants' conditional, $10,000 building permit requirement is actually a "tax," or is merely a permit fee disguised as a tax, is a question of fact, reserved for the triers of fact. (Also see par. 112, *infra*)

> Painting black lines on the sides of a horse and calling it a zebra does not make it one.
>
> *United States v. Vazquez-Rivera*, 135 F.3d 172, 177 (1st Cir. 1998).

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

95.    Whether jurisdiction lies with the district court depends upon whether 28 U.S.C. § 1341 applies in this case.

**ANSWER:**    Defendants admit that this Court is without jurisdiction pursuant to 28 U.S.C. §1341.

96.    Whether 28 U.S.C. § 1341 can be dispositive must depend upon the question of fact presented in paragraphs 91-94 *and* upon the relief sought in Count III.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

97.    Jurisdiction depends upon discovery and discovery depends upon jurisdiction; this interdependency is inextricably intertwined.

**ANSWER:**     Deny.


98.     Therefore, the legal determination of jurisdiction in this case cannot be denied, where the question of jurisdiction itself is wholly and properly dependent upon a finding of fact.

**ANSWER:**     Deny.


## COUNT IV
## DENIAL OF EQUAL PROTECTION OF THE LAWS

99.     Plaintiffs re-allege and adopt paragraphs 1-47 as if fully set forth herein.

**ANSWER:**     Defendants restate their answers to paragraphs 1 – 47 as if fully stated herein.


100.     Plaintiffs do not challenge defendants' legal right to levy a fee or exact a tax . . . they challenge defendants' right to do either in direct violation of plaintiffs' Constitutionally protected rights.

**ANSWER:**     This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.


101.     Illinois Statute (65 ILCS 5/11-13-1(11)) states in relevant part:

> MUNICIPALITIES
> (65 ILCS 5/) Illinois Municipal Code.
> DIVISION 13. ZONING
> (65 ILCS 5/11-13-1(11)) (from Ch. 24, par. 11-13-1)

> > Sec. 11-13-1. To the end that adequate light, pure air, and safety from fire and other dangers may be secured, that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, that the hazards to persons and damage to property resulting from the accumulation or runoff of storm or flood waters may be lessened or avoided, and that the public health, safety, comfort, morals, and welfare may otherwise be promoted, and to insure and facilitate the preservation of sites, areas, and structures

of historical, architectural and aesthetic importance; the corporate authorities in each municipality have the following powers:

(11) to require the creation and preservation of affordable housing, including the power to provide increased density or other zoning incentives to developers who are creating, establishing, or preserving affordable housing; and

**ANSWER:**   Defendants admit that the Illinois Municipal Code contains provisions regarding these matters, but to the extent the Code is contrary to Plaintiffs' selected description, Defendants deny the averments and deny any legal effect Plaintiffs seek to imply from this citation to the Illinois Municipal Code.

102.   65 ILCS 5/11-13-1(11) grants defendants, "...the power to require the creation and preservation of affordable housing... to promote the public health, safety, comfort, morals, and welfare."

**ANSWER:**   Defendants admit that in part the Illinois Municipal Code contains similar language, but to the extent the selected quotation differs from the statute, Defendants deny those averments.

103.   As an adjunct to Count I, "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' "*Dolan v. City of Tigard* (1994), 512 U.S. 374, 114 S.Ct 2309, 2316, 129 L.Ed.2d 304, 315-16, quoting *Armstrong v. United States* (1960), 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554, 1561.

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

104.   65 ILCS 5/11-13 does not grant defendants the power to arbitrarily select which of its citizens must bear the burden of, "creation and preservation of affordable housing," and which of its citizens shall be exempt from that burden.

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal

argument, which Defendants deny. To the extent this paragraph contains any factual allegations,

Defendants deny.


105.   Nor does it grant defendants the power to select arbitrarily, which of its citizens
must bear the burden of, "promoting the public health, safety, comfort, morals, and welfare" and
which of its citizens shall be exempt from that burden.

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal

argument, which Defendants deny. To the extent this paragraph contains any factual allegations,

Defendants deny.


106.   Section 4-20-1 of the defendants' ordinance states its purpose is to "...enhance the
public safety, and welfare of the Evanston by promoting high-quality housing for households of
all sizes and income levels ... in order to maintain the City's cultural and ethnic diversity."

**ANSWER:**   Defendants admit that the Evanston City Code contains a provision 4-20-1, but

deny any averments that are inconsistent with the explicit terms of the Code.


107.   The worthiness of defendants' $10,000 encumbrance is irrelevant to plaintiffs'
inherent rights in their property.

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal

argument, which Defendants deny. To the extent this paragraph contains any factual allegations,

Defendants deny.


108.   A tax supporting "...the public health, safety, comfort, morals, and welfare..." of
the citizenry, must be imposed equally among all citizenry. (See par. 29)

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.


109.    There appears to be no essential nexus between the imposition of the charge and the municipal interest allegedly advanced, *i.e.,* the ordinance places no burden upon the City to show a "specific and uniquely attributable" relationship between its exaction and its need, as required under 605 ILCS 5/5-906(a)(l).

**ANSWER:**    Deny.


110.    If the local government cannot demonstrate that its exaction is directly proportional to the specifically created need, the exaction becomes "a veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations." *Pioneer Trust & Savings Bank v. Mount Prospect*, 22 Ill.2d 381, 176 N.E.2d, at 802(1961).

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.


111.    Indeed, the ordinance contradicts its stated nexus in that it expressly denies relief to an owner who may desire to relocate (versus demolish) an existing structure to a new parcel of land, the net effect on affordable housing being zero.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.


112.    Defendants' tear-down ordinance is in effect, a special purpose revenue tax (fee) exacted under the guise of a building ordinance; it is not a "proper exercise of zoning powers," pursuant to 65 ILCS 5/11-13-1(11).

**ANSWER:**    Deny.


113.    This penalty is triggered by nothing more than plaintiffs' exercise of existing rights in their property, and that their property falls within a discriminatory classification, *i.e.*, not a protected classification (commercial property).

**ANSWER:**    Deny.


114.    Defendants' ordinance is discriminatory.

**ANSWER:**    Deny.


115.    The law of Illinois is summed up in the following excerpt from *Aldrich v. Harding*, 340 Ill. 354, 172 N.E. 772, where the court said:

"The valuation of property for taxing purposes must be the result of honest judgment and not of mere will. *Chicago, Burlington & Quincy Railroad Co. v. Cole*, 75 111. 591. An assessing body has the right, and it is its duty, to exercise its own judgment in determining values, but it has no right to fix a valuation by its will, alone, without the exercise of judgment. *People ex rel Carr v. Stewart*, 315 Ill. 25, 145 N.E. 600. In *Pacific Hotel Co. v. Lieb*, 83 111. 602, the court said that where 'the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose.' In *People's Gas Light Co. v. Stuckart*, 286 Ill. 164, 121 N.E. 629, 633, the court said an overvaluation of property may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive. It was further stated that 'a willful disregard by the members of the board of a known duty for the purpose of producing a result which could not otherwise have been produced may be urged against an assessment as a fraud.'"

Consequently we conclude that under the law of the state of Illinois, a court of equity has the right to interfere in cases such as that presented here; that there can be no question that the court of bankruptcy, sitting as a court of equity, has the same authority and that the facts fully justify its order. That debtors were deprived of equal protection is apparent from *Hillsborough Tp., Somerset County, v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 448, 90 L.Ed. 358, where the court said: "The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting

him to taxes not imposed on others of the same class. The right is the right to equal treatment."

*In re Chicago Rys. Co.*, 175 F.2d 282 (7th Cir. 1949).

**ANSWER:**  This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

116.    Defendants' use of the legislative process to grant immunity to commercial property owners is discriminatory, and is contrary to established Illinois law.

"It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasi judicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government. I need not dwell at length on the obvious opportunity this affords for special privilege, for the granting of favors to political friends or financial benefactors, for the withholding of permits from those not in the good graces of the authorities, and so on. . . ."

*Bossman v. Village of Riverton*, 291 Ill. App.3d 769, 772-73, 684 N.E.2d 427 (1997) (citation omitted).

**ANSWER:**  This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

117.    The case of *La Salle National Bank v. City of Evanston*, 57 Ill. 2d 415, 428, 312 N.E.2d 625, 632 (1974), is often cited:

"Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. [Citations]..."

> *Id.*
>
> It is important to note that in Evanston the municipality rejected the property owner's attempt to rezone the property, and the Supreme Court affirmed the municipality's decision to stand behind its zoning ordinance. *Evanston* is not authority for the proposition that a court should give deference to a municipality's decision when it grants a property owner's request for special treatment and engages in spot zoning. *See Rodriguez v. Henderson*, 217 Ill. App.3d 1024, 1030, 578 N.E.2d 57, 61, 160 Ill. Dec. 878(1991).
>
> *Id.*

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

118.   Plainly, defendant granted "special treatment" (exemption from the ordinance) to favored property owners.

**ANSWER:**   Deny.

119.   Defendants' $10,000 encumbrance upon plaintiffs' land, is a violation of the Equal Protection clause of the Fourteenth Amendment, U. S. Constitution.

**ANSWER:**   Deny.

## COUNT V
## DENIAL OF DUE PROCESS OF LAW

120.   Plaintiffs re-allege and adopt paragraphs 1-47 as if fully set forth herein.

**ANSWER:**   Defendants restate their answers to paragraphs 1- 47 as if fully stated herein.

121.   As shown above, plaintiffs are deprived of their property by a municipal process that conflicts with their rights under the Constitution.

**ANSWER:**   Deny.

122.    Plaintiffs are deprived of their property without due process of law.

**ANSWER:**    Deny.


123.    Generally, non-home-rule units possess zoning powers under the Illinois Municipal Code (65 ILCS 5/11-13-1 et seq. (West 1994)). However, ordinances passed under these powers that conflict with the spirit and purpose of a state statute are preempted by the statute. See *Hartnett*, 117 Ill. App. 3d at 1015. *Commonwealth Edison Co. v. City of Warrenville*, 288 Ill. App. 3d 373, 223 Ill. Dec. 732, 680 N.E.2d 465 (1997).

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny. Further answering, the City of Evanston is a home-rule municipality.


124.    Substantive due process "prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests. *Wash. Teachers' Union Local #6 v. Bd. of Educ.*, 109 F.3d 774, 781 (D.C. Cir. 1997) (citation omitted).

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.


125.    Defendants' ordinance is a violation of the Due Process clause of the Fifth and Fourteenth Amendments, U. S. Constitution.

**ANSWER:**    Deny.


## COUNT VI
## VIOLATION OF THE UNIFORMITY CLAUSE
## OF THE ILLINOIS CONSTITUTION

126.    Plaintiffs re-allege and adopt paragraphs 1-47 as if fully set forth herein.

**ANSWER:**    Defendants restate their answers as if fully stated herein.

127.    Defendants' ordinance violates the Uniformity of Taxation Clause compelled by article IX of the Illinois Constitution, 1970.

**ANSWER:**    Deny.

## COUNT VII
## INVERSE CONDEMNATION

128.    Plaintiffs re-allege and adopt paragraphs 1-47 as if fully set forth herein.

**ANSWER:**    Defendants restate their answers as if fully stated herein.

129.    Black's Law Dictionary, 7th Edition defines inverse condemnation as:

> An action brought by a property owner for compensation from a governmental entity that has taken the owner's property without bringing formal condemnation proceedings.

> *Id.* p. 287.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal

argument, which Defendants deny. To the extent this paragraph contains any factual allegations,

Defendants deny.

130.    Such is the case here.

> The Takings Clause of the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const, amend. V. "While it confirms the State's authority to confiscate private property, the text of the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner." *Brown v. Legal Found, of Washington*, 538 U.S. 216, 231-32 (2003). . .

> "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County*, 473 U.S. at 194. This

principle makes clear that, ordinarily, compensation, not an injunction, is the appropriate remedy for a taking that satisfies the public use requirement. *Patel v. City of Chicago*, 383 F.3d 569, 574 (7th Cir. 2004). "[T]he federal courts' role is not to enjoin localities from exercising their eminent domain powers, but to ensure that property owners are justly compensated when localities exercise that power." *Id.* at 574.

*Peters v. Village of Clifton*, No. 06-3735 (7th Cir. 08/22/2007) (footnote omitted).

[I]n *Roe v. Cook County*, 193 N.E. 472 (Ill. 1934), the Supreme Court of Illinois has stated that:

[w]hen the Constitution forbids the taking or damaging of private property without just compensation and points out no remedy, and no statute affords one, for the invasion of the right of property thus secured, the common law, which affords a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.

*Id.*

"Judges do not make statutes or constitutions and cannot change them, but they do make, and they can-and do-change, common law doctrines." *Id.*

*Id.* at note 7.

*Cf. Standard Oil, supra.*

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

## COUNT VIII
## CLASS ALLEGATIONS

131.    Plaintiffs re-allege and adopt paragraphs 1 -47 as if fully set forth herein.

**ANSWER:**    Defendants restate their answers to paragraphs 1 – 47 as if fully stated herein.

132.    As a result of the defendants' illegal acts described herein, *supra*, plaintiffs and other unknown parties have been deprived of rights secured by Illinois common law, the Illinois Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution.

**ANSWER:**     Deny.


133.    There are 15,611 owner occupied residential units in Evanston.[3]

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.


134.    There are 14,040 rental residential units in Evanston.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.


135.    On information and belief, there are thousands of separate parcels of land immediately, directly and adversely affected by the ordinances cited, *supra.*

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph.


136.    On information and belief, defendants have collected substantial monies from unknown property owners pursuant to the ordinances cited.

**ANSWER:**     Deny.


137.    On information and belief, the aggregate decrease in the net value of all affected properties, as a result of the ordinances, is greater than $35,000,000.

**ANSWER:**     Deny.

---

[3] Source: http://www.city-data.com/housing/houses-Evanston-Illinois.html

138.    It is extremely unlikely that all owners of residential property in Evanston reside in the affected properties or elsewhere in Evanston, therefore discovery and joinder of all members is impractical in light of class dispersion and size.

**ANSWER:**    This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.


139.    Common questions of fact and law predominate each proposed sub-class, and class action therefore, is the superior form of adjudication.

**ANSWER:**    Deny.


140.    There are no conflicting issues between the plaintiffs and members of the proposed classes.

**ANSWER:**    Deny.


141.    There is no risk of inconsistent adjudication among separate class members.

**ANSWER:**    Deny.


142.    There is no risk that adjudication might adversely bind non-parties or impair their ability to protect their interests.

**ANSWER:**    Deny.


143.    Numerosity and superiority apply under all circumstances.

**ANSWER:**    Deny.


144.    Plaintiffs bring this action individually and for the following sub-classes:

        a.     Relative to Count II, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 as described herein.

        b.     Relative to Count IV, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 as described herein.

        c.     Relative to Count V, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 as described herein.

        d.     Relative to Count VI, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 as described herein.

        e.     Relative to Count VII, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 as described herein.

        f.     Relative to Count VIII, all persons who, at any time on or after two years preceding the filing of this lawsuit until the date of entry of judgment, were subject to or affected by City of Evanston ordinances 4-22 or ordinance 40-O-07 as described herein.

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

 

145.   Each proposed sub-class satisfies each of the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure and class certification for each sub-class is appropriate under Rule 23(b)(3).

**ANSWER:**   This paragraph does not contain factual allegations, but rather Plaintiff's legal argument, which Defendants deny. To the extent this paragraph contains any factual allegations, Defendants deny.

 

146.   Plaintiffs stipulate that any class certified under Rule 23 will be represented by experienced, qualified and competent counsel of plaintiffs' election.

**ANSWER:**   As non-attorneys Plaintiffs cannot seek certification of a class action.

147.    Pursuant to Rule 23(c), a formal motion for certification will be filed as soon as practicable.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to

the truth of the averments in this paragraph.

## AFFIRMATIVE DEFENSES

1.    The individual defendants are entitled to qualified immunity as to any federal claims seeking damages.

2.    The individual defendants are entitled to public officials' immunity as to any state law claims seeking damages.

3.    The Defendants are entitled to immunity under the Illinois Local Governmental and Local Governmental Employees Tort Immunity Act.

4.    Plaintiffs cannot obtain punitive damages against the City of Evanston under their federal or state law claims.

5.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

6.    This Court lacks jurisdiction to hear Plaintiffs' claims.

7.    This Court lacks jurisdiction to enter declaratory or injunctive relief regarding Plaintiffs' state law claims.

8.    Plaintiffs have failed to provide the U.S. Department of Justice with notice that they are challenging the constitutionality of a federal statute.

9.    The Plaintiffs as non-lawyer pro se parties cannot represent a class.

Wherefore, Defendants respectfully request that judgment be entered in their favor, that this

Court order Plaintiffs to pay Defendants' attorneys' fees and costs, and enter an order barring

Plaintiffs from filing any additional complaints in this District Court without prior Court

approval.

Respectfully submitted,

Dated: April 14, 2008

s/ Iain D. Johnston
Iain D. Johnston
Johnston Greene LLC
542 South Dearborn Street
Suite 1310
Chicago, IL  60605
(312) 341-3900
ijohnston@johnstongreene.com