IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael Kathrein *and* Victoria Kathrein, on behalf of herself and all others similarly situated,<br><br>       Plaintiffs,<br>v.<br><br>City of Evanston, *et al.*,<br><br>       Defendants. | No. 08 Cv 0083<br><br>Honorable Judge Ronald A. Guzman<br>Magistrate Judge Geraldine Soat Brown |

**PLAINTIFF VICTORIA KATHREIN'S
REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

COMES now the plaintiff, Victoria Kathrein, by and through her attorneys, Collins, Bargione & Vuckovich, and in reply to defendants' Memorandum, [41] plaintiff would have this Court know the following:

**I.     Facts and Allegations**

Plaintiff adopts by reference, the facts and allegations in her Motion for Class Certification [37] as if fully set forth herein. First Amended Complaint, hereinafter referred to as, 'FAC.'

Defendants open with the statement, "Evanston will presumably raise property taxes…to pay…the very same property owners/class members…who did not challenge the tax." Whether members of the proposed class did or did not challenge the Ordinance is conclusory and irrelevant.

Declaratory relief, *e.g.*, that the Ordinance is unconstitutional, would moot claims of all property owners (FAC ¶¶ 57-71) whose net worth has been diminished. (FAC ¶¶

41-47, 82-3) Compensatory relief would resolve grievances of class members who have already been damaged, and injunctive relief would resolve grievances of class members upon whose land, liens have been placed. Property taxes will not be affected by this suit.

Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." *Thorn v. Jefferson-Pilot Life Insurance Co.*, 445 F.3d 311, 331 (4th Cir. 2006); as is plainly not the case here. Plaintiffs' estimate of damages is simply an objective measure of the Ordinance's global financial impact which, via the relief described above, could be easily offset for a fraction of that amount – with little or nothing allotted to either named plaintiff.[1]

Defendants state, "Moderately priced homes were being demolished and replaced with million dollar homes."[2] Much ado is made about allegedly "affordable" home sales in 1999 of $269,333. In 2007 however, defendants' Affordable Housing Commission set their highest official "affordable" housing value at $199,000 – $70,000 lower than the sales prices in 1999, eight years earlier. (Exhibit 1) Defendants then cite average sales prices in 2001 and 2004 of $327,500 and $517,333, respectively. In effect, defendants admit that the property owners in their Exhibit have merely replaced one unaffordable house with another unaffordable house; nullifying their own contention. An ordinance that punishes replacement does nothing to preserve affordable housing.

Defendants state, "The purpose of the Ordinance is to 'provide a source of funding for the creation, maintenance, and improvement of...affordable housing in the City..."

---

[1] Plaintiffs prosecute this case for one, singular reason – to remedy defendants' violations of their Constitutional rights and the rights of the putative class.

[2] Defendants mischaracterize their examples. "Demolished and replaced" is not the same as "flipped." Flipping refers to the practice of buying a house and quickly reselling ("flipping") it for profit. None of the properties defendants proffer as a basis for their Ordinance, were flipped.

2

Defendants' Ordinance states an intentionally artificial nexus between its stated purpose and the putative class. (FAC ¶¶ 106-12) "If the local government cannot demonstrate that its exaction is directly proportional to the specifically created need, the exaction becomes "a veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations." *Pioneer Trust & Savings Bank v. Mount Prospect,* 22 Ill.2d 381, 176 N.E.2d, at 802 (1961).

In this case, each of these property owners was exercising a right inherent in their property(s) (FAC ¶¶ 57-63) a right over which defendants have no sovereignty or power. *Hill v. Kemp,* 478 F.3d 1236 (10th Cir. 2007) (footnote omitted).

Evanston's "deferral options" are unavailing as a counter to plaintiff's grievances. (FAC ¶ 69) An encumbrance in the form of a lien or a deferral is no less a taking than a cash exaction. Form and timing do not mitigate substance.

Defendants' claim of "unanimous support" for the ordinance by ten of the ten individual defendants is meaningless because they *are* defendants. The fact that they voted for it and are subject to it does not validate its Constitutionality or nullify the underlying dispute. This is particularly so in a § 1983 complaint. (FAC ¶¶ 85-8 and *fn* 2)

Defendants' footnote 2 states, "Curiously, nowhere…does plaintiff identify the location of the property…has not identified the clerk, has not alleged that they sought deferral, or that they intend to own the property for three years after the demolition…" Defendants conclude that plaintiffs' allegations are therefore "questionable." Federal Courts employ a notice pleading standard. Plaintiff's Complaint provides sufficient notice of the allegations made therein. Defendants follow their diversions with a request for leave for discovery. None of the above, *i.e.*, property address, the clerk's name,

alleged deferral requests, or owners' intentions, have *any* bearing on the class definition.[3] Indeed, such aside-information has no nexus to the fundamental challenge of the Complaint, *e.g.*, the Constitutionality of the ordinance. "[d]iscovery, at this juncture, should be directed to, and thereby limited, as much as possible, to determining the maintainability of...a class action" *Nash v. City of Oakwood, Ohio*, 90 F.R.D. 633, 636 (S.D. Ohio 1981) We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 40 L.Ed.2d 732, 94 S.Ct. 2140, 2152 (1974) Because of the inherent difficulties in making a class certification decision without considering the merits, most courts err in favor of certification, retaining the power to alter, modify, or decertify the class as the issues are refined and before an ultimate decision on the merits. *Clay, supra; Ziemack v. Centel Corp.*, 163 F.R.D. 530, 533 (N.D.Ill. 1995).

Pre-certification discovery on these issues would be superfluous, would unnecessarily burden the parties, delay the proceedings, be unfair and inefficient.

II. **Standard of Review on Motion for Class Certification**

"When evaluating a motion for class certification, the court accepts as true the moving party's allegations and does not examine the merits of the case." *Flanagan v. Allstate Ins. Co.*, 225 F.R.D. 569, 571 (N.D.Ill. 2004).

When there is a doubt as to whether the prerequisites for a class action exist, doubt should be resolved in favor of the allowance of the class. *See, e.g., Kidwell v.*

---

[3] (i) all persons in the State of Illinois or any other State, and (ii) who own or did own parcel(s) of real estate within the municipality of Evanston, Illinois, and (iii) which parcel(s) is or was improved with a residential structure, (iv) on or subsequent to June 4, 2007.

*Transportation Communications International Union,* 946 F.2d 283, 305 (4th Cir. 1991) Courts should resolve doubts about whether or not Rule 23 has been satisfied in favor of certification. *Duprey v. State of Connecticut Department of Motor Vehicles,* 191 F.R.D. 329, 331 (D.Conn. 2000)

### III. Argument

#### A. The Question of Jurisdiction Has Been Stayed

THE COURT: "If I put your Motion to Dismiss on hold and certify a class first, and then allow you to file a motion to dismiss and we rule in your favor, you're done. That's what I think the Seventh Circuit had in mind when it told us that we ought to try, where ever practical, to address class action certification issues first, and define the class, before we move on to substantive matters."

MR. SIEGEL: "All right."

THE COURT: "Let's do that issue first. And after we get done with that, we can move on to your assertion with respect to – it's a lack of jurisdiction, I believe, motion; is it not? Yes. Okay. How much time do you need to respond?"

> The Honorable Ronald A. Guzman, April 29, 2008 – Transcript of a status hearing on defendants' Motion to Dismiss. (Exhibit 2)

Further, Judge Guzman's May 15, 2008 Transfer Order [40] specifically limits this Court's proceedings to, "Plaintiff Victoria Kathrein's Motion for Class Certification."

The Seventh Circuit has stringently cautioned against, "a belief that a class should not be certified when the case is doomed on the merits. [Citation omitted.] Nothing in Rule 23 supports such a bias. Defendants no less than plaintiffs are entitled to the fruits of victory. A string of cases in this circuit reinforces the message of Rule 23(c)(1): The court must decide promptly whether the case should proceed as a representative action, without regard to the virtues of the plaintiff's legal theory." *Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir. 1992).

Plaintiffs would be prejudiced if this Court considers defendants' arguments on a question expressly stayed from consideration. Therefore, and in conformance with the Court's directive, defendants' arguments under their **III Part A**, are not before this Honorable Court.

### 1. The Ordinance is Not a Tax, it is a Regulatory Fee

Plaintiffs have expressly challenged defendants' arguments on this point. (FAC Count III) This is a question of fact to be determined at a later time. *Eisen, supra.*

Pursuant to **III Part A** above however, this issue is not before the Court.

### 2. Tax Injunction Act Does Not Apply

Pursuant to par. 1 above, this issue is not before the Court.

### 3. Plaintiff's have No Remedy in State Court

MR. SIEGEL: "We think this case belongs in the state court, if it belongs anywhere."

THE COURT: "Different issue, not before me now."

> The Honorable Ronald A. Guzman, April 29, 2008 – Transcript of a status hearing on defendants' Motion to Dismiss. (Exhibit 2)

In addition, and pursuant to **III Part A** above, this issue is not before the Court.

### B. Rule 23 Requirements Met

#### 1. Class Definition is Adequate

Defendants urge that plaintiff's class definition 'is hopeless [sic] overbroad.'

Mere difficulty in identifying class members should not defeat certification or distribution of recovery. *Gordon v. Boden,* 224 Ill.App.3d 195, 586 N.E.2d 461, 166 Ill.Dec. 503 (1st Dist. 1991)

6

The Honorable Judge Sidney I. Schenkier understood plaintiff's class definition. Judge Schenkier recused himself from this case *sua sponte* under Rules IOP 14(B) and 2.41G stating, "I recuse myself from this case for reasons mores specifically set forth below: Judge Schenkier meets the requirements to be part of the class." [44], (Exhibit 3)

Defendants argue that the class definition includes members who have not paid the tax. The courts have held that there is no requirement that every potential class member included in the initial class definition must have suffered an injury at the hand of the defendant. *National Organization for Women, Inc., (NOW) v. Scheidler*, 172 F.R.D. 351, 357 (N.D.Ill. 1997). In *NOW*, the district court certified a plaintiff class consisting of "all women's health centers in the United States at which abortions are performed," despite objections that the class was too broad. 172 F.R.D. at 357. In addition to express allegations of injury to each class member, the court found that the alleged conspiracy among defendants potentially affected every clinic that performed abortions and that the class of women's healthcare centers was therefore proper. Pursuant to *NOW* and defendants' § 1983 violations, whether property owners remit payment is irrelevant. All members are immediately and adversely affected by the mere *existence* of the ordinance. (FAC ¶¶ 63-71)

The courts have held that "a class is sufficiently definite if its members can be ascertained by reference to objective criteria and may be defined by reference to defendants' conduct." *Christakos v. Intercounty Title Co.* 196 F.R.D. 496 (N.D. Ill 2000) "[i]t is absolutely necessary that for a class action to be certified, the class must be susceptible to a precise definition." *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 490 (S.D.Ill. 1999). The class definition must allow members to be ascertainable by reference

to objective criteria. *Clay, supra.* Plaintiff's proposed class is susceptible both to 'precise definition' and 'objective criteria.' In this case, parts *i., ii., iii., and iv.*, of the class definition are wholly objective and are directly subject to defendants' illegal conduct.[3]

Since everyone who owns or did own residential property in the City of Evanston is instantly and adversely affected by the tax, the class is invariably defined. As in *NOW*, one could hold that the physical *properties* are the class, and that their human owners are involuntary members by extension. Therefore, all Evanston residential property owners are, under all circumstances, foreclosed from non-membership in the class.[4]

Second, defendants cite *Oshana v. Coca-Cola Co.* 225 F.R.D. 575, 58-81 (N.D. Ill 2005), "a class definition cannot be based on a plaintiff's mental state." They follow by alleging various "intentions" (mental states) of potential class members. A class member's desire to do nothing, to pay, or to defer, is independent of the fact that the Ordinance is an instant, non-contingent encumbrance on the property itself. Mental state of the properties' owners is irrelevant. Under the circumstances of this case, residential property owners are members of the class whether they like it or not.[5] Regardless, "the presence of state of mind issues should not be an automatic reason for denying class certification. *NOW* at 358, quoting *Simer v. Rios,* 661 F.2d at 669 (7th Cir. 1981).

---

[4] In this case, all defendants, including the City, are *also* members of the plaintiff - putative class. Conceivably, the defendants could "opt-out" and not sue themselves. Under such a scenario, to fail would be to prevail or vice versa. See Rules 23(b)(1) and (2).

[5] Defendants state, "All nine aldermen [defendants] voted in favor of the Ordinance..." Following defendants' reasoning, the defendants appear to be saying, "We voluntarily forfeited our Constitutional rights and are justified therefore, under color of law, to mislabel our Ordinance and in so doing, force forfeiture of yours."

8

Third, a defense of the voluntary payment doctrine may be defeated by two factors, the existence of a misrepresentation and the defendants' intent for the plaintiffs to rely thereupon. Both of these elements are alleged with particularity. (FAC ¶¶ 85-88)

Under Illinois law, taxes are considered voluntarily paid and non-recoverable unless it is proved that they were paid without knowledge of the facts on which to frame a protest. *Freund v. Avis Rent-A-Car System, Inc.,* 114 Ill.2d 73, 499 N.E.2d 473, 101 Ill.Dec. 885 (1986)). Further, "duress may be actual or implied." *Geary v. Dominick's Finer Foods, Inc.,* 129 Ill.2d 389, 544 N.E.2d 344, 135 Ill.Dec. 848 (1989).

Augmenting her rebuttal, plaintiff also seeks relief under 42 U.S.C. § 1983, (FAC, ¶¶ 30-32, and Count II and *fn* 2), alleging intentional illegal acts under color of law, in violation of plaintiff's Constitutional rights. (FAC ¶¶ 85-86) "If a state or county tax official intentionally violates a plaintiff's constitutional rights, he may be held liable for an action for damages." *Fulton Market Cold Storage Co. v. Cullerton,* 582 F.2d 1071 (7th Cir. 1978).

Under Illinois law, when a legislative enactment is held unconstitutional, it is treated as void *ab initio*. This doctrine derives from the U.S. Supreme Court case *Norton v. Shelby County,* 118 U.S. 425, 30 L. Ed. 178, 6 S. Ct. 1121 (1886), in which the Court ruled that if a state statute was later ruled unconstitutional, the acts of a board constituted under the law but before its was declared unconstitutional could not be valid. The Supreme Court stated: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it never had been passed." In Illinois, if defendants' Ordinance is declared unconstitutional, their "acts are invalid and the monies

collected thereunder should be returned." *Mills v. Peoples Gas Light and Coke Co.* (1927), 327 Ill. 508, 535, 158 N.E. 814

Lastly, the class, "should not include individuals who would not be entitled to relief *Gustafson v. Polk County, Wisconsin,* 226 F.R.D. 601, 607 (W.D.Wis. 2005) This class does not.

The court should not have to engage in individualized inquiries to determine class membership. *Pastor v. State Farm Mutual Automobile Insurance Co.,* No. 05 C 1459, 2005 U.S.Dist. LEXIS 22338 at *7 (N.D.Ill. Sept. 30, 2005. This Court would not.

In any event, should the class be certified under Rule 12(b)(2), class membership 'need not be precisely delimited.' *Yaffe v. Powers,* 454 F.2d 1366 (1st Cir. 1972); *McKenzie v. City of Chicago,* 175 F.R.D. 280, 289 – 290 (N.D.Ill. 1997)

### 2. Class Size is Adequate

The numerosity requirement of F.R.Civ.P. 23(a)(1) does not depend on the number of class members in the abstract, but on whether it would be practicable for that number of persons to be joined as parties to the suit. The Eleventh Circuit has held that when the numerosity question is close, "certification should be granted because the court has the option to decertify pursuant to Rule 23(c)(1)." *Leszczynski v. Allianz Insurance,* 176 F.R.D. 659, 670 (S.D.Fla. 1997), citing *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925 (11th Cir. 1983).

In *Dale Electronics, Inc. v. R.C.L. Electronics, Inc.,* 53 F.R.D. 531 (D.N.H. 1971) the court held that a class of 13 satisfied the numerosity requirement. The court stated that "[i]n the instant case . . . the locations of the defendants range from California to New York, and from North Carolina to Nebraska. Joinder is not only impracticable, but

10

impossible." 53 F.R.D. at 534.

While it is true that all of the 29,651 residential units (FAC ¶¶ 133-34), affected by defendants' Ordinance are in Evanston, IL, (half are multi-unit rentals), it is probable[6] that a great number of owners may be citizens of other states, foreign corporations, investors in non-occupied management portfolios, assets of REITS or, given the current sub-prime mortgage crisis, be owned by major out-of-state lenders via default. Unknown claimants would not only increase the size of the class, but also increase the impracticability of joinder. Thus, even if the known class is small, numerosity is satisfied if certification will benefit future classes of indeterminate size. *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio,* 188 F.R.D. 433, 442 (W.D.Tex. 1999); *Krislov v. Rednour,* 946 F.Supp. 563, 568 (N.D.Ill. 1996)

The Supreme Court has held that "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without effective redress unless they may employ the class-action device." *Deposit Guaranty National Bank of Jackson, Mississippi v. Roper,* 445 U.S. 326, 63 L.Ed.2d 427, 100 S.Ct. 1166, 1174 (1980). The real thrust of Rule 23 is to provide a means of recovery for people who have legitimate claims but would otherwise not assert them — either because the amounts they would recover are too small or because they are unaware of the existence of their claims. The courts sometimes refer to these suits as "negative value" class actions, meaning that the costs incurred to bring each claim individually would exceed the potential individual recovery. *In re Rhone-*

---

[6] It is unlikely that all 29,651 affected properties are owned by citizens of Illinois. This is particularly true given that approximately one-half of the affected properties are residential rental.

11

*Poulenc Rorer Inc.,* 51 F.3d 1293, 1300 (7th Cir.), *cert. denied.* As we argued in our Motion to Certify, the amount wrongfully taken from each member is approximately $10,000. Individual members are unlikely to perceive the benefit of investing an equal or greater amount in uncertain litigation or worse, to believe they could match resources with the City of Evanston.

Finally, most class members are unsophisticated in the law and are therefore, unlikely to recognize or ascertain a viable cause of action. Moreover, if this lawsuit is not certified as a class action, but prosecuted successfully as an individual action, such success would raise member awareness, expose defendants to a substantial number of 'slam-dunk, copycat' suits, and would waste valuable judicial resources.

### 3. Adequacy of Representation

#### a. Adequacy of the Individual Class Representative

Originally, the plaintiff in this action represented herself, *pro se*. A simple reading of her First Amended Complaint sufficiently demonstrates her credibility and competency to act as the individual class representative. She has proffered a Declaration [37.3] to this effect, under oath. The Northern District of Illinois has rejected an attack on the plaintiffs' credibility as "simply not a basis upon which to disqualify [the plaintiffs] as class representatives." *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 187 (N.D.Ill. 1992) "[We] reject a challenge based on plaintiff's lack of knowledge and understanding of case." *Murray v. New Cingular Wireless Services, Inc.,* 232 F.R.D. 295, 300 (N.D.Ill. 2005) Defendants' recriminations notwithstanding, Victoria Kathrein's qualifications to act in this capacity are beyond *credible* reproach.

With regard to the cost of maintaining this suit, in *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 317 (S.D.N.Y. 2003), the court noted that, "cost-shifting may effectively end discovery, especially when private parties are engaged in litigation with large corporations." (Also, see Declaration [37.3] of Victoria Kathrein, par. 12)

Whereas all ownership and other contact information about property owners is under the exclusive control of defendants, plaintiffs may reasonably move the Court to order that defendants bear the cost of notification. "In cases in which the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff. . . . [W]e think that the district court properly may exercise its discretion under Rule 23(d) to order the defendant to perform the task in question." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 57 L.Ed.2d 253, 98 S.Ct. 2380, 2392 (1978) In *Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir. 1991), the court said that *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 40 L.Ed.2d 732, 94 S.Ct. 2140, 2153 (1974) "does not require the representative to bear the costs personally." Indeed, the court noted that in a case in which the plaintiff's recovery (as compared to the recovery for the class) is small, "[o]nly a lunatic would do so. A madman is not a good class representative!" *Id.*

Therefore, and as it may bear on plaintiff's Motion to Certify, ultimate responsibility for discovery costs is uncertain and is an improper basis for denial of certification.

Secondly, defendants argue that the class representative cannot represent all members of the class (property owners) where some property owners may *support* the challenged Ordinance. As conceived at **III(B)(1)** above, all residential property in Evanston is the class, the human owners being involuntary members by extension.

### b. Adequacy of Class Counsel

This case, while likely to proceed as a class action, is <u>not</u> complex. Its core claims are Constitutional in nature and, beyond the rules of procedure detailed in MCL4th, will not require extraordinary advocacy skills or resources beyond those normally possessed by a named partner in an established Northern District practice. The law firm Collins, Bargione & Vuckovich is entirely competent to represent the class in this action. (See Exhibit 4, Declaration of Vuckovich, attached)

In the absence of specific proof to the contrary, competency will be presumed at the outset of litigation. *See Jones v. GPU, Inc.,* 234 F.R.D. 82, 98 (E.D.Pa. 2005) (burden is on defendant to prove counsel inadequate); *Almendares v. Palmer,* 222 F.R.D. 324, 332 (N.D. Ohio 2004) (defendant has burden of proof on adequacy requirement); Also see, *LeBeau v. United States,* 222 F.R.D. 613, 618 – 619 (D.S.D. 2004) (finding counsel inadequate but appointing co-counsel rather than denying certification)

Lastly, defendants state, "An experienced class counsel would not let a *pro se* complaint remain as its pleading." It is the professional opinion of this law firm that the First Amended Complaint is sufficient. There is no need to make an amendment and clutter the docket with superfluous pleadings.

### 4. Class Action is Superior Method to Adjudicate the Claim

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.

1997). As articulated at **Part C** of her Motion to Certify, $10,000 is not nearly enough money to prosecute a vigorously defended federal, constitutional claim through ultimate resolution. The net recovery for any individual litigant would be less than "paltry." Employing the "lodestar' method of fee estimation, plaintiff would attest that her costs of this suit are already in excess of $10,000. *Blum v. Stenson*, 465 U.S. 886, 79 L.Ed.2d 891, 104 S.Ct. 1541, 1548 (1984)

Furthermore, a class action here would avoid the duplication of effort and expense involved in multiple lawsuits. "One reason to favor a class action is to avoid duplicative lawsuits, which would thereby waste the parties' and the courts' time and resources." *Hubler Chevrolet, Inc. v. General Motors Corp.*, 193 F.R.D. 574, 582 (S.D.Ind. 2000).

### IV. Conclusion

For all the foregoing, plaintiff's Motion for Class Certification is proper and should be granted.

Respectfully submitted,

Dated: June 3, 2008

/s/ Adrian M. Vuckovich
_____
Adrian M. Vuckovich
Collins, Bargione & Vuckovich
*Counsel for Victoria Kathrein
and the putative class*

/s/ James J. Lessmeister
_____
James J. Lessmeister
Collins, Bargione & Vuckovich
*Counsel for Victoria Kathrein
and the putative class*