**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL L. KATHREIN and** | ) | |
| **VICTORIA KATHREIN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **08 C 83** |
| | ) | |
| **CITY OF EVANSTON, ILLINOIS** | ) | **Judge Ronald A. Guzmán** |
| **LORRAINE H. MORTON, Mayor,** | ) | |
| **CHERYL WOLLIN, 1st Ward Alderman,** | ) | |
| **LIONEL JEAN-BAPTISTE, 2nd Ward** | ) | |
| **Alderman, MELISSA A. WYNNE, 3rd** | ) | |
| **Ward Alderman, STEVEN J. BERNSTEIN,** | ) | |
| **4th Ward Alderman, DELORES A.** | ) | |
| **HOLMES, 5th Ward Alderman, EDMUND** | ) | |
| **B. MORAN, Jr., 6th Ward Alderman,** | ) | |
| **ELIZABETH B. TISDAHL, 7th Ward** | ) | |
| **Alderman, ANN RAINEY, 8th Ward** | ) | |
| **Alderman, ANJANA HANSEN, 9th Ward** | ) | |
| **Alderman,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael L. Kathrein and Victoria Kathrein, owners of property located in the

City of Evanston ("the City"), have sued the City, its mayor and nine aldermen, pursuant to 42

U.S.C. § 1983, claiming that the City's Affordable Housing Demolition Tax ("Demolition Tax")

violates their rights as guaranteed by the Fifth and Fourteenth Amendments to the U.S.

Constitution, the Illinois Constitution, as well as state law.  Defendants have moved to dismiss

the complaint for want of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

("Rule") 12(b)(1).  For the reasons provided in this Memorandum Opinion and Order, the Court

grants the motion.

## Facts

In 2003, the Illinois General Assembly enacted the Affordable Housing Planning and Appeal Act to encourage local governments "to assist in providing affordable housing opportunities to assure the health, safety, and welfare of all citizens in the State." 310 Ill. Comp. Stat. 67/5. Pursuant to the Act, the City established an affordable housing fund and passed Ordinance 139-0-05, the Demolition Tax. The stated purpose of the Demolition Tax is "to provide a source of funding for the creation, maintenance, and improvement of safe and decent affordable housing in the city of Evanston." EVANSTON, ILL. CODE § 4-22-1. Under the provisions of the Demolition Tax, any person granted a permit for demolition of a residential structure in Evanston must pay (in addition to the applicable permit fees) a "tax" of $10,000.00, or $3,000.00 per demolished unit of a multi-unit structure, whichever is greater. *Id.* § 4-22-3(A). The tax is due upon issuance of the demolition permit, and funds received by the City in fulfillment of the demolition tax are deposited directly into the City's affordable housing fund. *Id.*

Property owners can avoid paying the tax under various circumstances.[1] First, the applicant will not be liable for the demolition tax if he enters into an agreement with the City to provide affordable housing via the new structure or if the director of the City community development department determines that the new building will constitute affordable housing as defined by the City Code. *Id.* § 4-22-3(B). In addition, an applicant who has been the record titleholder and occupant of the property for at least three years can defer payment of the tax ("Tax Deferral Option"), though the City will retain a lien on the property in the amount owed. *Id.* § 4-22-4(A). If the owner who exercised the Tax Deferral Option continues to occupy the property for three consecutive years following the issuance of the final certificate of occupancy for the replacement structure, the City will release the lien without payment of the tax. *Id.* § 4-

---

[1] Exempt or not, the applicant must always pay the applicable permit fees.

22-4(B). Finally, under the City's "Stability Incentive," any property owner who has been the record titleholder and occupant for three years prior to application for a demolition permit and pays the Demolition Tax at the time of permit issuance can apply for a refund of the tax so long as he remains record titleholder and occupant for an additional three years. *Id.* § 4-22-5.

Plaintiffs own a parcel of land in the City that is improved with a residential dwelling unit. Plaintiffs wish to remove the existing structure and create a vacant lot.[2] Michael Kathrein presented his application for demolition to the City Clerk and asked whether the City would grant a demolition permit if the plaintiffs refused to pay the Demolition Tax.[3] The Clerk responded in the negative. Plaintiffs did not pay the Demolition Tax, not even under protest. Shortly thereafter, plaintiffs offered to sell their property to Eitan Ouzan. According to Ouzan's affidavit, the parties agreed orally to a cash sales price of $225,000.00. However, when plaintiffs informed Ouzan of the Demolition Tax, he demanded a $10,000.00 reduction. Plaintiffs refused, and the sale was not consummated. At no stage of the negotiation process was any offer or covenant memorialized in writing, including the purported sales agreement.

Plaintiffs then filed this suit claiming that: (1) the Demolition Tax violates their rights under the Fifth and Fourteenth Amendments to the U.S. constitution, the uniformity of taxation clause of the Illinois constitution and constitutes an inverse condemnation of their property; (2)

---

[2] Both plaintiffs directly contradicted their stated desire to demolish the residential structure in their respective depositions. When asked if she currently wants to demolish the residential structure in question, Victoria Kathrein responded, "No." (V. Kathrein Dep. at 53.) Likewise, her husband, Michael Kathrein, described his current intention with regard to demolishing the residential structure as "up in the air" and "undecided." (M.L. Kathrein Dep. at 56.)

[3] Here, too, Michael Kathrein's deposition appears to contradict the complaint. While the complaint alleges that he presented his application for demolition to the Clerk, ostensibly completed in pursuit of a demolition permit for the property that is the subject to this litigation, he testified in his deposition that he downloaded the demolition permit application from the City of Evanston's website for "[n]o properties in particular." (M.L. Kathrein Dep. at 62.)

3

the Demolition Tax is permit fee, not a tax; and (3) the Tax Injunction Act, 28 U.S.C. § 1341, is

unconstitutional. Defendants move to dismiss the amended complaint for lack of subject matter

jurisdiction, asserting that the Tax Injunction Act divests the Court of jurisdiction over plaintiffs'

complaint and plaintiffs lack standing to challenge the Demolition Tax.


## Discussion

When raising a Rule 12(b)(1) challenge, a defendant may launch either a facial or factual

attack on jurisdiction. *Stroman Realty, Inc. v. Grillo*, 438 F. Supp. 2d 929, 932 (N.D. Ill. 2006).

In the former, a defendant contends that the allegations in the pleadings are insufficient on their

face to support federal jurisdiction; in the latter, a defendant challenges the truth of the facts

relied upon by the plaintiff in the complaint to allege that jurisdiction exists. *Freiburger v.

Emery Air Charter*, 795 F. Supp. 253, 256 (N.D. Ill. 1992). When a defendant launches a facial

attack, "allegations are taken as true and construed in a light most favorable to the complainant."

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). Courts are not bound

by the pleadings when confronted with factual attacks on jurisdiction and may look beyond the

allegations to resolve factual disputes. *Rennie v. Garrett*, 896 F.2d 1057, 1057-58 (7th Cir.

1990); *see Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002). If the

motion "denies or controverts the pleader's allegations of jurisdiction, . . . the movant is deemed

to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai

Med. Ctr.*, 11 F.3d at 1583. When federal jurisdiction is challenged, the party seeking to invoke

subject matter jurisdiction bears the burden of establishing it. *DaimlerChrysler Corp. v. Cuno*,

547 U.S. 332, 342 n.3 (2006); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104

(1998).

Defendants launch a two-pronged factual attack on jurisdiction, arguing that the Tax Injunction Act ("TIA") prevents the district court from exercising jurisdiction over this suit and that plaintiffs lack standing to pursue their challenges to the Demolition Tax.[4]

### A. Tax Injunction Act

The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  It functions as a "broad restriction on federal court jurisdiction over state and local tax matters," *Collins Holding Corp. v. Jasper County, S.C.*, 123 F.3d 797, 799 (4th Cir. 1997), and courts interpret the language of the TIA broadly to prevent "taxpayers from running to federal court to stymie the collection of state taxes," *Wright v. Pappas*, 256 F.3d 635, 636 (7th Cir. 2001); *see Collins Holding Corp.*, 123 F.3d at 799 n.2 (stating that the TIA to cases concerning state or local taxes that seek declaratory, monetary or injunctive relief).  However, the TIA divests this Court of subject matter jurisdiction only if the Demolition Tax is, in fact, a tax not a fee, and the Illinois courts provide a "plain, speedy and efficient" remedy.  *Collins*, 123 F.3d at 799.

Whether the Demolition Tax qualifies as a "tax" for the purposes of the TIA is determined by the Court, without regard to the label affixed to it by the City Council.  *See Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1382 (8th Cir. 1997);

---

[4] Because the TIA and standing are functionally equivalent threshold jurisdictional considerations that potentially compel dismissal prior to reaching the merits of a claim, the Court has discretion to determine the order in which it considers these parallel lines of jurisdictional attack.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("[T]here is no unyielding jurisdictional hierarchy.").  *Compare DirecTV v. Tolson*, 498 F. Supp. 2d 784, 795 (E.D.N.C. 2007) (analyzing jurisdiction under the TIA prior to examining standing), *aff'd,* 513 F.3d 119, 128 (4th Cir. 2008), *with Herron v. Mayor & City Council of Annapolis*, 388 F. Supp. 2d 565, 570-71 (D. Md. 2005) (evaluating standing before analyzing jurisdiction under the TIA).

*see also Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1399 (7th Cir. 1992). To make

that determination, the Court examines how the money is used and "why it is taken." *Hager v.

City of West Peoria*, 84 F.3d 865, 870-71 (7th Cir. 1996); *see Diginet*, 958 F.2d at 1399 (stating

that a fee is "a reasonable estimate of the cost imposed by the person required to pay [it]" while a

tax does not just recover costs but "generate[s] revenues that the municipality can use to offset

unrelated costs or confer unrelated benefits"). The use analysis asks "whether [the purported

tax] provides a general benefit to the public . . . or . . . provides more narrow benefits to

regulated companies or defrays the agency's cost of regulation." *Hager*, 84 F.3d at 870

(quotation omitted). The purpose analysis considers the language and legislative purpose of the

ordinance and the facts underlying its passage. *Id.* at 871-72.[5]

All of these considerations lead to the conclusion that the Demolition Tax is, indeed, a

tax. The language of the ordinance, which requires all demolition permit applicants, even those

who exercise the Tax Deferral Option, to pay both the tax and a permit fee, shows that the

Demolition Tax was not meant merely to defray administrative costs. Moreover, though revenue

from the Demolition Tax is "placed in a special fund and used only for special purposes," such

segregated assessments "are 'taxes' under the TIA if expended to provide a general benefit to the

public." *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 932 (9th Cir. 1996) (quotation and

citation omitted).

Such is the case here. According to the ordinance that created the Demolition Tax, the

revenues raised by it are used "to provide a source of funding for . . . affordable housing in the

city of Evanston." Evanston, Ill. Code § 4-22-1. Ensuring that all Evanston residents have

access to affordable housing is a paradigmatic example of a general public benefit typically

---

[5] Curiously, plaintiffs largely ignore the Seventh Circuit's Diginet and Hager decision and focus instead on dictionary definitions of the word "tax" mentioned by the court in *Hill v. Kemp*, 478 F.3d 1236, 1244 (10th Cir. 2007).

financed by a general tax.  *See Indep. Coin Payphone Ass'n.*, 863 F. Supp. at  755 (relying on the stated legislative purpose "to generate revenue" as evidence that an ordinance is a tax).  *Cf. Bidart*, 73 F.3d at 932 (holding that a fee imposed on apple producers and used to promote the sale of apples was not a tax for purposes of the TIA because it benefited only the producers not the public in general).

Nonetheless, plaintiffs contend that the Demolition Tax must be a regulatory fee, not a tax, because it is intertwined with a regulatory activity.  *See id.* at 933 (stating that "an assessment levied for public purposes would not be a tax where it was part of a regulatory program") (quotation and citation omitted).  Though "the line between 'tax' and 'fee' can be a blurry one," *Collins*, 123 F.3d at 800, a tax does not become a regulatory fee simply because it implicates regulatory functions.  *See, e.g., Gasparo v. City of N.Y.*, 16 F. Supp. 2d 198, 219 (E.D.N.Y. 1998) (holding that a municipal ordinance is a tax even though "the purposes of the plan are, at least partly, regulatory").  If the primary purpose of an assessment is to generate revenue, it is a tax, even if it has "incidental" regulatory effects.  *See Hager*, 84 F.3d at 871. Because the primary purpose of the Demolition Tax is to generate revenue for affordable housing, it is a tax, regardless of any incidental regulatory impact it may have.

Even so, the TIA applies to this case, only if the Illinois courts provide plaintiffs "a plain, speedy and efficient remedy" for their tax challenge.  28 U.S.C. § 1341.  A state-court remedy is "plain, speedy and efficient" if it meets "certain minimal procedural criteria."  *Scott Air Force Base*, 548 F.3d at 521 (quotation and citation omitted).  Plaintiffs have the burden of proving that the state-court remedy does not meet those criteria.  *Id.*

Plaintiffs argue that the Illinois courts offer them no remedy at all because they cannot challenge the constitutionality of the TIA, a federal statute, in state court.  However, the TIA's

sufficiency-of-remedy inquiry is limited exclusively to plaintiffs' ability to challenge the Demolition Tax in Illinois courts. Whether the state courts offer plaintiffs a remedy for other claims is immaterial.

Plaintiffs can raise all of their objections to the Demolition Tax, including its purported unconstitutionality, in state court. *See* 735 ILL. COMP. STAT. 5/2-701; *see Rosewell*, 450 U.S. at 528 (holding that Illinois property tax refund procedures qualify as a "plain, speedy and efficient remedy" for the purposes of the TIA); *Folio v. City of Clarksburg*, 134 F.3d 1211, 1216 (4th Cir. 1998) ("We conclude that the Uniform Declaratory Judgment Act . . . is a 'plain, speedy and efficient' remedy within the meaning of 28 U.S.C.A. § 1341."); *Hager*, 84 F.3d at 869 (noting that Illinois law provides "a judicially-created remedy of inverse condemnation for property owners aggrieved by municipal legislation"); *AG Farms, Inc. v. Am. Premier Underwriters, Inc.*, 695 N.E.2d 882, 890 (Ill. App. Ct. 1998) (noting that Illinois enacted the Uniform Declaratory Judgment Act). Thus, plaintiffs have not met their burden of proving that the Illinois courts do not provide them "a plain, speedy and efficient remedy" for their tax challenge. *See* 28 U.S.C. § 1341.

In sum, the TIA bars the Court from exercising subject matter jurisdiction over plaintiffs' attempts to "enjoin, suspend or restrain the assessment, levy or collection" of Evanston's Affording Housing Demolition Tax. 28 U.S.C. § 1341. Consequently, the Court dismisses for lack of subject matter jurisdiction plaintiffs' claims that the Demolition Tax violates the U.S. and Illinois Constitutions and constitutes an inverse condemnation (Counts II-VII). *See California v. Grace Brethren Church*, 457 U.S. 393, 417 (1982) (holding that TIA barred jurisdiction where plaintiffs seek injunctive or declaratory relief based on unconstitutionality of state tax); *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514 (1981) (holding that TIA barred jurisdiction where

8

Illinois county property tax was alleged to violate equal protection and due process clauses); *SGB Fin. Servs., Inc. v. Consol. City of Indianapolis-Marion County*, 235 F.3d 1036, 1039 (7th Cir. 2000) (holding that TIA barred jurisdiction where tax was alleged to violate takings clause and amounted to an inverse condemnation); *Indep. Coin Payphone Ass'n v. City of Chi.*, 863 F. Supp. 744, 755 (N.D. Ill. 1994) (holding that TIA bars jurisdiction where tax was alleged to violate Illinois constitution).

### B. Standing

The only claim not barred by the TIA is plaintiffs' challenge to the constitutionality of that statute (Count I). Plaintiffs have standing to assert this claim if: (1) they have suffered an injury in fact, which is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there is a causal connection between the injury and the conduct complained of, meaning the injury has to be fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Though the TIA bars federal courts from adjudicating state tax challenges, it leaves plaintiffs' state-court remedies intact. Because the TIA does not inhibit plaintiffs from seeking redress for their claims, they cannot fulfill *Lujan*'s injury-in-fact requirement.[6] Having suffered no injury in fact, plaintiffs lack standing to challenge the constitutionality of the TIA.

---

[6] In addition, plaintiffs' takings claim does not appear to be ripe, another jurisdictional defect. *See Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 452 (7th Cir. 2002) ("[P]rior to initiating a civil action for a taking in federal court, a plaintiff must demonstrate that he has both received a final decision regarding the application of the [challenged] regulations to the property at issue from the governmental entity charged with implementing the regulations, and has sought compensation through the procedures the State has provided for doing so.") (quotation and citation omitted).

Plaintiffs also lack standing to pursue their other challenges to the Demolition Tax (Counts II-VII). Once again, plaintiffs have failed to even acknowledge defendants' challenge to standing. In any event, plaintiffs' allegations are factually insufficient to establish standing to challenge the Demolition Tax. "[S]tate taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." *DaimlerChrysler Corp.*, 547 U.S. at 346. Rather, they have standing only if they are "challenging their actual tax liability as assessed," *Fernebok v. District of Columbia*, 534 F. Supp. 2d 25, 28 (D.D.C. 2008), and have suffered "a direct dollars-and-cents injury," *Doremus v. Bd. of Educ. of Borough of Hawthorne*, 342 U.S. 429, 434 (1952).

Plaintiffs admit that they have not paid the Demolition Tax and that they are "undecided" and "up in the air" as to whether they even intend to proceed with demolition. (M.L. Kathrein Dep. at 56; V. Kathrein Dep. at 53-54.) They contend, however, that the mere existence of the Demolition Tax lowers their property's value by $10,000.00, as demonstrated by Ouzan's demand for a price reduction in that amount after he learned of the Tax. That argument, which is not supported by property appraisals or any other evidence, is pure speculation, which cannot confer standing. *Lujan*, 504 U.S. at 560.

### C. Request for Sanctions

Finally, defendants ask the Court to bar plaintiffs, and in particular Michael Kathrein, from filing another complaint in this Court without first seeking leave to do so. The Court's official docket entry system shows that not all of the suits filed by Michael Kathrein in federal court have been deemed frivolous and this is the first lawsuit filed by Victoria Kathrein.

10

Although the Court can envision a point at which such an order would be warranted, it declines to sanction plaintiffs at this time.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss for lack of subject matter jurisdiction [doc. no. 82]. This case is hereby terminated. All other pending motions are dismissed as moot.

**SO ORDERED.**                                          **ENTERED:   9/18/2009**

_____

**HON. RONALD A. GUZMAN**

**United States District Judge**